IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | |
| | Chapter 13 |
| LYNDEL TOPPIN, | |
| | Bankruptcy No. 18-13098 (MDC) |
| Debtor. | |

| | |
|---|---|
| LYNDEL TOPPIN, | |
| | Adv. Pro. No. 18-00137 (MDC) |
| Plaintiff, | |
| v. | |
| JEWELL WILLIAMS SHERIFF OF THE CITY OF PHILADELPHIA and ABDELDAYEM HASSAN a/k/a ABDELDYEM HASSAN, | |
| Defendant | |

**THE SHERIFF OF THE CITY OF PHILADELPHIA'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Jewell Williams, Sheriff of the City of Philadelphia (the "Sheriff"), by and through his Counsel, Megan N. Harper, Deputy City Solicitor, hereby files the following Memorandum of Law in Support of Motion for Summary Judgment.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

1. On October 05, 2017, 146 South 62nd Street, Philadelphia, PA 19139 (the "Property") was sold pursuant to a lawful sheriff's sale for delinquent taxes. A true and correct copy of the Civil Docket Report from the Philadelphia Court of Common Pleas case number 1504T0192 is attached hereto as Exhibit "A."

2. At all times relevant hereto, public records identified the property owners as Eleanor and Stanley Zalkin. *See* Ex. A.

3. Defendant Abdeldayem Hassan a/k/a Abdeldyem Hassan ("Defendant Hassan") was the winning bidder at the sale. *See* Ex. A.

4. On November 21, 2017, the Office of the Sheriff of Philadelphia recorded the deed from the Zalkins to Mr. Hassan. A true and correct copy of the Sheriff's Deed for the Property is attached hereto as Exhibit "B."

5. On January 22, 2018, Defendant Hassan filed an ejectment action in the Philadelphia Court of Common Pleas against "Unknown Occupants" of the Property. A true and correct copy of the Civil Docket Report from the Philadelphia Court of Common Pleas docket 180103400 is attached hereto as Exhibit "C."

6. On April 05, 2018, Defendant Hassan received a default judgment and filed a Motion for Writ of Possession against Unknown Occupants, which was granted on April 30, 2018. *See* Ex. C.

7. The court's Order dated April 30, 2018 directed the Office of Judicial Records to issue a Writ of Possession upon Praecipe of Plaintiff. *See* Ex. C.

8. Defendant Hassan filed the Praecipe and the court issued the Writ of Possession against Unknown Occupants for the Property on May 07, 2018. True and correct copies of the Praecipe and Writ of Possession are attached hereto as Exhibit "D."

9. On May 8, 2018, on or around 3:52 PM, Defendant Hassan brought the Writ of Possession to the Civil Enforcement Unit of the Sheriff's Office for enforcement against Unknown Occupants. A true and correct copy of the Writ of Possession from the Civil Enforcement Unit of the Sherriff's Office is attached hereto as Exhibit "E."

10. Later that day, at 6:04 PM, Lyndel Toppin ("Plaintiff") filed a voluntary Chapter 13 bankruptcy petition with this Court, case number 18-13098. *See* Plaintiff's Second Amended

2

Complaint Concerning Willful Violations of the Automatic Stay by Defendants Sheriff of the City of Philadelphia and Abdeldayem Hassan a/k/a Abdeldyem Hassan ("Compl.") [Docket No. 29] at ¶ 33.

11. On or around May 08, 2018, at 10:25 PM, the Real Estate Unit received a fax with the subject line "Notice of Bankruptcy Case Filing – Book/Writ 1707-5002.[1]" A true and correct copy of the fax of Notice of Bankruptcy dated May 08, 2018 is attached hereto as Exhibit "F."

12. The Notice of Bankruptcy was noted on May 09, 2018, on the Sheriff's Return of Service pertaining to the sheriff sale action of the same Book/Writ number. A true and correct copy of the Sheriff's Return of Service for Court of Common Pleas case number 1504T0192 is attached hereto as Exhibit "G."

13. However, it is the Civil Enforcement Unit of the Sheriff's Office, which is distinct from the Real Estate Unit, that is tasked primarily with enforcing civil complaints, which includes enforcing Writs of Possession, executing pursuant to court orders, and enforcing injunctions. A true and correct copy of the deposition of Deputy Sheriff Lieutenant Sean Thornton, 9:1–6, Dec. 12, 2019, is attached hereto as Exhibit "H."

14. The sheriffs of the Civil Enforcement Unit are trained to cease all operations, including any actions on complaints or writs, when the Unit is notified of a bankruptcy stay. Ex. H 12:22–13:4, 14:10–15:9; and a true and correct copy of the deposition of Deputy Sheriff Jetaria Taylor, 32:12–33:9, Dec. 12, 2019, is attached hereto as Exhibit "I."

---

[1] The Book/Writ Number 1701-5002 is related to the Sheriff's sale proceeding, docketed in the Philadelphia Court of Common Pleas under case number 1504T0192 and attached here as Ex. A. This is not connected to the Writ of Possession, docketed in the Philadelphia Court of Common Pleas under case number 180103400, and attached here as Ex. D.

15. The Civil Enforcement Unit of the Sheriff's Office, however, was unaware that a Bankruptcy had been filed at this time. Ex. I 30:6–31:14, 32:4–11.

16. The Civil Enforcement Unit cannot view information related to the sheriff sale proceeding held by the Real Estate Unit in the Sheriff's database system. Ex. I 30:16–31:14, 32:4–11.

17. The Civil Enforcement Unit may receive notice about a bankruptcy from another part of the Sheriff's Office if it's clear that it's related to an eviction or the work of the Civil Enforcement Unit. Ex. I 32:4–11.

18. On or about May 10, 2018, Deputy Sheriff Jetaria Taylor ("Deputy Taylor") went out to the Property to personally serve the Notice to Vacate the premises. A true and correct copy of the Service Event Report dated May 10, 2018 is attached hereto as Exhibit "J."

19. When she was unable to effectuate personal service, pursuant to Unit policy, she posted the notice to the front door, left a copy of the notice in the mail slot at the Property, and mailed a copy of the notice through regular mail. Ex. I 9:14–18, 14:1–9; Ex. H 57:21–58:11.

20. On May 31, 2018, a Certificate of Notice was filed in this case which indicates the Bankruptcy Noticing Center mailed a notice of the Plaintiff's bankruptcy case to the Philadelphia Sheriff's Office at 100 S. Broad Street, 5th Floor, Philadelphia, PA 19110, and provided electronic notice to the City of Philadelphia Law Department at bankruptcy@phila.gov. A true and correct copy of the BNC Certificate of Notice, 18-13098, ECF No. 12, is attached hereto as Exhibit "K."

21. On June 01, 2018, Deputy Taylor returned to the Property to personally serve the Eviction Notice. Ex. I 18:21–24.

22.    When she was unable to effectuate personal service again, pursuant to Unit policy, she posted the notice to the front door, left a copy of the notice in the mail slot at the Property, and mailed a copy of the notice through regular mail. Ex. I 9:14–18, 14:1–9; Ex. H 57:21–58:11.

23.    On or around June 07, 2018, the Civil Enforcement Unit received a fax advising that Lyndel Toppin filed a Chapter 13 bankruptcy case on May 08, 2018. A true and correct copy of the fax of Notice of Bankruptcy dated June 07, 2018 is attached hereto as Exhibit "L.

24.    The Sheriff's Office noted the bankruptcy on the Writ of Possession, *see* Ex. E, in the book where the future eviction for the Property was logged, a true and correct copy of the possession log book is attached hereto as Exhibit "M," and in the JEWELL database system used by the Civil Enforcement Unit. A true and correct copy of the Service Event Report dated June 25, 2018 is attached hereto as Exhibit "N."

25.    At that time, all activity to enforce the Writ of Possession was halted.

26.    On June 11, 2018, the Plaintiff filed this adversary proceeding against Defendant Hassan and the Sheriff of the City of Philadelphia.

27.    Plaintiff alleges that their counsel attempted to notify the Sheriff's Office on various occasions from May 8, 2018 to June 7, 2018, Compl. ¶¶ 35–41, 43–45, but that the Sheriff of Philadelphia continued to employ process to execute on the Writ of Possession on no less than six (6) separate occasions after the bankruptcy was filed. Compl. ¶ 47. Plaintiff alleges that, due to the Sheriff's and Defendant Hassan's enforcement activity, the Plaintiff has been harmed. Compl. ¶ 64.

28.    Plaintiff now asks this court to find that the Sheriff willfully violated the automatic stay, Compl. ¶¶ 65–66; to find that the Sheriff is in contempt of this Court by violating

5

the automatic stay, Compl. ¶ 67; to issue a declaratory judgment and an injunction against the Sheriff, *Id.*; and lastly to award personal and emotion injuries as actual damages, attorneys fees and expenses, punitive damages, and pre- and post-judgment interest. Compl. ¶ 68.

## II. SUMMARY JUDGMENT STANDARD

The court shall render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" if it might affect the outcome of the suit under governing law. *See id*. All inferences must be drawn, and all doubts resolved, in favor of the nonmoving party, here, the Plaintiff. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that he or she believes demonstrate the absence of material fact disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *See id*. at 321, n.3; *First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987). In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex*, 477 U.S. at 322-24. The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).

Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa.,* 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993). With respect to an issue on which the non-moving party has the burden of proof, the burden on the moving party may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325.

### III. ARGUMENT

#### A. The Sheriff is Entitled to Quasi-Judicial Immunity

The Sheriff cannot be held liable for violating the automatic stay provision at Section 362(a) of the Bankruptcy Code because the Sheriff is entitled to quasi-judicial immunity. It is well settled that judicial officers are immune from damage suits arising out of their official duties. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Figueroa v. Blackburn,* 208 F.3d 435, 440 (3d Cir.2000). The doctrine of quasi-judicial immunity extends absolute immunity to persons executing valid court orders from civil actions for damages challenging conduct authorized by the order. *See Coverdell v. The Department of Social and Health Services, State of Washington,* 834 F.2d 758, 764-765 (9th Cir. 1987); *see also Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 772–73 (3d Cir. 2000).

> The rational for immunizing persons who execute court orders is apparent. Such persons are themselves 'integral parts of the judicial process.' *Briscoe v. LaHue*, 460 U.S. 325, 355, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983). The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised.

*Coverdell*, 834 F.2d at 765. The application of quasi-judicial immunity to any public official acting pursuant to court directive is based on a well-grounded principle that those who are

required to follow the instructions of a court have no discretion but to obey the order and mandate of the court. *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969). Thus, the Sheriff, in executing the writ against unknown occupants at the Property, was performing a ministerial function, without discretion, at the direction of the judge and is entitled to immunity. *Waits v. McGowan,* 516 F.2d 203, 206 (3d Cir. 1975).

In Pennsylvania, a sheriff's only duties established by statute are court-related functions. The Pennsylvania Constitution provides that sheriffs are county officers. Pa. Const. Art. IX, § 4. Although the Constitution establishes the office, it does not describe the duties of a sheriff. *Kopko v. Miller*, 892 A.2d 766, 770–71 (Pa. 2006). While the sheriff's power at common law was formidable, other institutions, including modern law enforcement agencies, have greatly diminished the authority of the sheriff's office. *Com. v. Leet*, 585 A.2d 1033, 1037 (Pa. Super. 1991) (citations omitted). "Today, the sheriff's principal function is as an arm of the court, which is the duty specifically assigned to the office of sheriff by the legislature." *Com. v. Leet*, 585 A.2d at 1037. A sheriff is mandated to "serve process and execute orders directed to him pursuant to the law." 42 Pa.C.S.A. § 2921; *Kopko v. Miller*, 892 A.2d at 772; *Commonwealth v. Copenhaver*, 200 A.3d 956, 960–61 (Pa. Super. 2018), *appeal granted,* 215 A.3d 970 (Pa. 2019); *Allegheny County Deputy Sheriff's Ass'n v. Pennsylvania Labor Relations Bd.,* 504 A.2d 437, 439 (PA Cmwlth. 1986) (a sheriff's role is as an arm of the judicial system, implementing court-related processes).

There are numerous examples of courts extending quasi-judicial immunity to sheriffs and sheriff's deputies carrying out orders of court. The Third Circuit has held that the York County Sheriff carrying out a foreclosure sale pursuant to a facially valid court order is entitled to quasi-judicial immunity. *See Conklin v. Anthou*, 495 F. App'x 257, 264 (3d Cir. 2012); *see also*

8

*Watkins v. City of Philadelphia*, No. CV 17-0060, 2017 WL 3394618, at *2 (E.D. Pa. Aug. 8, 2017). The United States District Court for the Eastern District of Pennsylvania found the Sheriff and then Acting Sheriff Barbara Deeley were entitled to quasi-judicial immunity for executing a facially valid writ following judgment in an action for ejectment. *Jamaladdin v. Dietterick*, No. CIV.A. 12-4686, 2013 WL 331336, at *1-2 (E.D. Pa. Jan. 29, 2013). The Third Circuit also applied the doctrine to the Sheriff of Allegheny County when the Court found that an order of a judgment entered in Family Division proceedings may not serve as a basis for a civil action for damages against the Sheriff whose deputies jailed a party to the proceedings based upon those orders. *See Addlespurger v. Corbett*, 461 F. App'x 82, 85–86 (3d Cir. 2012).

The scope of the quasi-judicial immunity, though broad, does not extend to actions taken outside the scope of a non-judicial officer's duty. It extends only to acts authorized by court order and excludes acts that exceed such authorization. Thus, for example, officers may be immune from making an arrest pursuant to a warrant, but not for use of excessive force when executing an arrest warrant. *Russell v. Richardson*, 905 F.3d 239, 248–49 (3d Cir. 2018). Nor does it extend to discretionary actions not taken at the direction of a judge. *See Snyder v. Fleming,* 102 F.Supp.2d 592, 596 (M.D. Pa. 2000) (denying summary judgement to sheriff's office defendants who seized plaintiff's property in order to satisfy a judgment for which they were entitled to immunity, but also provided incorrect discretionary advice to the plaintiff for which they may not have been entitled to immunity).

The Plaintiff does not allege that the Sheriff was acting outside the scope of his authority pursuant to the facially valid writ issued by the Court of Common Pleas of the First Judicial District. Plaintiff's allegations against the Sheriff all stem from the lawful enforcement of the writ. The allegations against the Sheriff are essentially that after allegedly receiving notice of the

9

bankruptcy, the Sheriff sought to enforce the writ of possession on six separate occasions. In fact, Deputy Taylor sought to personally serve a Notice to Vacate once and an Eviction Notice once, but because personal service could not be made, a copy of each document was posted to the Property, left in the mail slot of the Property and mailed to the Property. There is no suggestion that the writ was enforced in a manner that was beyond the scope of the mandate contained therein, which directed the Sheriff to deliver possession to Defendant Hassan. Nor was the Sheriff exercising any discretion in enforcing the writ. Thus, even taking the facts as alleged in the light most favorable to the Plaintiff, quasi-judicial immunity would extend to the Sheriff under these circumstances.

### B. Execution of the Writ is a Ministerial Act Not Subject to the Automatic Stay

The Sheriff's mandate to enforce the writ of possession is so clear that the act of execution is a ministerial act that is not subject to the automatic stay. Section 362(a)(1) prohibits the continuation of any prepetition judicial, administrative, or other action against the debtor, including the issuance or employment of process. 11. U.S.C. § 362(a)(1). However, "Ministerial acts, even if undertaken post-petition within the context of a judicial or other court proceeding do not violate the automatic stay, in particular § 362(a)(1)." *In re Pulcini,* 261 B.R. 836, 834 (Bankr. W.D. Pa. 2001). *See also In re Connors,* 497 F.3d 314, 321 (3d Cir.2007) (delivery of sheriff's deed, although conveying legal title, is a ministerial act). In the instant case it is manded that the Sheriff, "either personally or by deputy, *shall* serve process and execute orders directed to him pursuant to law." 42 Pa.C.S.A. § 2921 (emphasis added). The use of word "shall" makes execution of the order a ministerial act rather than a judicial function. *See e.g., In re Williams*, 371 B.R.102, 111 (Bankr. E.D. Pa. 2007). When an official's duty is delineated by

10

law with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial. *In re Soares*, 107 F.3d 969, 974 (1st Cir. 1997).

Ministerial acts are the antithesis of judicial acts as judicial acts involve the exercise of discretion or judgment. *In re Soares*, 107 F.3d 969, 974 (1st Cir. 1997). The entry of the judgment for possession, prior to the filing of Plaintiff's bankruptcy petition, concluded the judicial proceedings. What followed with respect to the execution of the writ of possession were mere ministerial acts following the completion of the judicial function. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 528 (2d Cir. 1994); *In re Soares*, 107 F.3d at 974 (actions taken in obedience to the judge's peremptory instructions or otherwise defined and nondiscretionary are ministerial and do not violate the automatic stay even if taken after an affected party files for bankruptcy).

An act is ministerial where the law not only allows it, but demands it. For example, in *In re Williams*, 371 B.R. 102 (Bankr. E.D. Pa. 2007), a landlord brought its eviction action before the Magisterial District Court under Pennsylvania's Landlord Tenant Act, 63 P.S. § 250.101 *et seq.* The rules regarding the judgment, entered prior to the tenant's bankruptcy petition, require that the landlord first file a request for an Order for Possession. Pa. R.C.P.M.D.J. 515. Chief Judge Sigmund further noted that:

> Upon such a request, 'the magisterial district judge *shall* issue the order for possession and *shall* deliver it for service and execution to the sheriff ... The order *shall* direct the officer executing to deliver actual possession of the real property to the plaintiff.' Pa. R.C.P.M.D.J. 516 (emphasis added).

*Id.* at 111. She concluded that in using the word "shall" the Rule makes the issuance and execution of the order a ministerial act rather than judicial function requiring the exercise of discretion. *Id.*

11

The issuance and execution of the writ of possession at issue here were similarly ministerial. Defendant Hassan filed an ejectment action in the Philadelphia Court of Common Pleas. Pursuant to the applicable rules of civil procedure, a judgment for possession *shall* be enforced by a writ of possession. Pa. R.C.P. No. 3160. The procedure for enforcement of the judgment for possession *shall* be in accordance with the rules governing the enforcement of judgments for the payment of money. Pa. R.C.P. No. 3161. Execution *shall* be commenced by filing a praecipe for a writ of execution with the prothonotary of any county in which judgment has been entered. Pa. R.C.P. No. 3103. Upon issuance of the writ the prothonotary *shall* transmit it directly to the sheriff to whom it is directed or deliver it to the plaintiff for transmittal. Pa. R.C.P. No. 3103. The sheriff *shall* note on the writ the date and time when it is received. Pa. R.C.P. No. 3105. All the foregoing acts, ministerial in nature, occurred prior to the Plaintiff filing his bankruptcy petition. Although the Sheriff did execute on the writ post-petition, he had no discretion in performing his official duty when executing the writ because, pursuant to statute, the Sheriff "either personally or by deputy, *shall* serve process and execute orders directed to him pursuant to law." Thus, any post-petition efforts to enforce the writ were also ministerial in nature and are not in violation of the automatic stay.

### C. Plaintiff Is Not Entitled to Emotional Distress Damages

The Sheriff's Motion for Summary Judgment should be granted because the Plaintiff may not seek emotional distress damages against the Sheriff. Furthermore, based on the facts in the record the Plaintiff would not be able to establish that the alleged actions of the Sheriff caused him emotional distress such that he could recover emotional distress damages in this case.

### 1. The abrogation of sovereign immunity under 11 U.S.C. § 106(a) to allow a "money recovery" against a governmental unit does not permit an award for emotional distress damages.

Congress provided for a limited waiver of sovereign immunity as to governmental units. 11 U.S.C. § 106(a). The abrogation of sovereign immunity, or lack thereof, is applicable to claims for damages by debtors alleging violations of the automatic stay. 11 U.S.C. §§ 106(a)(1), 362(k). While the Bankruptcy Code allows a court to enter a judgment against a governmental unit and award a "money recovery," the Bankruptcy Code does not abrogate a governmental unit's sovereign immunity as to emotional distress damages.

The First Circuit decision in *In re Rivera Torres* provides a very thorough review on this issue. 432 F.3d 20 (1st Cir. 2005). In *Torres*, the First Circuit Court of Appeals considered the issue of whether the Bankruptcy Code's abrogation of sovereign immunity to allow "money recovery" includes the authority to enter a judgment for damages claimed for emotional distress. *Torres* involved the violation of a discharge order by the Internal Revenue Service. The court recognized that other circuits took the position that there was no authority "to support the proposition that emotional distress is an appropriate item of damages for civil contempt." *Id*. at 27 (citing *Burd v. Walters*, 868 F.2d 665, 670 (4th Cir. 1992) (holding that compensation for emotional distress was not intended as a "device for redressing private injuries"). However, the First Circuit did not need to reach the same conclusion. Based on the legislative history of the Bankruptcy Code and the United States Supreme Court's interpretation of the term "money recovery" under the Administrative Procedures Act, *id.* at 29 (discussing *Bowen v. Massachusetts*, 487 U.S. 879 (1988)), the Court found that Congress did not intend Section 106(a)(3) to abrogate sovereign immunity to allow emotional distress damages. *Id.* at 31.

The U.S. Supreme Court has long held that a waiver of sovereign immunity must be "unequivocally expressed" by the statutory text. *See F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (citations omitted). At issue in *Cooper* was whether the government's waiver in the Privacy Act for "actual damages" included recovery for emotional distress damages. *Id.* The Court reviewed the "canon of interpretation" that requires that any ambiguities in the statute be construed in favor of upholding sovereign immunity, and that "ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Id.* at 290-291 (citations omitted). Although there are no specific "magic words" to waive immunity, the scope of the waiver must be "clearly discernable from the statutory text" using traditional tools of statutory construction. *Id.* at 291. If it is not, the sovereign immunity canon of statutory construction requires that ambiguous language be construed to favor the sovereign. *Id.*

In *In re Lansaw*, 853 F.3d 657 (3d Cir. 2017), cert. denied sub nom. *Zokaites v. Lansaw*, 138 S.Ct. 1001 (2018), the Third Circuit Court of Appeals considered whether "actual damages" included emotional distress damages specifically for willful violations of the automatic stay under 11 U.S.C. 362(k). The facts of the case involved "egregious" violations of the automatic stay, taken by the landlord of property occupied by the debtors. *Id.* at 669. The court found that emotional distress damages were recoverable as "actual damages" under 362(k)(1) for willful violations of the automatic stay. *Id.* at 664. The court explicitly noted, however, that the defendant in that case was not "the federal government nor a state government" and left open "the question of whether emotional-distress damages may be recovered under § 362(k)(1)" when examined in the context of the sovereign immunity canon. *Id.* at 667 n.8.

A waiver of sovereign immunity may subject the government to some categories, but not others. *Torres*, 432 F.3d at 24 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("To sustain a

claim that the Government is liable for awards of monetary damages, the waiver must extend unambiguously to *such* monetary claims.") (emphasis added). As a matter of reading the plain text, "money recovery" cannot be deemed to include emotional distress damages. *Torres*, 432 F.3d at 29 (citing *Bowen*, 487 U.S. 879). The Supreme Court requires that a waiver of sovereign immunity be unambiguous and that any ambiguous wording be construed in favor of the sovereign, as discussed at length in *Cooper*, 566 U.S. 284. Although the Third Circuit has determined that "actual damages" under Section 362(k)(1), it is reasonable to view the waiver of sovereign immunity for "money recovery" under Section 106(a) more narrowly. Indeed, the Third Circuit explicitly constrained their holdings in *Lansaw* so as not to address the question of sovereign immunity under Section 106(a).

Given that the plain text "money recovery" under Section 106(a) does not reveal the scope of the waiver and is considered ambiguous, principles of statutory construction require that the ambiguity as to a waiver of sovereign immunity must be resolved in favor of the sovereign. As such, this Court should find that the waiver under 106(a) for "money recovery" should be construed to permit pecuniary loss but not to permit recovery for emotional distress.

Absent a waiver of immunity under 106(a), the Plaintiff's claim must proceed through the analysis of the governmental immunity enjoyed by the Sheriff. In the instant case, the Sheriff of the City of Philadelphia is protected with immunity from liability granted under Pennsylvania's Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 Pa. C.S.A. §§ 8541–64. The Tort Claims Act confers a general grant of immunity for claims against local agencies:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S.A. § 8541. The Tort Claims Act similarly protects employees of local agencies, such as the Sheriff, with the same immunity so long as they do not engage in willful misconduct, which is defined as "crime, actual fraud, actual malice or actual misconduct."' *Gresh v. Huntingdon Cty.*, 1:15-CV-1466, 2017 WL 3433658, at *5 (M.D. Pa. Aug. 10, 2017) (quoting 42 Pa. C.S.A. § 8550); *see* 42 Pa. C.S.A. § 8545; *see also Simpson v. Philadelphia Sheriff's Office*, 351 F.Supp.3d 919, 925 (E.D. Pa. 2019); *LaGuardia v. Ross Twp.*, CV 3:15-1475, 2016 WL 4502443, at *10 (M.D. Pa. Aug. 29, 2016), aff'd, 705 Fed.Appx. 130 (3d Cir. 2017).

The Tort Claims Act establishes certain predicates that plaintiffs must establish as well as eight narrowly defined exceptions to the Sheriff's state-created grant of general immunity, into which a plaintiff's cause of action must fall in order to be viable. *Mascaro v. Youth Study Center*, 523 A.2d 1118 (Pa. 1987) (exceptions to the tort claims act must be narrowly construed). Plaintiff must demonstrate:

1. the alleged damages "would be recoverable under common law or a statute creating a cause of action,"

2. the "injury was caused by the negligent acts of [a] local agency or an employee thereof," and

3. the local agency or an employee thereof was acting within the scope of his office or duties.

42 Pa. C.S.A. § 8542(a). The eight exceptions to immunity are enumerated in the Tort Claims Act as negligence with respect to (1) vehicles; (2) the City's care of a claimant's personal property; (3) City-owned real property; (4) trees, traffic controls, and street lights; (5) City-owned utilities; (6) streets; (7) sidewalks, and (8) City-controlled animals.

In the instant Adversary Proceeding, Plaintiff asserts that the harm caused by the Sheriff's conduct has manifested itself in ways such as headaches and loss of sleep that should be compensated as emotional injuries. Compl. ¶ 64. Plaintiff seeks an award of compensatory and

punitive damages as well as attorney's fees and sanctions pursuant to Section 362(k)(1). Compl. ¶ 68. It is undisputed that Deputy Sheriff Taylor visited the property twice to effectuate service of Defendant Hassan's Writ of Possession. On those two occasions, when personal service could not be made, Deputy Taylor posted the notice she was attempting to serve, left a copy in the mail slot and sent a copy by mail. Even if it is assumed for purposes of the Motion for Summary Judgment that, in the light most favorable to the Plaintiff, this conduct may be considered tortious acts in Pennsylvania, they are not delineated in any of the strictly construed (*Mascaro*) exceptions to the grant of general immunity conferred upon the Sheriff by the state's Tort Claims Act. As such, this Court should find that the Sheriff is not liable for damages for emotional distress.

### 2. Plaintiff is not entitled to recover emotional distress damages because the Sheriff has not willfully violated the stay under 11 U.S.C. § 362(k).

The undisputed facts in this case do not establish that the alleged actions of the Sheriff caused the Plaintiff emotional distress such that he could recover damages for emotional distress in this case. Plaintiff averred generally in his Complaint as to the nature of his emotional injuries, Compl. ¶ 64, but has not produced any medical evidence to corroborate the harm or to establish a causal connection to the Sheriff's actions.

It is only when the violations are truly egregious that testimony alone should suffice to award emotional distress damages. In *In re Lansaw*, 853 F.3d 657 (3rd Cir. 2017), the court focused on the egregious nature of the defendant landlord's violations as a justification for the award of emotional distress damages. In that case, the defendant personally intruded into the debtor-plaintiff's business, despite being denied permission to enter, and physically intimidated the debtor. 853 F.3d at 661. The defendant then entered the business after hours, chained and padlocked the doors, and threatened the debtors that he would not let them run their business the

next day. *Id.* Later that night, after the debtors had returned to their business to guard it against the defendant, the defendant returned to lock the debtors in from the outside, leaving debtors to call the police for rescue. *Id.* at 662. Lastly, when the debtors were in negotiations with a different landlord to try and relocate their business, the defendant harassed that landlord and threatened them with legal action. *Id.*

The court noted that, in the absence of "patently egregious" violations, "corroborating medical evidence may be required to prove emotional harm and causation." *Lansaw*, 853 F.3d at 669. Although the court did not define what facts would give rise to such a determination, the facts of the instant case are markedly different from the "patently egregious" fact pattern in *Lansaw*.

Here, the Sheriff was tasked with enforcing a facially valid court order for writ of possession. In an attempt to properly notify any potential occupants at the Property, attempt at personal service was made on two occasions. When personal service could not be had on those two occasions, notice was posted to the property, left in the mail slot and sent by mail. The Civil Enforcement Unit had no knowledge that there was a bankruptcy related to the eviction action. Further, the Sheriff in this context was not acting as a creditor, but rather as is as an arm of the judicial system, implementing court-related processes. These facts do not rise to a willful violation of the automatic stay, let alone the egregious nature that would absolve the Plaintiff from presenting corroborating information of their emotional distress. Yet Plaintiff has presented zero evidence to corroborate his averments of emotional distress, or to connect the specific actions of the Sheriff to the alleged harm suffered. In the absence of any factual support, this Court should dismiss Plaintiff's claim for emotional distress damages.

### D. Plaintiff Is Not Entitled to Punitive Damages

Plaintiff, Lyndel Toppin, also seeks punitive damages against the Sheriff of the City of Philadelphia. Pursuant to 11 U.S.C. § 106(a)(3), a Court may not issue punitive damages against a governmental unit. The Bankruptcy Code provides:

> The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages**.

11 U.S.C. § 106(a)(3) (emphasis added).

The Sheriff is an elected official authorized and established by the Pennsylvania Constitution. Pa. Const. art. 9, § 4. The Complaint alleges no facts about the Sheriff individually, but rather makes allegations about the Sheriff acting in his official capacity. As such, this suit against the Sheriff in his official capacity should be treated as a suit against the Sheriff's Office. *Simpson v. Philadelphia Sheriff's Office*, 351 F.Supp.3d 919, 929 (E.D. Pa. 2019) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (2018). The Sheriff's Office is clearly a "governmental unit" as defined by 11 U.S.C. § 101 (27) ('The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of . . . a State, a Commonwealth, a District, a Territory, a municipality . . .; or other foreign or domestic government.'). As such, Plaintiff may not seek punitive damages against the Sheriff and this prayer for relief must be dismissed.

WHEREFORE, the City of Philadelphia respectfully requests that the Court grant summary judgment in the Sheriff's favor, dismiss the Complaint with prejudice and grant such other and further relief as this Court deems appropriate.

                                              Respectfully submitted,

                                              THE CITY OF PHILADELPHIA

Dated: December 26, 2019        By:    */s/ Megan N. Harper*
                                                         MEGAN N. HARPER
                                                         Deputy City Solicitor
                                                         PA Attorney I.D. 81669
                                                         Attorney for the City of Philadelphia
                                                         City of Philadelphia Law Department
                                                         Municipal Services Building
                                                         1401 JFK Boulevard, 5th Floor
                                                         Philadelphia, PA  19102-1595
                                                         215-686-0503 (phone)
                                                         Email: Megan.Harper@phila.gov