**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| | : | |
| LYNDEL TOPPIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF OF THE CITY OF PHILADELPHIA and ABDELDAYEM HASSAN a/k/a ABDELDYEM HASSAN, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

It is well known that the automatic stay is designed to stop pending debt collection activity and litigation and is considered one of the fundamental protections afforded by the Bankruptcy Code.

In this case, there is no dispute that the Philadelphia Sheriff had knowledge of the bankruptcy case on May 8, 2018.

Sheriff's position that it is somehow above the law and immune from contempt of court is ill-conceived and misplaced as a matter of established law. Congress intended that the automatic stay reach governmental entities irrespective of any immunity that they might have.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

1.    Admitted. By a way of further response, debtor's home at 146 S. 62nd Street, Philadelphia, PA 19139 (the "Property") was sold at sheriff's sale on October 5, 2017 due to delinquent real estate taxes amounting to $1,967.40. A true and correct copy of the Sheriff's Distribution is attached hereto as Exhibit "A."

2. Admitted to the extent stated in Plaintiff's Complaint. By way of further response, Abdeldayem Hassan a/k/a Abdeldyem Hassan was the winning bidder at the sale.

3. Admitted to the extent Plaintiff's Complaint so indicates. By way of further response, on January 22, 2018, Defendant Hassan filed an ejectment action in the Philadelphia Court of Common Pleas against "Unknown Occupants" of the Property.

4. Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, on April 05, 2018, Defendant Hassan received a default judgment and filed a Motion for Writ of Possession against Unknown Occupants, which was granted on April 30, 2018.

5. Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, Defendant Hassan filed the Praecipe and the court issued the Writ of Possession against Unknown Occupants for the Property on May 07, 2018.

6. Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, on May 8, 2018 at 6.04 PM, Mr. Lyndel Toppin filed a Chapter 13 bankruptcy petition in a matter styled In re: Toppin, E.A. Pa. Bankr. No. 18-13098-MDC.

7 Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, on May 8, 2018 at 6.27 PM Debtor's Counsel provided the Notice of Bankruptcy Case Filing to the Sheriff via facsimile at 215-686-3555. See Ex. "B"

8. Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response on May 8, 2018 at 6.28 PM Debtor's Counsel provided the Notice of Bankruptcy Case Filing to the Sheriff via facsimile at 215-686-3971. See Ex. "C"

9. Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response on or around May 8, 2018, at 10:25 PM, the Sheriff received a fax with the subject line "Notice of Bankruptcy Case Filing – Book/Writ 1707-5002.1." See Def.'s Mot. at pg. 3, ¶11.

10. Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response on May 9, 2018 Debtor's Counsel telephoned Sheriff at 215-686-3565 and provided oral Notice of Bankruptcy Case Filing. See Ex. "D"

11. Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response on May 10, 2018 Debtor's Counsel provided the Notice of Bankruptcy Case Filing to the Sheriff via facsimile at 215-686-3555. See Ex. "E."

**STATEMENT OF PLAINTIFF'S UNDISPUTED FACTS:**

12. On or about May 10, 2018, Deputy Sheriff Jetaria Taylor ("Deputy Taylor") went out to the Property to personally serve the Notice to Vacate the premises. See Def.'s Memo at pg. 4, ¶18.

13. On or about May 10, 2018, Sheriff Taylor posted the notice to the front door, left a copy of the notice in the mail slot at the Property, and mailed a copy of the notice through regular mail. See Def.'s Memo at pg. 4, ¶19.

14. On or about May 18, 2018, Sheriff served Debtor, Lyndel Toppin with a Notice to Vacate. See Ex. "F."

15. On or about May 24, 2018, Sheriff served Debtor, Lyndel Toppin with a Notice to Vacate. See Ex. "G."

16. On or about May 30, 2018, Sheriff served Debtor, Lyndel Toppin with a Notice to Vacate. See Ex. "H."

17. On May 31, 2018, the Bankruptcy Noticing Center mailed a notice of the Plaintiff's bankruptcy case to the Philadelphia Sheriff's Office at 100 S. Broad Street, 5th Floor, Philadelphia, PA 19110, and provided electronic notice to the City of Philadelphia Law Department at bankruptcy@phila.gov. See Def.'s Memo at pg. 4, ¶20.

18. On or about June 1, 2018, Sheriff Taylor returned to the Property to personally serve the Eviction Notice. See Def.'s Memo at pg. 4, ¶21.

19. On or about June 1, 2018, Sheriff Taylor posted the notice to the front door, left a copy of the notice in the mail slot at the Property, and mailed a copy of the notice through regular mail. See Def.'s Memo at pg. 5, ¶22.

20. On or about June 1, 2018, Sheriff served Debtor, Lyndel Toppin with an Eviction Notice. See Ex. "I."

21. On or about June 5, 2018, Sheriff served Debtor, Lyndel Toppin with an Eviction Notice. See Ex. "J."

22. On or about June 7, 2018, Sheriff served Debtor, Lyndel Toppin with an Eviction Notice. See Ex. "K."

23. Despite ample notice of the underlying bankruptcy, Sheriff violated the statutory injunction imposed by 11 U.S.C. § 362 on at least six ("6") separate occasions.

24. Sheriff's 30(b)(6) witness Lieutenant Thornton testified that Sheriff's Office did not devise a telephone line or a web site, or establish an electronic mailbox or a facsimile number

where debtors or their attorneys could transmit notice of a bankruptcy to the Sheriff's Office. See Thornton Dep. 13:5 -14:9, Dec. 12, 2019.

25. Accordingly, Sheriff's litigation tactic in defense of automatic stay violation cases, when receipt of Notice of bankruptcy is at issue, is to pass the receipt of Notice burden from one of its departments to another in an attempt to shift the burden onto the Debtors and their attorneys to guess which department deemed themselves notified and which one should be, and or whether or not Sheriff's interdepartmental communication of the Notice took place. See Def.'s Memo at pg. 3, ¶13, pg. 4, ¶15-16.

26. The Sheriff's legal legerdemain is evident upon reviewing the Sheriff's Service Event Report dated May 10, 2018 which indicates a bankruptcy filing and is categorized as "Writ of Possession," which would be presumably handled by the Civil Enforcement Unit. See Ex. "L."

27. The Sheriff's Service Event Report dated June 25, 2018 is also categorized as "Writ of Possession," although it states that notice of the bankruptcy was received on June 6, 2018. See Ex. "M."

28. Despite the above inconsistency claiming notice of the bankruptcy on June 6, 2018, a Sheriff's Return of Service dated August 20, 2019 indicates that Defendant's Attorney (Stephen M. Dunne, Esq.) visited the Sheriff's Office on May 8, 2018 and also states that a "Bankruptcy Filed in Sheriff's Office" on May 9, 2018. See Ex. "N."

29. The Sheriff's Return of Service noting "Bankruptcy Filed in Sheriff's Office" and dated May 9, 2018 was presumably delivered to the Sheriff at/around 9.00 AM as evidenced by the Sheriff's handwritten note "Bankruptcy Filed" but Sheriff's handwritten note is dated June 25th without any year cited. See Ex. "O."

30. Sheriff's haphazard system places the public at grave risk as Debtors and their attorneys have no way of uploading; inputting; or sending notice of a bankruptcy to the Sheriff's Office.

31. Consequently, the Sheriff's Office has no discernable process; procedure; or internal policy to accept and process notices of bankruptcy cases and otherwise comply with federal bankruptcy law.

32. Sheriff's legally erroneous submissions in summary judgment motion claiming sovereign immunity from BK code, further bolster the facts on the record pointed to by Plaintiff above that the operations of the Sheriff are not sufficiently equipped or even particularly interested in complying with the Automatic stay provisions of Bankruptcy Code.

## II. LAW AND ARGUMENT

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) adopted in the Bankruptcy code as 7056 a), states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Movant in this instance failed to demonstrate the absence of genuine issue of fact, that would allow summary judgment to be entered in their favor.

"A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322. Plaintiff has pointed to concrete admissions under oath, in the pleadings, as well as various admissible documents which preclude summary judgment in Sheriff's favor.

### A. THE AUTOMATIC STAY

Section 362(a) of the Code provides an automatic stay of certain actions once a petition under the Code is filed, including:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate.

It is clear that the actions of the sheriff in continuing with the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor after the debtor had filed his petition is a violation of the automatic stay.

### B. NOTICE TO SHERIFF OF THE TOPPIN BANKRUPTCY CASE

A violation of the automatic stay is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case. *Laboy v. Doral Mortg. Corp. (In re Laboy),* 647 F.3d 367, 374 (1st Cir. 2011) (*quoting In re McMullen,* 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act which violates the stay. *Fleet Mortg. Grp. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999).

Sheriff acknowledged receiving actual notice of Mr. Toppin's bankruptcy filing on May 8, 2018. See Def.'s Memo at pg. 3, ¶11.

Sheriff's actions in continuing with the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor by visiting his personal residence; posting his property; inserting notices in his mailbox; and mailing Notices to Vacate and Eviction Notices all constitute individual and separate violations of the automatic stay under § 362(k). It is well known that the automatic stay is designed to stop pending debt collection activity and litigation and is considered one of the fundamental protections afforded by the Bankruptcy Code. E.g., *In re Billings*, 544 B.R. 529, 533 (Bankr. E.D. Pa. 2016) (citing *H & H Beverage Distributors v. Dep't of Revenue of Com. of Pa., 850 F.2d 165, 166 (3d Cir. 1988)*), aff'd, 687 Fed.Appx. 163, 2017 WL 1488657 (3d Cir. Apr. 26, 2017) (nonprecedential).

The automatic stay, imposed by 11 U.S.C. § 362(a), prohibits, inter alia, "any act to collect ... or recover a claim against the debtor that arose before the commencement of the case," 11 U.S.C. § 362(a)(6) and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3).

A willful violation of the automatic stay gives rise to a claim for damages, as set forth in 11 U.S.C. § 362(k):

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. § 362(k) (emphasis added).

The Third Circuit recently summarized the well established standard for the concept of a "willful" violation of the automatic stay:

> "It is a willful violation of the automatic stay when a creditor violates the stay with the knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.... [A] creditor's `good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness...."

*In re Lansaw,* 853 F.3d 657, 664 n.4 (3d Cir. 2017) (emphasis added) (quoting *In re Lansdale Family Rests., Inc*, 977 F.2d 826, 829 (3d Cir. 1992)); see also *In re Atlantic Business & Community Corp.*, 901 F.2d 694\*694 325, 329 (3d Cir. 1990) ("the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional") (citations omitted).

### C.    THE AUTOMATIC STAY ENCOMPASSES ACTIONS BY THE SHERIFF

Bankruptcy Courts have long held Sheriffs' in contempt of court for violating the automatic stay.
 *In re Bunnell*, 19 F. Supp. 861 - Dist. Court, MD Pennsylvania 1937 (Wyoming County Sheriff held in contempt of court for executing on an alias writ of fieri facias against the debtor's exempt property in violation of the bankrupts restraining order);
 *In re Dennis*, 14 BR 125 - Bankr. Court, ED Pennsylvania 1981 (Delaware County Sheriff continuing with the sheriff's sale after the debtor had filed her petition was a violation of the automatic stay);
 *In re Wilson*, (19 B.R. 45 ) Bankr. Court, ED Pennsylvania 1982 (Philadelphia County Sheriff held in contempt for issuing a deed to debtor's residence; having that deed acknowledged

by the prothonotary and recorded after the Sheriff had actual notice that the debtors had filed a petition under Chapter 13 of the Bankruptcy Code);

*In re Denklau* (158 BR 796) Bankr. Court, ND Iowa 1993 (Sheriff's conduct was in willful violation of the automatic stay although correct under Iowa law. Where state law is in conflict with federal bankruptcy law, the state law must give way).

### D.    THE SHERIFF IS IN CONTEMPT OF COURT

Sheriff conflates the question of contempt by arguing the merits and legitimacy of its post-petition activity. This line of reasoning is misplaced as the automatic stay imposed by the filing of a bankruptcy petition acts as a specific and definite order of court so as to restrain creditors from the continuance of judicial process or collection efforts against the debtor. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976). *In re Mealey,* 16 B.R. 800 (Bkrtcy.E.D.Pa.1982). *In re Demp*, 23 BR 239 - Bankr. Court, ED Pennsylvania 1982.

Neither agency principles nor claims of sovereign immunity will shield the Sheriff from this liability. Moreover, § 106(a)(1) of the Bankruptcy Code provides that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [§ 362]." 11 U.S.C. § 106(a)(1). Subsection 2 provides that "[t]he court may hear and determine any issue arising with respect to the application of such section[] to governmental units." *Id.* at § 106(a)(2).

### E.    THE SHERIFF'S IMMUNITY DEFENSE

The Sheriff's posits that Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8541 et seq. (the "PSTCA") provides a complete, affirmative defense to the Debtor's claim. "However, in this bankruptcy proceeding, in which the Debtor asserts a cause of action created by the Bankruptcy Code, the statutory immunity provided by the PSTCA has no applicability." See *In re Odom* (571 BR 687) Bankr. Court, ED Pennsylvania 2017.

Any potential Eleventh Amendment immunity has been waived and imposes no obstacle to the bankruptcy court's adjudication of this proceeding for damages under 11 U.S.C. § 362(k).

In *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), the Supreme Court held that the "States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to `Laws on the subject of Bankruptcies.'" *Id*. at 377. As a result, bankruptcy in rem jurisdiction extends against a state in all matters arising in bankruptcy cases that are "necessary to effectuate the in rem jurisdiction of the bankruptcy courts." *Id*. at 378. The exercise of this bankruptcy jurisdiction is not dependent upon 11 U.S.C. § 106 or any Congressional action.

In *Katz*, the Supreme Court identified three (3) "[c]ritical features" of the bankruptcy court's in rem jurisdiction: the exercise of exclusive jurisdiction over all of the debtor's property,

the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a `fresh start' by releasing him, her, or it from further liability for old debts. *Id.* at 363-64.

A proceeding involving the enforcement of the automatic stay constitutes a "critical feature" in the exercise of in rem bankruptcy jurisdiction in that it facilitates the exercise of the court's exclusive jurisdiction over the debtor's property. As the Eleventh Circuit has explained:

Ordinarily, an adversary action arising out of a creditor's violations of the automatic stay forces the creditor to honor the automatic stay and thereby assists the bankruptcy court in carrying out its *in rem* functions. That holds true even where the action takes the form of a motion seeking contempt and sanctions. Although these kinds of actions `may resemble money damage lawsuits in *form,* it is their *function* that is critical, and their *function* is to facilitate the *in rem* proceedings that form the foundation of bankruptcy.' (italics in original).

*In re Diaz*, 647 F.3d 1073, 1085 (11th Cir. 2011); accord *In re Schroeder*, 2009 WL 3526504, at *4 (Bankr. D. Neb. Oct. 23, 2009) (under *Katz*, "damages for violating the automatic stay are within the scope of the [bankruptcy] court's authority over the states").

Section 106(a) purports to be a Congressional waiver of Eleventh Amendment immunity (an immunity which the *Katz* court held was waived through the ratification of the Constitution and not dependent on Congressional action).

After *Katz*, both *Sacred Heart* and § 106(a) essentially are irrelevant in the analysis of waiver of state sovereign immunity. See *In re Odom*, 571 BR 687 - Bankr. Court, ED Pennsylvania 2017:

"In any event, as previously explained in the previous section of this Memorandum: (1) as a local agency, the PPA cannot invoke state sovereign immunity; and (2) even if the PPA were a state instrumentality, under Katz, it could not invoke sovereign immunity as a defense to an action under 11 U.S.C. § 362(k)." *Id* at 696.

In the case at hand, the Sheriff is in contempt of court for violation of a federal court order and its attempt to assert local agency's immunity under the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §8541-8542 is abrogated by 11 U.S.C. § 106(a)(1) of the Bankruptcy Code. Section 106(a)(1) of the Bankruptcy Code provides that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following," and then lists sixty Bankruptcy Code sections, including § 362.

F.  **DAMAGES UNDER SECTION 362(K)(1)**

Section 362(k)(1) of the Bankruptcy Code provides redress for violations of the automatic stay. It mandates that, subject to exceptions not applicable in this case, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

The Debtor requests an award of actual damages, including attorney's fees and costs, and punitive damages pursuant to section 362(k)(1). An individual harmed by a willful violation of the automatic stay can recover actual damages, including costs and attorneys' fees, as well as punitive damages in appropriate circumstances. See 11 U.S.C. § 362(k)(1). The court in *In re Rodriguez*, No. 07-24687 (MBK), 2012 WL 589553 (Bankr. D.N.J. Feb. 22, 2012) explained that the test under section 362(k)(1): is "remarkably simple" and requires the imposition of sanctions on a party violating the automatic stay upon three provisions: First, the offending party must have violated the automatic stay. Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury. *Rodriguez*, 2012 WL 589553, at *3 (citing, *In re Miller*, 447 B.R. 426, 433 (Bankr. E.D. Pa. 2011)).

As set forth above, Sheriff has violated the automatic stay. The court need only to address the remaining two elements under section 362(k)(1). As to the second element of that test, "willfulness can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless." *Rodriguez*, 2012 WL 589553 at *4. In addition, "[w]illfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *In re Lansdale Family Rest., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992).

Here, Sheriff acknowledged receiving actual notice of Mr. Toppin's bankruptcy filing on May 8, 2018. See Def.'s Memo at pg. 3, ¶11. Sheriff was provided notice of Plaintiff's bankruptcy long before the alleged stay violations occurred.

Despite actual notice of the filing, the Sheriff intentionally pursued a course of unlawful action in violation of 11 U.S.C. § 362(a). The Sheriff had actual notice, was warned, and should not have taken any action against the Debtor without first obtaining stay relief. The second element is satisfied. That the Sheriff willfully violated the automatic stay is a matter of well-established law.

**1. COMPENSATORY DAMAGES**

Plaintiff, Lyndel Toppin suffered actual damages in the form of out-of-pocket expenses; lost time; transportation expenses; attorney's fees, and emotional distress. The Sheriff's actions clearly reflect a willful violation of 11 U.S.C. § 362 automatic stay for which sanctions should be imposed. Where a willful violation of the stay is demonstrated, compensatory damages are mandatory. 11 U.S.C. § 362(h) (1988). See Also *In re Like*, 103 BR 830, (Bankr.SD.Tx 1989); *Internal Revenue Service v. Murphy*, No. 17-1601 (1st Cir. 2018) (IRS's willful violation of the debtor's bankruptcy discharge result in $175,000.00 in damages).

**2. EMOTIONAL DISTRESS**

Defendant's unlawful action caused irreparable harm to the Plaintiff in the form of emotional distress, including: anxiety, difficulty sleeping, depression, and mental anguish.

Most bankruptcy courts have held that emotional distress damages may be awarded only if a causal connection is established between the creditor's actions and the emotional distress suffered. See *Stinson v.Bi-Rite Restaurant Supply, Inc*. (*In re Stinson*), 295 B.R. 109, 120 n. 8 (9th Cir. BAP 2003) quoted in *In re Wingard*, 382 B.R. 892, 906 (Bankr. W.D.Pa.2008). The Sheriff's actions caused irreparable harm to the Plaintiff in the form of emotional distress

**3. PUNITIVE DAMAGES HAVE BEEN AWARDED IN THIS CIRCUIT WHERE CULPABILITY OF THE DEFENDANT'S CONDUCT MET THE THRESHOLD**

Genuine issues of material fact exist precluding Summary Judgment to the Sheriff on this issue.

In *NCVAMD*, the court awarded punitive damages against a state agency for violation of the automatic stay. The court reasoned that, in light of the consent by ratification theory accepted by the Supreme Court in *Katz*, a bankruptcy court may award punitive damages, notwithstanding § 106(a)(3), "when doing so is necessary to effectuate the court's *in rem* jurisdiction." 2013 WL 6860816 at * See e.g. *Jones v. Keene Corp.*, 933 F.2d 209, 214 (3d Cir. 1991) ("If a provision of the [bankruptcy] Plan, a creature of federal law, conflicts with the law of a state and the state law `frustrates the full effectiveness of federal law the state law is rendered invalid by the Supremacy Clause.'") (quoting *Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)); *In re Midway Airlines, Inc.*, 175 B.R. 239, 243 (Bankr. N.D. Ill. 1994) ("[a]ny state common or other law to the contrary must defer to the relevant provisions of the Bankruptcy Code ... pursuant to the Supremacy Clause of the United States Constitution"); *In re Woodings-Verona Tool Works, Inc.*, 157 B.R. 575, 577 n.4 (Bankr. W.D. Pa. 1993) (noting the same); see generally *Buskirk v. Seiple*, 560 F.Supp. 247, 250 (E.D. Pa. 1983) ("state law may not `frustrate or interfere with the implementation of national policies.'") (quoting *Knoll v. Springfield Township School Dist*., 699 F.2d 137, 141 (3d Cir. 1983)) (further citations omitted).

In order to sustain an award for punitive damages, "the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." *Wagner*, 74 B.R. at 904 (citing *Cochetti v. Desmond*, 572 F.2d 102 (3rd Cir.1978)). Punitive damages are proper as a deterrent to those entities who willfully violate the automatic stay provisions, even if actual damages are minimal. *NWFX*, 81 B.R. at 504. "The amount of punitive damages awarded is a function of the offending party's financial capabilities. The award must be sufficient to sting the pocketbook of the wrongdoer." *Mercer v. D.E.F., Inc*. (*In re Mercer*), 48 B.R. 562, 566 (Bankr.D.Minn.1985).

The Sheriff had full knowledge that Toppin had filed a Chapter 13 petition, and yet, it refused to adhere to the requirements of the automatic stay. The Sheriff acted with reckless disregard and in "arrogant defiance" of a federally protected right. The Sheriff's actions caused unnecessary expense to Toppin which could have been avoided if the Sheriff had first sought

relief from the stay under 11 U.S.C. § 362(d). See Also *In re Like*, 103 BR 830, (Bankr.SD.Tx 1989)(punitive damages of $100,000 are necessary to deter the IRS from willfully violating 11 U.S.C. § 362(a) in the future).

Defendant has acted in "arrogant defiance" of the Bankruptcy Code and deserves to be punished accordingly for its egregious behavior in tormenting the Plaintiff and the resulting consequences on the Plaintiff's immediate family. Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. *In re Medlin*, 201 672*672 B.R. 188, 194 (Bankr.E.D.Tenn.1996) (cited in *In re Curtis*, 322 B.R. 470, 486 (Bankr. D.Mass.2005)). This Court has entered an Order compelling the deposition of one of the Sheriff's 30(b)(6) witnesses, whose identity was not previously disclosed by the Sheriff, and who is alleged to have first-hand knowledge and to have dealt directly with the petitioner of the Writ the Execution at issue herein, and at the very least her forthcoming testimony on this issue precludes a partial summary judgment for the Sheriff on the issue of punitive damages, since there have been circumstances where this Court has awarded punitive damages even against State entities for violations of automatic stay. Whether or not the facts in this case warrant punitive damages against the Sheriff is a trial issue.

**WHEREFORE**, Plaintiff, by and through his counsel, respectfully request that this Honorable Court deny Defendant's Motion for Summary Judgment.

Dated: February 5, 2020

By: /s/ *Predrag Filipovic*
**Predrag Filipovic, Esquire**
1735 Market St., Suite 3750
Philadelphia, PA 19103
267-265-0520 Phone
Attorney for Plaintiff

BY: /s/ *Stephen M. Dunne*
**Stephen M. Dunne, Esquire**
1515 Market Street, Suite. 1200
Philadelphia, PA 19102
(215) 551-7109 Phone
Attorney for Plaintiff