IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
--------------------------------------------------------x
In re:                                        :
                                              :      Chapter 13
                                              :
LYNDEL TOPPIN,                                :
                                              :      Bankruptcy No. 18-13098 (MDC)
                Debtor.                       :
--------------------------------------------------------x
--------------------------------------------------------x
                                              :
LYNDEL TOPPIN,                                :
                                              :      Adv. Pro. No. 18-00137 (MDC)
                Plaintiff,                    :
                                              :
        v.                                    :
                                              :
JEWELL WILLIAMS SHERIFF                       :
OF THE CITY OF PHILADELPHIA and               :
ABDELDAYEM HASSAN a/k/a                       :
ABDELDYEM HASSAN,                             :
                                              :
                Defendant                     :
--------------------------------------------------------x
```

**THE SHERIFF OF THE CITY OF PHILADELPHIA'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Jewell Williams, Sheriff of the City of Philadelphia (the "Sheriff"), by and through his Counsel, Megan N. Harper, Deputy City Solicitor, hereby files the following Supplemental Memorandum of Law in Support of Motion for Summary Judgment[1].

Oral argument on the Sheriff's Motion for Summary Judgment was held on February 18, 2020. The Court requested that the parties submit supplemental briefs responsive to the following issue: Whether, by ratifying the United States Constitution and the Bankruptcy Clause

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sheriff's Memorandum of Law in Support of Motion for Summary Judgment [Docket No. 72].

contained therein, the States agreed to waive their sovereign immunity with respect to claims for violation of the stay imposed by 11 U.S.C. §362 for enforcement of a writ of possession.[2]

The Eleventh Amendment to the Constitution has been long understood to stand for the broad supposition that a federal court generally may not hear a suit brought by any person against a nonconsenting State. *Allen v. Cooper*, No. 18-877, 2020 WL 1325815, at *3 (U.S. Mar. 23, 2020). The Amendment protects States and their agencies and departments from suit in federal court. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). A suit against a State official in his or her official capacity is a suit against the official's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In this case, the Sheriff was sued in his official capacity. Thus, if the Sheriff was acting as an arm of the State of Pennsylvania, this lawsuit is an action again Pennsylvania and may be barred by Eleventh Amendment sovereign immunity.

In the Sheriff's Memorandum of Law in Support of Summary Judgment, the Sheriff outlined the role sheriffs play in Pennsylvania, which bears repeating here as it establishes that the Sheriff, in executing the Writ of Possession, was acting as an arm of the State, not as a county official. A sheriff's only duties established by statute are court-related functions. The Pennsylvania Constitution provides that sheriffs are county officers. Pa. Const. Art. IX, § 4. Although the Constitution establishes the office, it does not describe the duties of a sheriff. *Kopko v. Miller*, 892 A.2d 766, 770–71 (Pa. 2006). While the sheriff's power at common law was formidable, other institutions, including modern law enforcement agencies, have greatly diminished the authority of the sheriff's office. *Com. v. Leet*, 585 A.2d 1033, 1037 (Pa. Super.

---

[2] Although the Sheriff's Supplemental Memorandum is limited to addressing this issue, the Sheriff wishes to draw the Court's attention to a Third Circuit opinion issued the day after oral argument on the Motion for Summary Judgment. The Sheriff's Motion included argument that the Sheriff is entitled to quasi-judicial immunity. Attached hereto as Exhibit A is a copy of the Third Circuit's opinion in *Villarreal v. New Jersey*, No. 19-1426, 2020 WL

1991) (citations omitted). "Today, the sheriff's principal function is as an arm of the court, which is the duty specifically assigned to the office of sheriff by the legislature." *Com. v. Leet*, 585 A.2d at 1037. A sheriff is mandated to "serve process and execute orders directed to him pursuant to the law." 42 Pa.C.S.A. § 2921; *Kopko v. Miller*, 892 A.2d at 772; *Commonwealth v. Copenhaver*, 200 A.3d 956, 960–61 (Pa. Super. 2018), *appeal granted*, 215 A.3d 970 (Pa. 2019); *Allegheny County Deputy Sheriff's Ass'n v. Pennsylvania Labor Relations Bd.,* 504 A.2d 437, 439 (PA Cmwlth. 1986) (a sheriff's role is as an arm of the judicial system, implementing court-related processes). It is manded that the Sheriff, "either personally or by deputy, *shall* serve process and execute orders directed to him pursuant to law." 42 Pa.C.S.A. § 2921 (emphasis added). The Sheriff may be held in contempt of court for failure to do so. 42 Pa.C.S.A.§ 4132.

The Seventh Circuit's opinion in *Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992), explains why the extension of Eleventh Amendment sovereign immunity to the Sheriff is appropriate. Sheriffs in Illinois, as in Pennsylvania, are deemed to be county officials by the Illinois Constitution. Illinois county sheriffs' salaries are paid by the counties and the counties are responsible for providing the sheriffs offices and expenses. *Scott v. O'Grady*, 975 F.2d at 370. Illinois law provides that county sheriffs, like those in Pennsylvania, have no discretion in executing court orders. The sheriff has a statutory duty to serve all warrants, process orders and judgments directed or delivered to them. *Id*. at 371. In *Scott*, the Sheriff of Cook County was ordered by Writ of Assistance to accompany a foreclosing bank to a property and use all means to ensure the bank's ability to take possession of the property. Had the Cook County Sheriff failed to do so, it could have been held in contempt of court. Under these circumstances, the Seventh Circuit held the sheriffs executing the Writ were not acting as county officials, but as an

---

864143 (3d Cir. Feb. 21, 2020) wherein the Court held a sheriff enforcing a foreclosure judgment was immune from liability under the doctrine of quasi-judicial immunity.

arm of the Illinois state judicial system and were thus entitled to Eleventh Amendment immunity from suit. *Id.*, *see also*, *Johnson v. Duncan*, 719 F. App'x 144 (3d Cir. 2017) (Hudson County, New Jersey Sherriff's Department entitled to Eleventh Amendment protection from suit in federal court for alleged federal and state violations); *Gray v. Pagano*, No. CV 07-2810, 2007 WL 9754344 (E.D. Pa. July 16, 2007), *aff'd*, 287 F. App'x 155 (3d Cir. 2008) (Delaware County Sheriff entitled to sovereign immunity for conduct related to foreclosure action as all actions were within scope of his duties).

When enforcing the writ of the Court of Common Pleas of the First Judicial District, the Sheriff was acting as an arm of the State, not as a Philadelphia County official. The Plaintiff does not allege that the Sheriff was acting outside the scope of his authority pursuant to the facially valid Writ. Plaintiff's allegations against the Sheriff all stem from the lawful enforcement of the Writ. The allegations against the Sheriff are essentially that after allegedly receiving notice of the bankruptcy, the Sheriff sought to enforce the Writ of Possession on. There is no suggestion that the Writ was enforced in a manner that was beyond the scope of the mandate contained therein, which directed the Sheriff to deliver possession to Defendant Hassan. As set forth below, the inquiry regarding the Sheriff's entitlement to sovereign immunity does not end with the conclusion that he was, in his official capacity, acting as an arm of the State.

As noted, a federal court generally may not hear a suit brought by any person against a nonconsenting State except on two conditions: 1) Congress has enacted unequivocal statutory language abrogating the States' immunity from suit; and 2) a constitutional provision must allow Congress to so encroach. *Allen v. Cooper*, No. 18-877, 2020 WL 1325815, at *3 (U.S. Mar. 23, 2020). "Not even the most crystalline abrogation [however] can take effect unless it is 'a valid exercise of constitutional authority.'" *Id*. Section 106 of the Bankruptcy Code purports to

abrogate sovereign immunity for certain bankruptcy proceedings including stay violations under Section 362(a). The Third Circuit held more than twenty years ago, however, that the abrogation of State sovereign immunity contained in 11 U.S.C. 106(a) was unconstitutional and beyond Congress's power under the Bankruptcy Clause. *Sacred Heart Hosp. v. Dep't of Pub. Welfare*, 133 F.3d. 237, 245 (1998). The Third Circuit's holding remains good law in this circuit, thus Section 106 cannot be used to defeat sovereign immunity in the context of a stay violation action. *See e.g.*, *In re La Paloma Generating Co.*, 588 B.R. 695, 727 (Bankr. D. Del. 2018), *aff'd sub nom. In re La Paloma Generating Co. LLC*, 607 B.R. 794 (D. Del. 2019).

Absent an express abrogation of sovereign immunity, or a litigation waiver (which is not at issue here as the Sheriff has not filed a proof of claim and the Complaint does not respect the adjudication of a claim by the Sheriff), the sovereign immunity analysis must follow *Central Va. Community College v. Katz*, 546 U.S. 356, 126S.Ct. 990 L.Ed.2d 945 (2006), In *Katz*, the Supreme Court held that in ratifying the Constitution, the States agreed to waive sovereign immunity with regard to "proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" *Katz* at 378. The Court noted that bankruptcy jurisdiction has historically principally been *in rem* as it was premised on the debtor and the bankruptcy estate and not on private or State creditors. *Katz*, 546 U.S. at 369-70. The Supreme Court concluded that the Framers would have understood the Bankruptcy Clause to include not just adjudications of rights in the *res*, but also proceeding ancillary to the exercise of *in rem* jurisdiction as falling within the scope of "Laws on the subject of Bankruptcies" for which immunity had been waived. *Id*. at 371-72. As *Katz* held, Congress "has the power to enact bankruptcy laws the purpose and effect of which are to ensure uniformity in treatment *of state and private creditors*." *Id*. at 377 n.13 (emphasis added).

> Congress may, at its option, *either treat States in the same way as other creditors* insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws. Its power to do so arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute.

*Id.* at 377 (emphasis added).

Whether consent by ratification exists turns on whether the proceeding against the Sheriff, acting as an arm of the State, effectuates the *in rem* jurisdiction of the Court or is necessary to effectuate the *in rem* jurisdiction. *In re Diaz*, 647 F.3d 1073, 1084 (11th Cir. 2011). Critical *in rem* functions of bankruptcy courts include: "[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Id.* at 1084 (citations omitted).

The Sheriff does not dispute that the automatic stay is a fundamental procedural mechanism that allows a bankruptcy court to exercise its core *in rem* functions – jurisdiction over the bankruptcy estate and the equitable distribution of the debtor's property among its creditors. *In re Diaz*, 647 F.3d. at 1085. Nor does the Sheriff dispute that contempt motions alleging a State creditor has violated the automatic stay generally qualify as "proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* at 1086. Accordingly, consent by ratification generally allows a bankruptcy court to exercise jurisdiction over a State in an action for violation of the automatic stay when the State is acting as a creditor.

However, here the Sheriff was not acting as a creditor nor on behalf of a State creditor. Rather, the Sheriff was acting as an arm of the State judiciary by enforcing an order of court which it was bound to do by statute and for which failure to do so may have resulted in a contempt sanction. It does not follow, based upon the *Katz* analysis, that the Founders would

6

have contemplated waiver of sovereignty under these circumstances. "[A] bankruptcy court's *in rem* jurisdiction over a debtor's property is limited to the bankruptcy administration of that property, to wit, the adjudication of interest in and the disposition of the debtor's property." *In re La Paloma Generating Co.*, 588 B.R. at 728 (citations omitted). There simply is no *in rem* jurisdiction over the claims against the Sheriff. The Sheriff had no rights or claims to the Property – the *res* – and the Sheriff has no debtor/creditor relationship with the Plaintiff. There is no reason to believe *in rem* jurisdiction extends beyond rights and claims tied to the *res*. *Id.*

The Plaintiff seeks damages against the Sheriff acting as an arm of a non-consenting, non-creditor State with no interest in or claim against the Property. The allegations have no meaningful nexus to the bankruptcy's administration. Such an action could not have been within scope of the States' consent to sue upon ratification of the Bankruptcy Clause. A suit against the Sheriff under these circumstances was not part of the fabric of debtor/creditor law, even if it relates to a core aspect of the bankruptcy administration, as it does nothing to further the uniform treatment of State and private creditors. *See e.g.*, *In re Philadelphia Entm't & Dev. Partners, L.P.*, 611 B.R. 51, 67–68 (Bankr. E.D. Pa. 2019) (holding fraudulent transfer actions part of the fabric of debtor-creditor law at the time of ratification and such actions aid in uniform treatment of State and non-state transferees and constitute core aspects of bankruptcy administration). Holding a Sheriff, acting as an arm of a non-consenting, non-creditor State, in contempt for executing on a valid State Court order does implicate the State's sovereign immunity and is not within the States' narrow waiver of immunity.

There is no administration of the estate pursuant to an action under Section 362 of the Bankruptcy Code that cannot be accomplished in a suit solely against Hassan, the creditor. *See e.g.*, *In re La Paloma*, 588 B.R. at 734 (where purpose of claim is best served elsewhere,

7

proceeding cannot be considered core to bankruptcy courts' *in rem* functions). Actions for violation of the automatic stay were meant to add to uniform treatment of creditors by avoiding piecemeal distribution of the debtor's assets by creditors. The purpose of Section 362(k) is best served by a proceeding against a creditor. As purchaser of the Property the Plaintiff seeks to redeem, Hassan is deemed a secured creditor of the bankruptcy estate. Staying actions to gain possession of the Property pursuant to a valid pre-petition Writ of Possession does restructure the debtor/creditor relationship as between Hassan and the Plaintiff and is related directly to claims and interests of Hassan and the Plaintiff in the Property. Thus, the action against Hassan furthers the administration of the estate and is core to the Bankruptcy Court's *in rem* functions.

The conclusion that the States did not contemplate waiving immunity for circumstances such as this when ratifying the Bankruptcy Clause is supported by the well settled law that the burden is on the creditor to notify third-parties that the automatic stay is in place and that efforts in furtherance of execution or enforcement must cease. *See e.g.*, *In re Westman*, 300 B.R. 338 (Bankr. D. Minn. 2003) (burden is on creditor, not sheriff in possession of lawfully seized vehicle, to prevent stay violations); *In re Hardesty*, 442 B.R. 110 (Bankr. N.D. Ohio 2010) (once a creditor commences legal proceedings it cannot disown responsibility for actions take by third parties in furtherance of action); *In re Brown*, No. BR 12-14058, 2012 WL 3908029 (Bankr. E.D. Pa. Sept. 7, 2012) (judgment creditors had duty to take affirmative action to notify sheriff that the bankruptcy stay was in place); *Eskanos & Adler, P.C., v. Leetien,* 309 F.3d 1210, 1215 (9th Cir.2002) (§ 362(a)(1) imposes on a creditor an affirmative duty to discontinue its post-petition collection actions); *Roche v. Pep Boys, Inc., (In re Roche),* 361 B.R. 615 (Bankr. N.D. Ga. 2005) (creditor has an affirmative duty to cease its garnishment upon learning of debtor's bankruptcy filing); *In re Manuel,* 212 B.R. 517, 519 (Bankr. E.D. Va. 1997) (The creditor,

"having an affirmative obligation not to continue a violation of the automatic stay, acted willfully when he failed to promptly dismiss the garnishment against debtor's wages."); *In re Baum,* 15 B.R. 538 (Bankr. E.D. Va. 1981) (a creditor has a responsibility to stop the snowballing of continuing garnishment) and *In re Banks*, 253 B.R. 25 (Bankr. E.D. Mich. 2000) (creditor who had previously obtained relief from stay, but who had failed to wait the required ten-day period prior to executing on debtor's property and failed to take any steps to have writ vacated, willfully violated automatic stay). The duty to stop enforcement of the Writ rested with the co-defendant, Mr. Hassan, not the Sheriff. The Plaintiff's remedy for contempt of the stay order is against Mr. Hassan.

This does not mean that a debtor is entirely without remedy against a State official for stay violations under the circumstances similar to those presented here. The Supreme Court's decision in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), provides federal jurisdiction over a suit against a State official when that suit seeks prospective injunctive relief to end a continuing violation of federal law. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73, 116 S. Ct. 1114, 1132, 134 L. Ed. 2d 252 (1996) (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). The exception to sovereign immunity in *Ex parte Young* is based in part on the premise that certain suits for declaratory or injunctive relief against state officers must be permitted if the Constitution is to remain the supreme law of the land. *Alden v. Maine*, 527 U.S. 706, 747, 119 S. Ct. 2240, 2263, 144 L. Ed. 2d 636 (1999) (citations omitted). In *Seminole,* the Supreme Court indicated that *Ex parte Young* would be applied where (1) "the suit seeks only prospective injunctive relief" and (2) and where Congress has not "prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." 527 U.S. at 73–74, 119 S.Ct. 1849. *Ex parte Young* was deemed potentially applicable to a stay

violation against an official of the Washington Metropolitan Area Transit Authority enjoining violations of Sections 362 and 525(a), as neither section contains a "detailed remedial scheme" for enforcement against a State. *In re Metromedia Fiber Network, Inc.*, 281 B.R. 524, 534–35 (Bankr. S.D.N.Y. 2002). In this case, the Complaint did seek injunctive relief against the Sheriff, however, the *Ex parte Young* exception to sovereign immunity is inapplicable as it was rendered moot prior to the filing of the Complaint. Any alleged conduct in violation of stay ceased prior to filing of the Complaint. The Plaintiff was never dispossessed of the Property, there was no ongoing conduct that needed enjoining and there was no prior action allegedly taken by the Sheriff that needed to be or could be remedied.

WHEREFORE, the City of Philadelphia respectfully requests that the Court grant summary judgment in the Sheriff's favor, dismiss the Complaint with prejudice and grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: April 6, 2020        By:    */s/ Megan N. Harper*
                                    MEGAN N. HARPER
                                    Deputy City Solicitor
                                    PA Attorney I.D. 81669
                                    Attorney for the City of Philadelphia
                                    City of Philadelphia Law Department
                                    Municipal Services Building
                                    1401 JFK Boulevard, 5th Floor
                                    Philadelphia, PA  19102-1595
                                    215-686-0503 (phone)
                                    Email: Megan.Harper@phila.gov