### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| | : | |
| LYNDEL TOPPIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF OF THE CITY OF PHILADELPHIA and ABDELDAYEM HASSAN a/k/a ABDELDYEM HASSAN, | : | |
| | : | |
| Defendants. | : | |

**LYNDEL TOPPIN'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO THE SHERIFF OF THE CITY OF PHILADELPHIA'S MOTION FOR SUMMARY JUDGMENT**

The Court requested that the parties submit supplemental briefs responsive to the following issue: Whether, by ratifying the United States Constitution and the Bankruptcy Clause contained therein, the States agreed to waive their sovereign immunity with respect to claims for violation of the stay imposed by 11 U.S.C. §362 for enforcement of a writ of possession.

Plaintiff, Lyndel Toppin ("Toppin"), through undersigned counsel submits that the States do not enjoy sovereign immunity for violations of the automatic stay imposed by §362 of the Bankruptcy Code as that would thwart the orderly and even administration of the debtor's estate, one of the central goals of bankruptcy. In *Katz,* the Supreme Court repeatedly referenced bankruptcy courts' ancillary power "to issue compulsory orders to facilitate administration and distribution of the bankruptcy *res*." Indeed, the importance of a uniform set of bankruptcy laws was penned by James Madison in Federalist Paper No. 42: "The power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different States, that the expediency of it seems not likely to be drawn into question."

The United States Supreme Court correctly recognized in the 2004 *Hood*[1] and 2006 *Katz*[2] cases that the fundamental nature of bankruptcy cases and proceedings is distinct from litigation of statutes enacted under the Commerce Clause or other sections of Article I of the Constitution, in a way that is critical to sovereign immunity analysis. Unlike the laws at issue in the *Seminole Tribe*[3] and other non- bankruptcy sovereign immunity cases before *Hood* and *Katz*, the substantive provisions of bankruptcy statutes are not regulatory laws, and do not apply to the populace at large or mandate or proscribe any action in the course of everyday affairs. Bankruptcy laws only apply in conjunction with bankruptcy cases adjudicating the status of the bankrupt debtor. Effectively, the federal government supplies the forum and standards for resolution of private debt matters. Unlike federal regulatory statutes that are enforceable by federal authorities, bankruptcy discharges, the automatic stay, preference actions and the like are enforceable only by debtors and creditors, and only in the context of specific bankruptcy cases, not by United States Attorneys or federal agencies in federal or state court suits. It is only private parties who can enforce such bankruptcy law provisions through bankruptcy court proceedings in specific debtors' bankruptcy cases.

**The Katz Analysis**

In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), The Court concluded that sovereign immunity does not bar federal bankruptcy courts from exercising authority over States in adversary proceedings to recover preferential transfers.[4] It reasoned that *in rem* bankruptcy jurisdiction includes "the power to issue compulsory orders to facilitate the administration and distribution of the *res*."[5] Further, "courts adjudicating disputes concerning bankrupts' estates historically have had the power to issue ancillary orders enforcing their *in rem* adjudications."[6]

The Court explained that while the principal focus of a bankruptcy is adjudication of rights in the *res* of the bankruptcy estate and discharge of the debtor, the Framers of the Constitution understood that proceedings brought pursuant to laws on the subject of bankruptcies encompassed certain ancillary proceedings as well.[7] The Court concluded that such proceedings included avoidance of preferential transfers and recovery of preferentially transferred property.[8]

---

[1] Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004).
[2] Cent. Va. Cmty. College v. Katz, 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006);
[3] Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)
[4] See *Katz*, 126 S. Ct. at 1001–02 ("[T]hose who crafted the Bankruptcy Clause would have understood it to give Congress the power to authorize courts to avoid preferential transfers and to recover the transferred property.").
[5] *Id*. at 996.
[6] *Id*. at 1000.
[7] *See id.* at 1005 ("But while the principal focus of the bankruptcy proceedings is and was always the res, some exercises of bankruptcy courts' powers . . . unquestionably involved more than mere adjudication of rights in a res.").
[8] *Id*. at 1001–02 ("[I]nterplay between *in rem* adjudications and orders ancillary thereto is evident in the case before us.").

Through adopting the Constitution, the States abrogated sovereign immunity to effectuate *in rem* bankruptcy jurisdiction in at least some ancillary proceedings that Congress might authorize in enacting laws on the subject of bankruptcies:[9]

> Insofar as orders ancillary to the bankruptcy courts' *in rem* jurisdiction, like orders directing turnover of preferential transfers, implicate States' sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity.[10]

> In ratifying the Bankruptcy Clause, the States acquiesced in subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy court.[11]

In coming to its conclusion, the majority of the Court declined to follow dicta in *Seminole Tribe v. Florida* suggesting a contrary result. Justice Thomas, writing for himself and three other justices, argued the historical record indicated states did not give up their sovereign immunity under the Bankruptcy Clause. The dissenters would have followed the view that nothing in Article I abrogates state sovereign immunity, however they were one Justice short of majority whose ruling became the law of the land on the issue.

**In Rem Jurisdiction**

Bankruptcy cases do arise under the Constitution, *i.e.* under the Bankruptcy Clause.[12] As required by the wording of that clause, there must also be and now is a federal statutory basis for jurisdiction as well, the Bankruptcy Code. But bankruptcy also has a historical, theoretical grounding in *in rem* jurisdiction to render judgments relating to the bankruptcy *res* that informs the meaning of the constitutional and statutory provisions.

The Supreme Court repeatedly recognized that bankruptcy is an *in rem* proceeding even before *Hood* and *Katz*.[13]  The *res* in a bankruptcy case is not merely the debtor's assets or the

---

[9] *See id.* at 1002, 1004–05; *see also* Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779 (1991) (observing States are not "subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of the convention.'"); *In re* Kids World of Am., Inc., 349 B.R. 152, 165 (Bankr. W.D. Ky. 2006) ("[T]he Framers, in adopting the Bankruptcy Clause, plainly intended to give Congress the power to redress the rampant injustice resulting from States' refusal to respect one another's discharge orders . . . the power to enact bankruptcy legislation was understood to carry with it the power to subordinate state sovereignty, albeit within a limited sphere.").

[10] *Katz*, 126 S. Ct. at 1002.

[11] *Id*. at 1005.

[12] The Bankruptcy Clause empowers Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. art. I, § 8, cl. 4.

[13] *E.g.*, Katchen v. Landy, 382 U.S. 323, 329 (1966) ("This power to allow or to disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.'"); *Gardner*, 329 U.S. at 574 (explaining constitutional

bankruptcy "estate," although the assets are part of it.[14] Rather, the *res* encompasses the bankrupt debtor personally. The Court so found in *Moyses*, where Max Moyses' discharge was upheld against a creditor that had not been served with process or appeared.[15] The Court recognized in that case that "[t]he subject of 'bankruptcies' includes the power to discharge the debtor from his contracts and legal liabilities as well as to distribute his property."[16] The debtor as the *res* was even more evident when the Constitution was adopted than it is today, because then it was the debtor personally who was freed by federal court order from state debtors' prison by bankruptcy adjudication.[17] Discharging the debtor from prison was an integral aspect of bankruptcy when our Constitution was adopted, and it required an order by a federal court to a state court to release the debtor-prisoner. The *Katz* opinion cites issuance of a writ of habeas corpus to extricate a discharged debtor from prison as an example of a proceeding ancillary to the *in rem* discharge adjudication.[18]

**Ancillary Jurisdiction**

Ancillary jurisdiction is a type of subject matter jurisdiction invoked when no such jurisdiction is expressly conferred on federal courts by the Constitution or by federal statute.[19] The court acquires jurisdiction of a case or controversy in its entirety, and as an incident to the disposition of that matter, may decide other matters raised by the case which it could not hear if independently presented.[20]

---

authority of bankruptcy court when State is actor); *Moyses*, 186 U.S. at 192 ("Proceedings in bankruptcy are, generally speaking, in the nature of proceedings *in rem*").

[14] *See Gardner*, 329 U.S. at 574.

[15] *Moyses*, 186 U.S. at 183, 192. The Court held that bankruptcy proceedings are *in rem* with respect to the debtor. *Id.* at 192.

[16] *Id.* at 188; *see* Bailey v. Baker Ice Mach. Co., 239 U.S. 268, 275–76 (1915) ("'The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and disposition of his estate.'" (citations omitted)).

[17] *See In re* Universal Labs. Inc*.,* No. 77 B 4082, 1978 WL 21369, at *987–88 (N.D. Ill. Dec. 15, 1978) (elaborating on impact discharge has on debtors in prison). *But see* Martin v. Kilbourne*,* 11 Vt. 93, 94, 1839 Vt. LEXIS 18, at *2–3 (1839) (providing "the creditor shall have full power to discharge the debtor from prison").

[18] *Katz*, 126 S. Ct. at 1005 (explaining "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.").

[19] *See* WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D § 3523 (deeming ancillary jurisdiction most important when courts lack subject matter jurisdiction).

[20] Id. The Supreme Court has previously held that sovereign immunity cannot exempt a State from monetary obligations that are ancillary to compliance with prospective injunctive relief against a State officer, even though a damages award for past actions may be barred. Edelman v. Jordan, 415 U.S. 651, 668 (1974) (recognizing practical effect of relief under Ex parte Young, 209 U.S. 123 (1908)). Under that reasoning, a court may order a State to pay for programs designed to remedy past wrongdoing such as segregation of public schools. Milliken v. Bradley, 433 U.S. 267, 288–89 (1977). That is not a matter of ancillary jurisdiction, however, but of ancillary consequences of an exercise of jurisdiction under the Ex parte Young exception to sovereign immunity.

In 1990, Congress provided broad statutory authority for the exercise of ancillary and pendent jurisdiction by federal courts under the name "supplemental jurisdiction."[46] Long before the supplemental jurisdiction statute was enacted, however, the Court upheld the exercise of ancillary jurisdiction in cases initiated under a federal bankruptcy statute as a matter of common law, sometimes referring to ancillary jurisdiction to *in rem* bankruptcy jurisdiction.[21]

Ancillary jurisdiction usually falls within two categories of cases:

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.[22]

In a narrow sense, the "operative facts" of a bankruptcy case may be considered the debtor's discharge and the determination of claims and distribution of the debtor's assets to creditors. It is not a typical lawsuit where ancillary jurisdiction arises in the context of factually intertwined claims, counterclaims and third party claims.[23] However, ancillary jurisdiction may be needed for dischargeability litigation, as in the *Hood* case. And in many bankruptcy cases disputes over assets being liquidated requires litigation, and some of the assets consist of causes of action. Such litigation is not a matter of determining claims against the *res* of the estate, but it is certainly factually intertwined with the *res* and the amount that can be distributed to creditors.[24] The litigation encompasses both federal and state law issues, and may well entail purely state-law claims between non-diverse litigants.[25]

Bankruptcy court cases may be more complex and procedurally involved than ordinary bilateral commercial litigation. In reorganization cases especially, bankruptcy court orders may implement the restructuring of a business and the disposition of multiple assets and claims. A variety of court proceedings may be required to facilitate a successfully functioning reorganization case, and may be needed to implement reorganization decisions and effectuate court decrees. Some determinations that would require orders in non-bankruptcy cases are automatic in bankruptcy, such as the automatic stay, and litigation to enforce such statutory orders is not uncommon. Chapter 11 bankruptcy cases last for years, and litigation under confirmed reorganization plans affecting creditor distributions may be commenced by restructured companies or liquidating trusts.

---

[21] *See, e.g., Local Loan Co.*, 292 U.S. at 240–41 (stating bankruptcy proceedings are generally *in rem* proceedings); *Moyses*, 186 U.S. at 192; Commercial Bank of Manchester v. Buckner, 61 U.S. 108, 118 (1857) ("And the said courts shall have full authority and jurisdiction to compel obedience to all orders and decrees passed by them in bankruptcy ").

[22] Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379–80 (1994) (citations omitted).

[23] *See, e.g., Gibbs*, 383 U.S. at 725 (recognizing pendent jurisdiction over state claims arises out of "common nucleus of operative fact" with federal claims).

[24] *See Gardner*, 329 U.S. at 578 (holding "the reorganization court has jurisdiction over all of the propertyof the debtor"); *In re* Metromedia Fiber Network, Inc., 299 B.R. 251, 273 (Bankr. S.D.N.Y. 2003)(including aspects of estate administration within *in rem* proceedings).

[25] [51]*See* Butner v. United States, 440 U.S. 48, 54 (1979) (noting property rights in estate assets determined by applying state law)

In a very real sense, many types of proceedings are factually interdependent with and indeed integral to the resolution of a bankruptcy case, and to the successful functioning of the bankruptcy court and effectuation of its orders.

**Sovereign Immunity:**

The principle of sovereign immunity is associated with the ancient maxim that "the King can do no wrong."[26] In some cases, sovereign immunity poses a complete bar to recovery of a particular claim in state or federal court. For certain purposes, the Bankruptcy Code provides a means to overcome this bar. Section 106 of the Code contains a broad abrogation of sovereign immunity with respect to governmental units.[27] Sovereign immunity is expressly abrogated with respect to a wide range of statutory provisions listed in section 106(a). Included among these are virtually all of the provisions that normally would give rise to claims against the government in bankruptcy.

A notable exception to the list is section 541 of the Code. The legislative history states that the amendment was not intended to permit a debtor to sue the government on a prebankruptcy cause of action when suit would otherwise have been barred by sovereign immunity.[28] But section 542 is included in the list, and section 542(b) permits a debtor to recover "a debt that is property of the estate and that is matured, payable on demand, or payable on order" except to the extent it may be offset under section 553.

The legislative history[29] states clearly that the amendment was intended to abrogate both federal sovereign immunity and state Eleventh Amendment immunity, overruling *Hoffman v. Connecticut Department of Income Maintenance*[30] and the *United States v. Nordic Village Inc.*[31] In consumer cases, this history should remove any doubts about federal governmental monetary liability and the immunity of other entities that are not states,[32] not only for transfer avoidance,

---

[26] 'Seminole Tribe v. Florida, 517 U.S. 44, 103 n.2 (Souter, **J.,** dissenting) (citing 1 William Blackstone, Commentaries *238).

[27] "Governmental unit" is defined in 11 U.S.C. § 101(27). The definition excludes a United States trustee, but only when acting as a trustee. Nonetheless, one court has erroneously held that there is no waiver at all with respect to the United States trustee. Balser v. Dep't of Justice, 327 F.3d 903 (9th Cir. 2003).

[28] 140 Cong. Rec. H10,766 (Oct. 4, 1994) (remarks of Rep. Brooks); Hunsaker v. United States, 902 F.3d 963 (9th Cir. 2018) (section 106 permitted debtor to sue state for emotional distress damages resulting from automatic stay violation); Zazzali v. United States (In re DBSI, Inc.), 869 F.3d 1004 (9th Cir. 2017) (section 106 abrogated sovereign immunity for action under section 544 even though section 544 incorporated state fraudulent transfer law).

[29] Id.

[30] 492 U.S. 96, 109 S. Ct. 2818, 106 L. Ed. 2d 76 (1989). and United States v. Nordic Village Inc.

[31] 503 U.S. 30, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992).

[32] See Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055 (9th Cir. 2004) (Indian tribe's immunity abrogated by § 106(a)). But see Buchwald Capital Advisors, L.L.C. v. Papas (In re Greektown Holdings, L.L.C.), 532 B.R. 680 (E.D. Mich. 2015) (Congress did not unequivocally eliminate tribes' sovereign immunity); Bucher v. Dakota Fin. Corp. (In re Whitaker), 474 B.R. 687 (B.A.P. 8th Cir. 2012) (section 106 does not mention Indian tribes); In re Mayes, 294 B.R. 145 (B.A.P. 10th Cir. 2003) (when debtor did not raise section 106 argument, tribe's common law immunity precluded lien avoidance motion).

but also for stay and discharge violations, as well as sanctions under Federal Rule of Bankruptcy Procedure 9011.[33]

However, the ability of Congress to abrogate the states' Eleventh Amendment immunity may be somewhat limited by the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*.[34] The reach of *Seminole Tribe* was greatly diminished by the Court's later decision in *Central Virginia Community College v. Katz*,[35] which appears to permit most, and perhaps all, bankruptcy proceedings to be brought against state governments based upon the Bankruptcy Clause of the Constitution. Indeed, in that case the Court found that the abrogation of sovereign immunity in section 106 was unnecessary.[36] However the precise contours of the right to sue a state government have yet to be developed by the courts.[37]

This problem may be avoided occasionally if it is possible to argue that the entity being sued is not a state or an arm of a state.[38] In some cases involving state action in which the state has not filed a proof of claim or otherwise waived its immunity,[39] and that immunity is not

---

[33] Hanna Oil Co. v. Internal Revenue Serv., 198 B.R. 672 (W.D. Va. 1996). But see In re Rivera Torres, 432 F.3d 20 (1st Cir. 2005) (section 106(a) did not waive federal government's immunity from emotional distress damages).

[34] 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).

[35] 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006).

[36] Id., 546 U.S. at 362. See Florida Dep't of Revenue v. Omine (In re Omine), 485 F.3d 1305 (11th Cir. 2007) (actions to force a state creditor to honor the automatic stay are permitted as proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy court).

[37] See Florida Dep't of Revenue v. Diaz (In re Diaz), 647 F.3d 1073 (11th Cir. 2011) (sovereign immunity abrogated as to discharge violation claim, but not stay violation claim, because proceeding was brought long after stay was necessary to protect in rem bankruptcy jurisdiction).

[38] In re MD Recycling, Inc., 475 B.R. 885 (Bankr. E.D. Tenn. 2012) (local utility failed to show that it is an arm of the state); In re Lees, 264 B.R. 884 (W.D. Tenn. 2001) (student loan agency was not arm of state entitled to immunity).

[39] Generally, a party that files a proof of claim is deemed to submit to the bankruptcy court's jurisdiction, at least as to a claim arising out of the same transaction that created the government's claim. Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17 (1st Cir. 2001); In re Rose, 187 F.3d 926 (8th Cir. 1999) (state waived Eleventh Amendment with respect to claims for which it filed proofs of claim); In re Jackson, 184 F.3d 1046 (9th Cir. 1999) (state waived Eleventh Amendment with respect to tax claims by filing proof of claim); In re Burke, 146 F.3d 1313 (11th Cir. 1998) (state waived Eleventh Amendment by filing proofs of claim in debtors' cases); In re Straight, 143 F.3d 1387 (10th Cir. 1998); In re Rose, 227 B.R. 518 (W.D. Mo. 1997) (state waived Eleventh Amendment protection from being sued to determine dischargeability of student loan by filing claim for student loan debt); In re Bliemeister, 251 B.R. 383 (Bankr. D. Ariz. 2000) (state waived sovereign immunity by seeking summary judgment in adversary proceeding involving dischargeability of state's claim), aff'd, 296 F.3d 858 (9th Cir. 2002); In re Huffine, 246 B.R. 405 (Bankr. E.D. Wash. 2000) (state waived sovereign immunity by signing student loan participation agreement); In re Lazar, 200 B.R. 358 (Bankr. C.D. Cal. 1996); In re Burke, 200 B.R. 282 (Bankr. S.D. Ga. 1996). See also In re Innes, 184 F.3d 1275 (10th Cir. 1999) (state consented to litigation in federal court by signing participation agreement with U.S. Department of Education agreeing to oppose dischargeability complaints); In re Platter, 140 F.3d 676 (7th Cir. 1998) (state waived Eleventh Amendment immunity by filing dischargeability complaint); In re White, 139 F.3d 1268 (9th Cir. 1998) (sovereign immunity waived by participation in case through objection to plan confirmation and voting

abrogated by section 106, debtors may be barred from suing for damages in the bankruptcy court, and may still have to resort to devices used in other areas of the law, such as suits against state officers for injunctive relief. The *Ex parte Young* doctrine holds that an action brought against state officials in their individual capacities seeking prospective declaratory and injunctive relief for continuing violations of federal law is not barred by the Eleventh Amendment.[40] For example, a suit seeking a declaration that particular property is property of the estate could be brought for injunctive and declaratory relief against the state officer heading the relevant state agency.[41]

The discharge itself is an injunction, which can be[42] enforced against a state officer,[43] as may the *automatic stay*, the discrimination protections,[44] the turnover requirements (except if seeking a money judgment)[45] and a confirmed plan.[46]

The Supreme Court has clearly held that because bankruptcy is an in rem proceeding, affecting the debtor's property, the bankruptcy case itself is not a suit against the state and the discharge of a debt to the state is not barred by the Eleventh Amendment.[47] The court's jurisdiction over the dischargeability of debt, just like its jurisdiction to confirm a plan of reorganization, derives not from jurisdiction over the state or other creditors, but rather from jurisdiction over debtors and their estates.[48] Similarly, court proceedings about the debtor's property, such as proceedings to avoid liens on the property or to compel turnover of preferential transfers, are not suits against the state that implicate a state's sovereign immunity because they are ancillary to a bankruptcy court's in rem jurisdiction.[49]

---

against plans); In re Barrett Ref. Corp., 221 B.R. 795 (Bankr. W.D. Okla. 1998) (state could not undo waiver by withdrawing proof of claim).

[40] See Coeur d'Alene Tribe of Idaho, 531 U.S. 261, 269, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); Green v. Mansour, 474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985); Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908); In re LTV Steel Co., 264 B.R. 455 (Bankr. N.D. Ohio 2001) (action to enforce automatic stay could be brought against state officials under Ex parte Young doctrine).

[41] In re Ellett, 243 B.R. 741 (B.A.P. 9th Cir. 1999) (suit against state tax official to enjoin collection of taxes discharged in chapter 13 may proceed under Ex parte Young doctrine), aff'd sub nom. Ellett v. Goldberg, 254 F.3d 1135 (9th Cir. 2001); In re DeAngelis, 239 B.R. 426 (Bankr. D. Mass. 1999).

[42] In re Rainwater, 233 B.R. 126 (Bankr. N.D. Ala. 1999).
[43] In re Lapin, 226 B.R. 637 (B.A.P. 9th Cir. 1998)
[44] In re Kidd, 227 B.R. 161 (Bankr. E.D. Ark. 1998).
[45] In re Zywiczynski, 210 B.R. 924 (Bankr. W.D.N.Y. 1997).
[46] Maryland v. Antonelli Creditors' Liquidating Trust, 123 F.3d 777 (4th Cir. 1997).
[47] Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004).

[48] Id.

[49] Cent. Va. Cmty. College v. Katz, 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006); In re Pavlovic, 474 B.R. 601 (Bankr. N.D. Ill. 2012) (debtor could avoid judicial lien despite claim of

As a limitation on the broad abrogation of sovereign immunity in section 106(a), the state and federal government extracted provisions limiting punitive damages and attorney fees awards. Section 106(a)(3) prohibits an award of punitive damages and limits attorney fee awards. However, this section should not be read to prohibit all monetary sanctions that are not compensatory damages.[50] "Punitive damages" should be given its normal meaning, limited to cases in which that term has traditionally been used to describe a monetary award (as opposed to "sanctions" under Federal Rules of Bankruptcy Procedure 7037 or 9011). Attorney fees and costs are limited to those consistent with 28 U.S.C. § 2412(d)(2)(A) (the Equal Access to Justice Act).[51]

The sovereign immunity provisions were also clarified with respect to counterclaims against the government. Under section 106(b) (formerly section 106(a)), such a counterclaim may be asserted only if the governmental unit has actually filed a proof of claim in the bankruptcy case.[52] This reverses the result reached by some courts, which had held that a counterclaim could be asserted if the government had taken an action that could be deemed an "informal proof of claim."[53] As under prior law, the counterclaim must be a compulsory counterclaim to the government's claim, arising out of the same transaction or occurrence to come within this section.[54]

---

sovereign immunity). See also In re Slayton, 409 B.R. 897 (Bankr. N.D. Ill. 2009) (permitting suit for damages against state for alleged violations of §§ 524 and 525).

[50] Section 106(a) provides that a bankruptcy court may issue an order or judgment awarding a "money recovery" against a governmental unit, which should include a recovery of emotional distress damages and other actual damages. However, one court of appeals has held that section 106(a) does not waive immunity from an award of emotional distress damages as a contempt sanction for violation of the discharge injunction. In re Rivera Torres, 432 F.3d 20 (1st Cir. 2005). But see In re Griffin, 415 B.R. 64 (Bankr. N.D.N.Y. 2009) (section 106(a) provides for abrogation of sovereign immunity for award of actual damages, including damages for emotional distress).

[51] This incorporates limits on the amount of fees, but not other substantive limitations of the EAJA.

[52] See Aer-Aerotron v. Texas Dep't of Transp., 104 F.3d 677 (4th Cir. 1997) (postpetition letters to debtor demanding payment did not constitute proof of claim for purposes of this section); Carrington Gardens Assoc. v. United States, 258 B.R. 622 (E.D. Va. 2001) (government waived sovereign immunity by filing proof of claim even though debtor's claim was not strictly a counterclaim when proof of claim was filed after adversary complaint was brought against agency), aff'd, 49 Fed. Appx. 427 (4th Cir. 2002) (table); In re Gibson, 176 B.R. 910 (Bankr. D. Or. 1994) (federal government considered one governmental unit, so proof of claim waived sovereign immunity for all agencies under predecessor to this provision). See also Lapides v. Bd. of Regents, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (by removing action to federal court, a state waives Eleventh Amendment immunity, relying on Gardner v. N.J., 329 U.S. 565, 574, 67 S. Ct. 467, 91 L. Ed. 504 (1947), which held that filing a proof of claim waives a state's immunity); In re Stanley, 273 B.R. 907 (Bankr. N.D. Fla. 2002) (having waived immunity by filing proofs of claim, state could not reinstate immunity by withdrawing them).

[53] See, e.g., Sullivan v. Town & Country Nursing Home Services, Inc., 963 F.2d 1146 (9th Cir. 1992).

[54] In re Supreme Beef Processors, Inc., 391 F.3d 629 (5th Cir. 2004) (claims did not arise out of same transaction or occurrence and could not be asserted under section 106(b), but could be set off against

A debtor or trustee may also offset against a claim or interest of a governmental unit any claim against the governmental unit that is property of the estate.[55] However, in some cases courts will have to define whether different agencies of the same government are the same governmental unit for purposes of this section.[56]

Because it is still possible that some actions may not be brought directly against a state that has not waived its immunity,[57] proceedings seeking injunctive or declaratory relief should also be brought under the *Ex parte Young* doctrine.[58] Because civil contempt damages and attorney fees are considered prospective relief, they may be awarded against a state officer notwithstanding the state's Eleventh Amendment immunity.[59] Additionally, nonbankruptcy limitations on and waivers of sovereign immunity remain applicable in bankruptcy.[60]

---

government claim under section 106(c)), later decision at 468 F.3d 248 (5th Cir. 2006) (disallowing setoff under section 106(c)). See Lazar v. California, 237 F.3d 967 (9th Cir. 2001) (state's proof of claim arose out of same transaction or occurrence as mandamus action against state seeking payment of claims from Underground Storage Tank Cleanup Trust); In re Price, 42 F.3d 1068 (7th Cir. 1994) (violation of automatic stay arose out of same transaction as government's tax claim); In re Graham, 981 F.2d 1135 (10th Cir. 1992) (section 106(a) requires claims against government to be compulsory counterclaims for sovereign immunity waiver under that subsection); In re Rebel Coal Co., 944 F.2d 320 (6th Cir. 1991) (preference claim arising from garnishment for fines did not arise from same transaction or occurrence as government's claim for remaining fines, so sovereign immunity not waived under section 106(a)). Cf. United States v. Pullman Constr. Indus., Inc., 153 B.R. 539 (N.D. Ill. 1993) (preference action against Internal Revenue Service was compulsory counterclaim to government's claim for taxes).

[55] 11 U.S.C. § 106(c).

[56] See In re Charter Oak Assoc., 361 F.3d 760 (2d Cir. 2004) (proof of claim filed by state tax agency waived immunity for claim against state social services agency); In re Hal, Inc., 122 F.3d 851 (9th Cir. 1997) (federal government is unitary creditor for purposes of setoff rights); In re Turner, 84 F.3d 1294 (10th Cir. 1996) (en banc) (federal government is unitary creditor for bankruptcy purposes so debt owed to one agency may be set off against claim of another); Doe v. United States, 58 F.3d 494 (9th Cir. 1995) (all agencies of United States are a single governmental unit);

[57] Murphy v. Michigan Guar. Agency, 271 F.3d 629 (5th Cir. 2001); In re Mitchell, 209 F.3d 1111 (9th Cir. 2000).

[58] See Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

[59] In re Colon, 114 B.R. 890 (Bankr. E.D. Pa. 1990). See also In re Bryant, 116 B.R. 272 (Bankr. D. Kan. 1990) (IRS had no defense of sovereign immunity when it violated discharge injunction), aff'd, 1991 WL 204911 (D. Kan. Sept. 9, 1991); In re Adams, 115 B.R. 59 (Bankr. D.N.J. 1990) (wage order entered against debtor employed by Navy did not violate sovereign immunity because order provided injunctive, not monetary, relief). But see In re Gustafson, 934 F.2d 216 (9th Cir. 1991) (state immune from money damages for violations of the stay without express consideration of potential contempt remedies).

[60] See In re Epps, 110 B.R. 691 (E.D. Pa. 1990) (debtor's action against Dep't of Housing and Urban Development for equitable relief was not barred by sovereign immunity because it was permitted under Administrative Procedure Act).

One other way of dealing with federal sovereign immunity problems may be available under the Tucker Act[61] and the "Little Tucker Act."[62] The latter statute permits non-tort suits for money damages arising under federal law to be brought against the federal government in district court if the amount sought is less than $10,000.[63] Thus, a debtor or trustee should be able to file such a proceeding arising under the Bankruptcy Code, or the Constitution or any other federal statute, in the district court. Probably, if the proceeding arises under the Code, it would automatically be referred to the bankruptcy court under the general order of reference applicable in that district court.[64]

However, the Supreme Court has ruled that the Little Tucker Act does not apply when a statute provides its own detailed remedial scheme.[65] Whether a claim under the Bankruptcy Code, which has its own sovereign immunity provisions in section 106, could survive this test is questionable.

**The Ancillary Jurisdiction Exception to Sovereign Immunity**

The broad historical scope of ancillary to *in rem* bankruptcy jurisdiction bears on the scope of the exception to sovereign immunity established in *Katz*. The Eleventh Amendment was written using subject matter jurisdiction terminology; it limits "[t]he Judicial power of the United States."[66] The Supreme Court cited to that language in *Seminole Tribe*:

---

[61] 28 U.S.C. § 1491. See generally Dennis M. Garvis & Frank W. Koger, If at First You Don't Succeed . . . ; An Alternative Remedy After Nordic Village, 66 Am. Bankr. L.J. 423 (1992).

[62] 28 U.S.C. § 1346(a)(2).

[63] 28 U.S.C. § 1346(a)(2).

Claims over $10,000 must be brought in the United States Claims Court. 28 U.S.C. § 1491. But see Bowen v. Massachusetts, 487 U.S. 879, 906 n.42, 108 S. Ct. 2722, 2738 n.42, 101 L. Ed. 2d 749, 771 (1988) (legislation upon which claim is based must be such that it can fairly be interpreted as mandating compensation by the federal government for damage sustained); Sheehan v. United States, 2012 WL 1637967 (N.D. W. Va. May 8, 2012) (no jurisdiction unless there is an express provision for payment from funds appropriated by Congress).

[64] See Dennis M. Garvis & Frank W. Koger, If at First You Don't Succeed ; An Alternative Remedy After Nordic Village, 66 Am. Bankr. L.J. 423, 434 (1992).

[65] United States v. Bormes, 568 U.S. 6, 133 S. Ct. 12, 184 L. Ed. 2d 317 (2012).

[66] U.S. CONST. amend. XI. The choice of words may have simply been a response to the language in *Chisholm v. Georgia*, 2 U.S. 419 (1793), which was decided based on constitutional language granting subject matter jurisdiction, and it may have been an attempt to ensure applicability of the amendment to pending cases, or to ensure that States could determine when they could be sued. *See* Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 HARV. L. REV. 1559, 1603–07 (2002) (discussing possible reasons Congress chose wording of Eleventh Amendment).

The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.[67]

Just as Eleventh Amendment sovereign immunity is a "hybrid" of subject matter and personal jurisdiction, bankruptcy *in rem* ancillary jurisdiction highlighted by the *Katz* case is also a hybrid. The Supreme Court may have limited the breadth of such litigation against States, however, in that the *Katz* case analyzed the understanding of the framers of the Constitution as well as the concept of ancillary jurisdiction to *in rem* proceedings. Several times, the Court used limiting language in describing the States' surrender of immunity with respect to bankruptcy in the plan of the Convention:

> [R]atification of the Bankruptcy Clause does represent a surrender by the States of their sovereign immunity in *certain* federal proceedings.[68]

> The Framers would have understood that laws 'on the subject of Bankruptcies' included laws providing, in *certain limited* respects, for more than simple adjudications of rights in the *res*.[69]

> [T]he power to enact bankruptcy legislation was understood to carry with it the power to subordinate state sovereignty, albeit *within a limited sphere*.[70]

The Court analyzed the historical record, and determined that the particular type of ancillary proceeding at issue in *Katz* was within the understanding of the people crafting and ratifying the Constitution when they authorized Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States."[71]

Instead of using such historical concerns to limit the meaning of the Bankruptcy Clause, the *Katz* opinion used history to show that the Framers of the Constitution were aware of the issues and intentionally conferred broad authority to enact "Laws on the subject of Bankruptcies" that could bind States.[72] It explained that this power could be exercised by Congress to treat States in a special manner, or to treat them like other creditors; the Constitution did not impose restrictions.[73] Referring to the Bankruptcy Act of 1800, the Court said:

> That Congress felt the need to carve out an exception for States' preferences undermines any suggestion that it was operating against a background presumption of state sovereign immunity to bankruptcy laws.[74]

---

[67] Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72–73 (1996).
[68] *Katz*, 126 S. Ct. at 1000 n.9 (emphasis added).
[69] *Id*. at 1000 (emphasis added).
[70] *Id*. at 1004 (emphasis added).
[71] *Id.* at 1000–02 (quoting U.S. CONST. art. I, §8, cl. 4)
[72] *Id*. at 1004 (citing Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779 (1991) (internal quotations omitted)).
[73] *Id.* at 1005.
[74] *Id*. at 1003 n.12.

The point, said the Court, was that Congress was empowered to make determinations about the extent of bankruptcy court power over States:

> The relevant question is not whether Congress has "abrogated States" immunity in proceedings to recover preferential transfers. The question, rather, is whether Congress' determination that States should be amenable to such proceedings is with the scope of its power to enact "Laws on the subject of Bankruptcies."[75]

Analogizing historical examples cited by the Court in *Katz* to modern-day equivalents, however, it is evident that bankruptcy proceedings determining rights of States are extensive.

For example, *Katz* cited *habeas corpus* proceedings directing States to release debtors from state prisons as an illustration of the exercise of jurisdiction ancillary to *in rem* bankruptcy jurisdiction.[76] The current Bankruptcy Code expressly does not stay criminal actions against debtors, or state proceedings to suspend or restrict debtors' licenses to move in vehicles or operate their businesses.[77]

But a bankruptcy statute could provide otherwise under the reasoning in *Katz* and older Supreme Court cases, and federal bankruptcy court *in rem* ancillary jurisdiction over a debtor apparently would encompass adversary proceedings to enjoin government officials from exercising such power to terminate a debtor's rights. The Bankruptcy Code does stay numerous other types of actions States can take, such as seizing tax refunds or impressing liens on estate property to satisfy debts.

*Katz* noted that historically, bankruptcy courts had authority "to imprison recalcitrant third parties in possession of the estate's assets" and to "pursue any *legal* method of recovering [the debtor's] property "[78] The *Katz* opinion recognized that the bankruptcy court has power under the current Bankruptcy Code to recover property under section 550 and mandate turnover of assets to marshal the entirety of a debtor's estate.[79]
By inference as well as by statute, the bankruptcy court accordingly has jurisdiction over adversary proceedings to seize assets in which the estate allegedly has an interest, pursue avoidance actions of all kinds, and simply liquidate assets including causes of action. *Katz* repeatedly referenced bankruptcy courts' ancillary power "to issue compulsory orders to facilitate administration and distribution of the bankruptcy *res*."[80] That would logically include authority

---

[75] *Katz*, 126 S. Ct. at 1005 (internal citations omitted).
[76] *Id*. at 1004–05 (recognizing Sixth Congress' authorization of federal courts to release debtors from state prisons).
[77] *Id*. at 1004–05 (recognizing Sixth Congress' authorization of federal courts to release debtors from state prisons).
[78] *Katz*, 126 S. Ct. at 1000 (emphasis in original).
[79] *Id.*; *see* 11 U.S.C. §§ 550, 541, 542 (2006) (discussing property of estate, turnover of property to estate, and liability of transferee of avoided transfer).
[80] *Katz*, 126 S. Ct. at 996 (recognizing bankruptcy court's power to distribute *res*).

to determine an estate's tax liability, contract assumption rights, claim allowance and status, rights and claims with respect to use and sale of estate property, and similar matters.[81]

Congress may have determined that States should not be obliged to participate in some bankruptcy proceedings without their consent, however. Section 106(a) of the Bankruptcy Code lists numerous Code provisions where Congress specified that "sovereign immunity is abrogated as to a governmental unit."[157] *Id.* § 106(a) (2006).

*Katz* upheld bankruptcy court jurisdiction to recover payments preferentially made to State entities.[82] The Court's reasoning appears broad enough to encompass all or virtually all proceedings that might be brought under the bankruptcy court's "arising under, arising in and related to" jurisdiction.[83] The scope of such proceedings themselves, when evaluated by a test of *in rem* ancillary jurisdiction, is far-reaching, even if section 106(a) is construed as a limited recognition of sovereign immunity in bankruptcy.

The Sheriff does not dispute that **"the automatic stay is a fundamental procedural mechanism that allows a bankruptcy court to exercise its core in rem functions – jurisdiction over the bankruptcy estate and the equitable distribution of the debtor's property among its creditors."** *In re Diaz*, 647 F.3d. at 1085. *See* Def's Memo at 6. This Court has already ruled on this issue and rejected the defense of governmental immunity in *In re Odom*, 570 B.R. 718 (2017); *In re Odom*, 571 BR 687 (2017) where the Philadelphia Parking Authority asserted governmental immunity as a defense to the § 362(k) claim. The court noted "The PPA asserts that, as a government agency, it is entitled to immunity from the Debtor's claim for damages under 11 U.S.C. § 362(k) and therefore, it is entitled to summary judgment. This argument is without merit. In evaluating an immunity defense, the starting point is to determine the source of the asserted immunity. In this case, to understand fully the contours of the immunity issue presented, it is helpful to start with the type of immunity that is not at issue. The PPA does not assert immunity based on the Eleventh Amendment to the U.S. Constitution. The Eleventh Amendment applies to actions brought by a citizen against a state or state instrumentality. The Eleventh Amendment provides no defense to the PPA for two (2) independent reasons. First, The PPA admits that it is a local agency, not a state agency or instrumentality. (PPA's Motion at 6). Consequently, Eleventh Amendment immunity is not applicable here. Second, and equally significant, any potential Eleventh Amendment immunity has been waived and imposes no obstacle to the bankruptcy court's adjudication of this proceeding for damages under 11 U.S.C. § 362(k)."

Judge Frank's immunity analysis in *In re Odom* is availing: "In *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), the Supreme Court held that the "States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to `Laws on the subject

---

[81] 11 U.S.C. §§ 363, 364, 365, 502, 505, 506, 510 (2006) (discussing use, sale, or lease of property, obtaining credit, executory contracts and unexpired leases, allowance of claims or interests, determination of tax liability, determination of secured status, and subordination).

[82] *Katz*, 126 S. Ct. at 994 (recovering preferential transfers to each of petitioners).

[83] *Id*. at 995–96 (failing to implicate state sovereignty to the "same degree as other kinds of jurisdiction").

of Bankruptcies.'" Id. at 377, 126 S.Ct. 990. As a result, bankruptcy in rem jurisdiction extends against a state in all matters arising in bankruptcy cases that are "necessary to effectuate the in rem jurisdiction of the bankruptcy courts." Id. at 378, 126 S.Ct. 990. The exercise of this bankruptcy jurisdiction is not dependent upon 11 U.S.C. § 106 or any Congressional action.

> In *Katz*, the Supreme Court identified three (3) "[c]ritical features" of the bankruptcy court's in rem jurisdiction:

> the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a `fresh start' by releasing him, her, or it from further liability for old debts.  546 U.S. at 363-64, 126 S.Ct. 990.

> A proceeding involving the enforcement of the automatic stay constitutes a "critical feature" in the exercise of in rem bankruptcy jurisdiction in that it facilitates the exercise of the court's exclusive jurisdiction over the debtor's property. As the Eleventh Circuit has explained:

> Ordinarily, an adversary action arising out of a creditor's violations of the automatic stay forces the creditor to honor the automatic stay and thereby assists the bankruptcy court in carrying out its in rem functions. That holds true even where the action takes the form of a motion seeking contempt and sanctions. Although these kinds of actions `may resemble money damage lawsuits in form, it is their function that is critical, and their function is to facilitate the in rem proceedings that form the foundation of bankruptcy.' (italics in original).

> *In re Diaz*, 647 F.3d 1073, 1085 (11th Cir. 2011);[12] accord *In re Schroeder,* 2009 WL 3526504, at *4 (Bankr. D. Neb. Oct. 23, 2009) (under *Katz*, "damages for violating the automatic stay are within the scope of the [bankruptcy] court's authority over the states").

> In its submissions, the PPA muddles the immunity issue by discussing 11 U.S.C. § 106(a) at some length. Section 106(a) purports to be a Congressional waiver of Eleventh Amendment immunity (an immunity which the *Katz* court held was waived through the ratification of the Constitution and not dependent on Congressional action).

> Section 106(a) states, in relevant part,

> [n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [inter alia. § 362].

> The PPA points out, accurately, that in *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 245 (3d Cir. 1998), the Third Circuit held that a prior version of § 106(a) was unconstitutional insofar as it purported to be a Congressional abrogation of the states' Eleventh Amendment immunity. See also *In re Philadelphia Entm't & Dev. Partners, L.P.,* 549 B.R. 103, 121 (Bankr. E.D. Pa. 2016) ("consistent with the Third Circuit's

opinion in *Sacred Heart,* to find that § 106(a) of the Bankruptcy Code may not be relied upon by the Trustee to defeat the Commonwealth Parties' assertion of sovereign immunity"). The PPA then argues that § 106(a) does not interfere with the immunity provided by the PSTCA.

For the reasons explained in Part V.A.1, supra, the PPA's § 106(a) argument is unavailing. It is based on the false premise that § 106(a) impacts its claimed entitlement to immunity. After *Katz*, both *Sacred Heart* and § 106(a) essentially are irrelevant in the analysis of waiver of state sovereign immunity. In any event, as previously explained in the previous section of this Memorandum: (1) as a local agency, the PPA cannot invoke state sovereign immunity; and **(2) even if the PPA were a state instrumentality, under *Katz*, it could not invoke sovereign immunity as a defense to an action under 11 U.S.C. § 362(k)."**

The automatic stay imposes a specific and definite injunction that is equivalent of a court order. The Sheriff acknowledges, as it must, that it had notice of the Debtor's bankruptcy filing and the existence of the automatic stay. The Commonwealth of Pennsylvania, (or a local agency) cannot immunize itself from liability for violation of the provisions of the federal Bankruptcy Code.

WHEREFORE, Plaintiff, by and through his counsel, respectfully request that this Honorable Court dismiss Sheriff's Motion for Summary Judgment.

Dated:  April 6, 2020

By: /s/ *Predrag Filipovic*
Predrag Filipovic, Esquire
1735 Market St., Suite 3750
Philadelphia, PA 19103
267-265-0520 Phone
Attorney for Plaintiff

BY: /s/ *Stephen M. Dunne*
Stephen M. Dunne, Esquire
1515 Market Street, Suite. 1200
Philadelphia, PA 19102
(215) 551-7109 Phone
Attorney for Plaintiff