**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | |
| | Chapter 13 |
| LYNDEL TOPPIN, | |
| | Bankruptcy No. 18-13098 (MDC) |
| Debtor. | |
| | |
| LYNDEL TOPPIN, | |
| | Adv. Pro. No. 18-00137 (MDC) |
| Plaintiff, | |
| | |
| v. | |
| | |
| JEWELL WILLIAMS SHERIFF | |
| OF THE CITY OF PHILADELPHIA and | |
| ABDELDAYEM HASSAN a/k/a | |
| ABDELDYEM HASSAN, | |
| | |
| Defendant | |

**THE SHERIFF OF THE CITY OF PHILADELPHIA'S MEMORANDUM OF LAW**
**IN SUPPPORT OF MOTION FOR DIRECTED VERDICT**

The Sheriff of the City of Philadelphia ("Sheriff"),[1] hereby files the following Memorandum of Law in Support of Motion for Directed Verdict.

**I.    PROCEDURAL AND STIPULATED FACTUAL BACKGROUND**

1. On May 8, 2018, Lyndel Toppin ("Plaintiff") petitioned this court for relief under Chapter 13 of the Bankruptcy Code.[2]

2. On June 11, 2018, Plaintiff commenced this adversary proceeding by filing a Complaint Concerning Willful Violations of the Automatic Stay by Defendant Sheriff of the City of Philadelphia [Docket No. 1].

---

[1] The current Sheriff of the City of Philadelphia is Rochelle Bilal.

3. On June 18, 2018, Plaintiff filed an Amended Complaint Concerning Willful Violations of the Automatic Stay by Defendants Sheriff of the City of Philadelphia and Abdeldayem Hassan a/k/a Abdeldyem Hassan [Docket No. 3] ("First Amended Complaint").

4. On July 19, 2019, the Sheriff filed an Answer to the First Amended Complaint with Affirmative Defenses [Docket No. 7].

5. On August 18, 2018, the Sheriff filed a Motion for Judgment on the Pleadings [Docket No. 9] to which Plaintiff filed a reply [Docket No. 17].

6. A hearing on the Motion for Judgment on the Pleadings was held on September 25, 2018. The Court held the Motion under advisement [Docket No. 21].

7. On September 26, 2018, Plaintiff filed a Motion for Leave to Amend Adversary Complaint [Docket No. 23] to which the Sheriff objected [Docket No. 25].

8. Following a hearing on October 23, 2018, the Motion for Leave to Amend Adversary Complaint was granted [Docket No. 28].[3]

9. On October 24, 2018, Plaintiff filed the Second Amended Complaint Concerning Willful Violations of the Automatic Stay by Defendants Sheriff of the City of Philadelphia and Abdeldayem Hassan a/k/a Abdeldyem Hassan ("Second Amended Complaint") [Docket No. 29].

10. On November 21, 2018, the Sheriff filed an Answer to the Second Amended Complaint with Affirmative Defenses [Docket No. 37].

11. On May 24, 2019, Plaintiff filed a Motion for Judgment on the Pleadings [Docket No. 48] to which the Sheriff objected [Docket No. 50].

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion for Directed Verdict.

[3] A docket entry on the date of the hearing [Docket No. 27] includes the notation "UNDER ADVISEMENT MOOT", which likely refers to the Sheriff's Motion for Judgment on the Pleadings, the only motion under advisement at that time.

12. A hearing on Plaintiff's Motion for Judgment on the Pleadings was held on June 18, 2019 and the Court ordered that a Scheduling Order be submitted [Docket No. 53].

13. On July 18, 2019, the Court issued a Pre-Trial Scheduling Order setting November 26, 2019 as the discovery deadline; December 26, 2019 as the deadline for filing summary judgment; January 16, 2020 as the discovery disclosures deadline; and February 28, 2020 as the deadline for motions in limine [Docket No. 56].

14. On December 26, 2019, the Sheriff filed a Motion for Summary Judgment [Docket No. 71] and Memorandum of Law in Support of Motion for Summary Judgment [Docket No. 72].

15. Plaintiff filed a response to the Motion for Summary Judgment [Docket No. 105] and the Sheriff filed a Reply Brief in Support of Summary Judgment [Docket No. 112].

16. On November 26, 2020, the date of the discovery deadline, Plaintiff filed two Motions to Compel Discovery [Docket Nos. 59 and 60] to which the Sheriff filed a response [Docket Nos. 68 and 69].

17. On January 15, 2020, Plaintiff filed a Motion for Sanctions against the Sheriff [Docket No. 77] to which the Sheriff filed a response [Docket No. 92].

18. On January 16, 2020, in accordance with the Pre-Trial Scheduling Order, the Sheriff submitted its discovery disclosures [Docket No. 86], Plaintiff filed his disclosures a day later [Docket No. 88].

19. On January 28, 2020, a hearing was held on the Motion for Sanctions and Motions to Compel. The Motion for Sanctions and Motions to Compel were denied [Docket Nos. 99, 101 and 111], however, the Court granted Plaintiff's request for a deposition of an additional witness and instructed the Sheriff to either produce the witness or file a sworn affidavit regarding

measures taken to identify and produce the witness [Docket No. 111]. The Sheriff complied with the Court's Order and, on March 12, 2020, filed an affidavit [Docket No. 122].

20. A hearing on the Motion for Summary Judgment was held on February 18, 2020. The Court granted the Motion in part as to Plaintiff's claim for punitive damages and suspended its ruling on all other issues pending supplemental briefing on whether, by ratifying the United States Constitution and the Bankruptcy Clause contained therein, the States agreed to waive their sovereign immunity with respect to claims for violation of the stay imposed by 11 U.S.C. §362 for enforcement of a writ of possession [Docket No. 119].

21. On March 25, 2020, the Court scheduled trial for July 17, 2020 [Docket No. 124].

22. Supplemental briefs were submitted on April 6, 2020 [Docket Nos. 126 and 127].

23. On July 10, 2020, Plaintiff filed a Motion to Continue the July 17, 2020 Trial Date and sought expedited consideration of same [Docket Nos. 130 and 131].

24. Following a hearing, on July 14, 2020, the Court granted the Motion and continued the trial to August 21, 2020 [Docket No. 137].

25. The morning of the trial, Plaintiff filed a Motion In Limine to Exclude the Testimony of Abdeldayem Hassan ("Motion to Exclude") [Docket No. 151].

26. Trial commenced on August 21, 2020. At the outset of the hearing, the Court denied the Motion to Exclude Mr. Hassan's testimony.

27. The parties stipulated to the following facts:

- Abdeldayem Hassan filed a Complaint in Ejectment against "Unknown Occupants" pertaining the Property in Philadelphia Court of Common Pleas, in January 2018, docketed as 003400;

- Abdeldayem Hassan procured a Judgment by Default for Possession, which was entered against Unknown Occupants on April 5th, 2018 in the Philadelphia Court of Common Pleas;

- Abdeldayem Hassan procured a Writ of Possession against "Unknown Occupants" on May 7, 2018;

- On May 8, 2018, Plaintiff Lyndel Toppin filed a Chapter 13 bankruptcy in the Eastern District of Pennsylvania, Bankruptcy Court.

*See* August 21, 2020 Trial Transcript ("Tr. Trans.") at 55:1-17.

28.   At the close of Plaintiff's case in chief, the Sheriff moved for a directed verdict.[4] Tr. Trans. at 253:2-255:13.

## II.   PRELIMINARY STATEMENT AND DIRECTED VERDICT STANDARD

As a preliminary matter, the Sheriff's Motion for Summary Judgment remains under advisement. At trial, the Court noted the Motion was under advisement and commented that it viewed the Motion for Summary Judgment as a threshold matter that will be addressed in the context of the entire case. Tr. Trans. at 7:24-9:13. The Sheriff incorporates by reference the Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Reply Brief in Support of Motion for Summary Judgment and Supplemental Brief in Support of Motion for Summary Judgment as though fully set forth herein. In addressing the merits of Plaintiff's case at trial, the Sheriff does not, nor does the Sheriff intend to, waive any arguments raised in the Motion for Summary judgment including, but not limited to, arguments with respect to sovereign immunity, quasi-judicial immunity and immunity from emotional distress damages under the Pennsylvania Political Subdivision Tort Claims Act.

The Sheriff moves for a directed verdict pursuant to Federal Rule of Civil Procedure 52(c) made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7052 which is titled "Judgment on Partial Findings." The rule provides that if, during

---

[4] At trial, the Sheriff moved for a directed verdict, but mis-cited the applicable code provision as Federal Rule of Civil Procedure 41(b) made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7041. Federal Rule of Civil Procedure 41(b), however, has been replaced by Federal Rule of Civil Procedure 52(c). *See* Fed. R. Civ. P. 52(c), advisory committee's note.

5

a nonjury trial, a party has been fully heard on an issue essential to its case and the court finds against the party on that issue, the court may enter judgment against the party. Such judgment must be supported by findings of fact and conclusions of law pursuant to Rule 52(a). Fed. R. Civ. P. 52. On a motion under the rule, the court applies the same standard of proof and weighs evidence as it would at the conclusion of trial, including making determinations of witness credibility. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272–73 (3d Cir. 2010). Unlike a motion for summary judgment, the court is not required to draw any special inferences in the nonmovant's favor or consider the evidence in the light most favorable to the nonmovant. *Id.* at 273. The purpose of Rule 52 motions is to conserve the time and resources of the parties and the court by obviating the need for the moving party to present its rebuttal case. *In re Gisondi*, 487 B.R. 423, 427 (Bankr. E.D. Pa. 2013), *aff'd*, No. CIV.A. 13-6147, 2014 WL 683755 (E.D. Pa. Feb. 21, 2014).

Plaintiff claims the Sheriff violated Section 362(a)(3) of the Bankruptcy Code, which stays any act to obtain possession of property of the estate, property from the estate or to exercise control over property of the estate. Plaintiff alleges that such violations were willful entitling Plaintiff to damages pursuant to Section 362(k) of the Code. Tr. Trans. at p. 40:2-15. Plaintiff did not meet his burden at trial.

### III.   PLAINTIFF'S CASE AGAINST THE SHERIFF IS FUNDAMENTALLY

The general policy behind the automatic stay is to grant complete, temporary relief to the debtor from creditors and also to prevent the piecemeal dismantling of assets through unilateral creditor action. *See e.g., Penn Terra Ltd. v. Department of Environmental Resources,* 733 F.2d 267, 271 (3rd Cir.1984); *In re Philadelphia Consumer Disc. Co.*, 37 B.R. 946, 949 (E.D. Pa. 1984) (citations omitted). Following the conclusion of Plaintiff's case in chief, there is no

question that the Sheriff was not acting as a creditor nor as the agent of a creditor. The Sheriff was acting as an arm of the state court in enforcing a facially valid Writ of Possession. The transcript is devoid of any evidence or testimony to the contrary.

Captain Sean Thornton, of the Sheriff's Civil Enforcement Unit, testified that the unit oversees the execution of writs, injunctions, protections from abuse, and other civil processes. Tr. Trans. at 122:1-7. Sergeant Jertaria Taylor corroborated Cpt. Thornton's testimony regarding her duties. Sgt. Taylor's duties with the Civil Enforcement Unit were to enforce court orders including writs of possession, writs of executions, writs of attachment, "any type of court orders." Tr. Trans. at 216:16-23.

With respect the Writ of Possession, according to Cpt. Thornton, Sgt. Taylor would have gone to the Property on two occasions in accordance with Civil Enforcement Unit practice, once to attempt service of a notice to vacate and a second time to attempt service of notice of eviction. Each time notice would be posted to the property, left at the property and mailed to the property if not hand delivered to the occupant. Tr. Trans. at 203:5-14; 206; 207:8-16; 210:14-211:5.

Sgt. Taylor confirmed that when serving writs of possession, she would first go to the property to serve a 21-day notice to vacate and then a second time to serve a notice of eviction. Two copies of each notice are left at the property and one is mailed. Tr. Trans. at 217:7-21. Plaintiff, testifying through his court appointed next friend, Barrington Whyte, testified that he saw a total of six notices inside the home between May 18, 2018 and June 7, 2018. Tr. Trans. at 65:8-67:21; 72:23-73:23; 77:17-79:5; 84:19-86:2; 88:4-8; 89:20-90:10; 91:10-92:16.

Plaintiff's allegations against the Sheriff all stem from the lawful enforcement of the Writ of Possession. Sgt. Taylor sought to personally serve a notice to vacate once and an eviction notice once, but because personal service could not be made, a copy of each document was

posted to the Property, left in the mail slot of the Property and mailed to the Property. There is no suggestion that the Writ was enforced in a manner that was beyond the scope of the mandate contained therein, which directed the Sheriff to deliver possession to Mr. Hassan. Per Mr. Whyte, the last notice was received on or about June 7, 2018, before the adversary proceeding was commenced. Tr. Trans. at 91:10-92:16; 100:4-11. The Plaintiff was never evicted. Tr. Trans. at 98:4-7. There was no prior action allegedly taken by the Sheriff that needed to be or could be remedied—there was no alleged violation of the automatic stay that needed undoing.

In addition, Plaintiff presented no evidence or testimony regarding whether notice was given to the creditor in this case, Abdeldayem Hassan, nor was there testimony or evidence to show that Mr. Hassan took any action to stop enforcement of the Writ of Possession. In fact, just prior to the trial, Plaintiff filed a motion seeking to preclude any testimony from Mr. Hassan.

It is generally accepted law that the burden is on the creditor to notify third-parties that the automatic stay is in place and efforts in furtherance of execution or enforcement must cease. *See e.g.*, *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mi. 2000) ("many courts have emphasized the obligation incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of an automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition."); *In re Hardesty*, 442 B.R. 110 (Bankr. N.D. Ohio 2010) ("Once a creditor commences legal proceedings, it cannot disown all responsibility for actions taken by other parties in furtherance of the action."); *In re Brown*, No. BR 12-14058, 2012 WL 3908029, *5–6 (Bankr. E.D. Pa. Sept. 7, 2012) (creditor had duty to take affirmative action to notify Sheriff of Chester County to cease enforcement of pre-petition writ of execution

8

once creditor received notice of bankruptcy). Plaintiff recognizing the significance of the flaw in his case sought to exclude Mr. Hassan's testimony as prejudicial and irrelevant.

### IV. PLAINTIFF HAS NOT PROVEN A WILLFUL VIOLATION OF THE AUTOMATIC STAY

Assuming, but not conceding, the Sheriff, a non-creditor third-party, can be held liable for violating the stay under the circumstances presented here, the burden was on the Plaintiff to prove a willful stay violation by a preponderance of the evidence.

> A 'willful' violation of the automatic stay occurs when the debtor shows, by a preponderance of the evidence, that: (1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and (3) the violation caused actual damages. *In re Linsenbach*, 482 B.R. 522, 526 (Bankr. M.D. Pa. 2012) (citing *In re Miller*, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011) (citation omitted); *In re Frankel*, 391 B.R. 266, 271 (Bankr. M.D. Pa. 2008) (citations omitted)). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *In re Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992) (citing *In re University Medical Center*, 973 F.2d 1065, 1087–88 (3d Cir. 1992)).

*In re Kaushas*, 616 B.R. 57, 62 (Bankr. M.D. Pa. 2020).

The facts presented by Plaintiff regarding notice are confusing and inconclusive. There was some testimony from Cpt. Thornton, upon reviewing a document not introduced into evidence, that a fax was sent to the Real Estate Unit of the Sheriff's Office on May 8, 2018. Tr. Trans. at 169:13-170:5. Cpt. Thornton also provided some testimony regarding a document from the Real Estate Unit identified as a "Sheriff's Return of Service" with a Book/Writ number on it and the notation "5/8/2018 defending attorney. 5/9/2018." Tr. Trans. at 178:4-180:5; 182:2-15. Throughout this same testimony, however, Cpt. Thornton testified that he is not familiar with the "Sheriff's Return of Service", does not know what Book and Writ refers to and that he is not familiar with the operations of the Real Estate Unit. Tr. Trans. at 178:4-9; 180:2-21; 182:1-3.

The Sheriff has admitted, however, in its Response to Requests for Admission, which were admitted into evidence at trial as P-23, that the Sheriff's Real Estate Unit received notice of Plaintiff's bankruptcy on or about May 8, 2018 and that a fax was received at the fax number for the Real Estate Unit containing a Notice of Bankruptcy on behalf of Plaintiff on May 8, 2018. *See* P-23 at Response to Request 15 and Response to Request 19.

Cpt. Thornton was also referred to another document not admitted into evidence that had the fax number for the Civil Enforcement Unit that was a two-page document that looked like a notice of bankruptcy that he had only seen in the context of trial. Tr. Trans. at 189:19-190:20. The Sherriff admitted in its Responses to Requests for Admissions *only* that on May 10, 2018 a fax was transmitted to fax number 215-686-3955 with the subject line "Notice of Bankruptcy." *See* P-23 at Response to Request 22. Requests for Admission seemed to refer to, but did not attach nor specifically identify documents produced by Plaintiff during discovery. It remains entirely unclear whether the Response to Request 22 is referring to the same document that Cpt. Thornton was asked to review at trial, which was not admitted. The Sheriff did admit, however, that it received a fax sent to the fax number for the Civil Enforcement Unit containing a Notice of Bankruptcy Filing on behalf of Plaintiff on June 7, 2018. *See* P-23 at Response to Request 24.

The evidence with respect to notice, at the close of Plaintiff's case, is that the Real Estate Unit received notice of Plaintiff's bankruptcy on May 8, 2018 and the Civil Enforcement Unit received notice of Plaintiff's bankruptcy on June 7, 2018. There is no evidence or testimony to establish that efforts to enforce the Writ of Possession continued after June 7, 2018.

Plaintiff's position appears to be that notice to the Real Estate Unit is notice to all departments of the Sheriff's Office, which include installations at the Criminal Justice Center and Family Court, the Warrant Unit, Civil Enforcement Unit and Real Estate Unit. Tr. Trans. at

10

125:3-126:4. Even a creditor cannot be held responsible for a violation of the automatic stay unless conduct that is the subject of such violation receives sufficient notice of the order for relief under Section 342 of the Bankruptcy Code. 11 U.S.C.A. § 342(g)(2). The Sheriff is not a creditor. There was no evidence at trial that prior to June 7, 2018 the Civil Enforcement Unit received notice of the bankruptcy. When the Civil Enforcement Unit did receive notice of the bankruptcy, it followed policy and ceased enforcement.[5]

Even if the Court finds the Sheriff had sufficient notice of the bankruptcy when it made efforts to enforce the Writ of Possession, the violation did not cause the Plaintiff any actual damages. Section 362(k) allows a debtor to recover actual damages stemming from a willful violation of the automatic stay. 11 U.S.C. § 362(k)(1). An award of actual damages may include lost wages or emotional distress damages. *See In re Johnson*, 601 B.R. 365, 378 (Bankr. E.D. Pa. 2019); *In re Lansaw*, 853 F.3d 657. 668 (3rd Cir. 2017); *In re Vu*, 591 B.R. 596, 605 (Bankr. E.D. Pa. 2018). Actual damages must be supported by concrete evidence and proven with reasonable certainty and cannot be based upon speculation, guess and conjecture. *In re Vu*, 591 B.R. at 604 (citations omitted). The only evidence of damages at trial was the following testimony from Mr. Whyte:

> Q. Mr. Whyte, I'll ask you now some questions about your uncle. And I'm going to direct you at the exact time when these notices started arriving at your house. How did those notices affect your uncle, if at all? From your own personal observations?
>
> A. Well, from me seeing, you know, and knowing, and living with him for so long, he's just -- he's been kind of like distorted. You

---

[5] Philadelphia Sheriff's Office Directive #28 ("Directive") was admitted into evidence as City-28. The Directive provides:
> When [a notice of bankruptcy is] received by the Sheriff's Office, all legal action is to stop. Details, numbers and other particulars are to be recorded in division docket and on writ. If there is any question as to the validity, postpone any action. Must check with attorney on writ for Bar Order.

*See* City 28.

> know, he's always like looking at me when he picks up the papers, just like to -- for me to give a good response to him, you know, basically on it. But I think – I can't really give a good response because I don't know a good response. I don't know how this situation is going to turn out. So and my stress, you know, leans off on him. But on top of that also, just been -- you know, he's been off. He hasn't been, like, 100%. You know, he's been smoking cigarettes more a lot. He's been, like, not basically eating the dinners that I, like, serve for him or, like, put out for him to eat.

Tr. Trans. at 95:11-96:3.

> Q. Do you think that from your, I guess, experience with your uncle, what kind of effect, if any, do you think that they had on him and did that manifest itself somehow in his behavior? If you could tell the court.
>
> A. Well, as I said before, he hasn't been eating. Like, his normal routine, and he's been, like, smoking more Newports, you know, now because, you know, I smell it more often now. And like I say, he's like -- he's basically not what I'm used to. He's, like, kind of out of it. He's been, like, missing sleep and things like that. Because I would notice when I come in his, you know, light would be on in his room about 2:00, 3:00 in the morning. Normally, you know, we're asleep and the household is down by that time.
>
> Q. Do you believe upon your personal observations, did he understand what the notice entails? Do you know if he knows what it means to vacate?
>
> A. Well, he doesn't -- he cannot read the notice at all, but what he actually directly pointed out to me was, you know, the big bold red letters and the little shield that's on there. That's mainly what he pointed out to me.
>
> Q. Okay. And how is he now? It's been some time since the notices came in, how is he now?
>
> A. He's still not eating on, you know, on schedule as we usually do. He's still smoking a lot. He's still doing that. And he's still just, like, sitting around in the living room, you know, just there. He's not -- like, with no T.V. on or nothing. He'll just be, like, there.

Tr. Trans. at 97:2-98:3.

The Sheriff recognizes that Plaintiff is purportedly deaf and mute with no ability to read which would make establishing emotional distress damages difficult to prove. However, the lack of any context, detail or temporal perspective that can link any of Mr. Whyte's observations causally to the alleged stay violations renders the damages testimony unconvincing and unreliable. Mr. Whyte's testimony alone is not sufficient to award actual damages in this case. This is especially so in light of the fact that there is no evidence, circumstantial or direct, that Mr. Toppin or anyone else observed Sgt. Taylor at the Property or had any interaction with Sgt. Taylor.

The Third Circuit has noted that, in the absence of "patently egregious" violations, "corroborating medical evidence may be required to prove emotional harm and causation." *Lansaw*, 853 F.3d at 669. Although the court did not define what facts would give rise to such a determination, the facts of the instant case are markedly different from the "patently egregious" fact pattern in *Lansaw*, which included post-petition conduct by a defendant landlord such as entering plaintiff's business without permission, chaining and padlocking doors, physical intimidation and threatened legal action. *Id.* at 661-662.

Here, the Sheriff was tasked with enforcing a facially valid court order for Writ of Possession. In an attempt to properly notify any potential occupants at the Property, attempt at personal service was made on two occasions. When personal service could not be had on those two occasions, notice was posted to the property, left in the mail slot and sent by mail. The Civil Enforcement Unit had no knowledge that there was a bankruptcy related to the eviction action. Further, the Sheriff in this context was not acting as a creditor, but rather as an arm of the judicial system, implementing court-related processes as mandated by state law.

These facts do not rise to a willful violation of the automatic stay, let alone the type of egregious conduct that would absolve the Plaintiff from presenting corroborating information of emotional distress. *See e.g.*, *In re Wingard*, 382 B.R. 892, 906 (Bankr. W.D. Pa. 2008)(creditor's post-petition debt collection activity not patently egregious to give rise to presumption of emotional distress without demonstration of significant harm). The reason why hard evidence of emotional distress damages is required is to ensure against "a 'cottage industry' built around satellite fee litigation" where a violation does not cause damages. *In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010) (citations omitted).

WHEREFORE, the City of Philadelphia respectfully requests that the Court grant a directed verdict in the Sheriff's favor, dismiss this adversary proceeding and grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: October 8, 2020        By:    */s/ Megan N. Harper*
MEGAN N. HARPER
Deputy City Solicitor
PA Attorney I.D. 81669
Attorney for the City of Philadelphia
City of Philadelphia Law Department
Municipal Services Building
1401 JFK Boulevard, 5th Floor
Philadelphia, PA  19102-1595
215-686-0503 (phone)
Email: Megan.Harper@phila.gov