**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: :<br>:<br>LYNDEL TOPPIN, :<br>:<br>Debtor. :<br>:<br>LYNDEL TOPPIN, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>JEWELL WILLIAMS, SHERIFF :<br>OF THE CITY OF PHILADELPHIA and :<br>ABDELDAYEM HASSAN a/k/a :<br>ABDELDYEM HASSAN, :<br>:<br>Defendants. :<br>: | Chapter 13<br><br>Bankruptcy No. 18-13098 (MDC)<br><br><br><br><br><br>Adv. Proc. No. 18-00137 (MDC) |

**LYNDEL TOPPIN'S MEMORANDUM OF LAW IN RESPONSE**
**TO THE SHERIFF OF THE CITY OF**
**PHILADELPHIA'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

Lyndel Toppin asks the Court to deny the Sheriff of the City of Philadelphia's motion for judgment on partial findings.

**A. INTRODUCTION**

1. Plaintiff is Lyndel Toppin; defendant is the Sheriff of the City of Philadelphia;

2. Plaintiff sued defendant for violation of the automatic stay;

3. The bench trial of this case began on August 21, 2020;

4. The Court heard Plaintiff's case and after Plaintiff rested, 55 days later, on October 15th 2020, Defendant filed its motion claiming it is entitled to directed verdict judgment as a matter of

law on partial findings and without its own evidence or witnesses to rebut what the Plaintiff has set forth;

5. For reasons stated below this Court should deny Defendant's motion.

### I. STANDARD FOR REVIEW

Federal Rule of Bankruptcy Procedure 7052 entitled "Findings by the Court," incorporates Federal Rule of Civil Procedure 52. Federal Rule of Civil Procedure 52(c) states:

> Judgment on Partial Findings
>
> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).
>
> Under this Rule, a court assesses the evidence presented and may render judgment if the

evidence is insufficient to support a claim or defense.5 See Carter v. Ball, 33 F.3d 450 (4th Cir.1994); FED. R. CIV. PROC. 52 Advisory Committee Note (2007) (noting that "[t]he standards that govern judgment as a matter of law in a jury case have no bearing on a decision under Rule 52(c)"). The Court is required by Federal Rule of Civil Procedure 52(a) to "find the facts specially and state its conclusions of law separately."

Plaintiff has more than ample evidence in introduced evidentiary evidence as well as sworn testimony as well as admissions by the Defendant made pursuant to F.R.C.P 36.

## II. SUMMARY OF THE ARGUMENT

The automatic stay, imposed by 11 U.S.C. § 362(a), prohibits, inter alia, "any act to collect ... or recover a claim against the debtor that arose before the commencement of the case," 11 U.S.C. § 362(a)(6) and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3).

A willful violation of the automatic stay gives rise to a claim for damages, as set forth in 11 U.S.C. § 362(k): Plaintiff has shown in no small part by use of City's exhibits that there was at least 6 instances or acts by the Sheriff that sought "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3). "

## B. ARGUMENT

During a bench trial, a court may render judgment on partial findings against a party if it determines that the party cannot prevail on an issue and that the party's claim or defense cannot be maintained or defeated without a favorable finding on that issue. Fed. R. Civ. P. 52(c); see Geddes v. Nw. Mo. State Univ., 49 F.3d 426, 429 n.7 (8th Cir. 1995). However, this is not a case in which the Court should do so.

The Court should deny the Sheriff of the City of Philadelphia's motion for judgment on partial findings because all material issues of fact are supported by evidence sufficient for Lyndel Toppin to prevail.

I. **THROUGH DOCUMENTIARY EVIDENCE, WITNESS TESTIMONY AND ADMISSIONS OF THE SHERIFF PLAINTIFF HAS SHOWN BY PREPONDERANCE OF EVIDENCE THAT DEFENDANT HAD NOTICE OF THE BANKRUPTCY CASE**

The Philadelphia Sheriff's Office admitted receiving multiple Notice(s) of the Lyndel Toppin Bankruptcy on May 8, 2018 in its Response(s) to Requests for Admission, which were admitted into evidence at trial as P-23.

F.R.C.P 36 (b) **Effect of an Admission; Withdrawing or Amending It**.

A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

In this case, Court did not allow the admission to be withdrawn or amended and Defendant did not seek to withdraw or amend any of its admissions. At issue herein are on notice are the following admissions:

**RFA No. 15:** Admit that You received notice of the Lyndel Toppin bankruptcy on May 8, 2018?

**Answer No. 15: Admitted.**

**RFA No. 19:** Admit that You received a fax at 215-686-3971 from Stephen Dunne on May 8, 2018 containing a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin?

**Answer No. 19: Admitted.**

The evidence with respect to notice is unequivocal that multiple Notice(s) of the Lyndel Toppin Bankruptcy were received by the Sheriff's office on May 8, 2018. Even the Sheriff's trial exhibits suggest that the Sheriff was fully aware of the Lyndel Toppin bankruptcy on May 10, 2018 as evidenced by Defendant's Trial exhibit, "Service Event Report" entered by Sgt. J.

Taylor on May 10, 2018 admitted into evidence at trial as C-4. Further, the Defendant's internal records identified as "Sheriff's Return of Service" marked (P-35) indicate that a bankruptcy was filed in the Sheriff's office on May 9, 2018.

Furthermore, Captain Sean Thornton testified that a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin admitted into evidence at trial as C-2 was transmitted to 215-686-3971 which he identified as the fax number for the Real Estate Division of the Office of the Sheriff. Tr. Trans. at 169:13 - 170:5. Notwithstanding, that does not stop the Sheriff from displaying remarkable ineptitude in taking the strained, if not disingenuous position that those Notice(s) do not count because the Sheriff's Office has several departments and therefore deserves additional notice.

A similar argument demanding more notice was advanced by the defendant, United Student Aid Funds, Inc. in Espinosa v. United Student Aid Funds, Inc., 553 F. 3d 1193 - Court of Appeals, 9th Circuit 2008 and the Ninth Circuit harshly rejected the Funds' arguments stating: "The Funds are not "destitute widows and orphans, or people who don't speak English or can't afford a lawyer." Espinosa, 553 F.3d at 1201. The Ninth Circuit explained that "notice of how the Chapter 13 plan affects creditors' rights is all that the Constitution, the Bankruptcy Code and the Bankruptcy Rules require to bind creditors to the provisions of the confirmed plan. "Espinosa, 553 F.3d at 1202 (citations omitted).

The Supreme Court addressed how much notice and due process is enough to constitute notice under the U.S. Constitution and the Bankruptcy Code in United Student Aid Funds, Inc. v. Espinosa, 559 US 260 - Supreme Court 2010, 130 S.Ct. 1367 (2010). The Supreme Court has held that constitutionally "adequate notice" is a low barrier to meet in that all that is required is

that "notice [be] reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1202 (9th Cir. 2008), cert. granted, 2009 WL 646192 (U.S. 2009)(quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

There is conclusive evidence that notice was received by the Sheriff's office on May 8, 2018 in the Sheriff's Response(s) to Requests for Admission, which were admitted into evidence at trial as P-23. There are multiple trial exhibits that support this fact - "Service Event Report" marked C-4; "Sheriff's Return of Service" marked (P-35); "Notice of Bankruptcy Case Filing" on behalf of Lyndel Toppin marked C-2; along with Captain Sean Thornton's testimony on Exhibit C-2 identifying the fax number for the Real Estate Division. Tr. Trans. at 169:13 - 170:5.

Therefore, the Sheriff's actual notice of the debtor's bankruptcy filing more than satisfied its due process rights and its persistent contumacy is no excuse for violating this Court's order which automatically became effective on May 8, 2018 when Lyndel Toppin petitioned this Court for relief under Chapter 13 of the Bankruptcy Code.

Defendants own policies and procedures admitted at trial, (P-16, C-26) in relevant portion states:

A. Bankruptcy.
  1. When received by the Sheriff's Office, all legal action is to stop. Details, numbers and other particulars are to be recorded in division docket and on writ. If there is any question as to the validity, postpone any action. Must check with attorney on writ for Bar Order.

Indeed, the Court clarified the term "Sheriff's office" in the Sheriff's bankruptcy policy sua sponte by questioning the witness, Lt. Thornton:

**THE COURT:** Do you agree, Mr. Thornton, it doesn't say which department. It says when received by the Sheriff's office.

A.        That is correct.  Tr. Trans. at 132:22 - 132:25.

Defendant is now attempting to avoid liability and negate notice, by inserting a departmentalization requirement for the notice, not found in the statute, in case law, and certainly not in Sheriff's own policies and procedures. Even without viewing all reasonable inferences in light most favorable to Plaintiff which the Court must do, Plaintiff easily meets the burden.

## II.    SHERIFF'S VIOLATION(S) OF THE AUTOMATIC STAY

A violation of the automatic stay is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case. *Laboy v. Doral Mortg. Corp. (In re Laboy),* 647 F.3d 367, 374 (1st Cir. 2011) (*quoting In re McMullen,* 386 F.3d 320, 330 (1st Cir. 2004). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act which violates the stay. *Fleet Mortg. Grp. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999).

It is well known that the automatic stay is designed to stop pending debt collection activity and litigation and is considered one of the fundamental protections afforded by the Bankruptcy Code. E.g., *In re Billings*, 544 B.R. 529, 533 (Bankr. E.D. Pa. 2016) (citing *H & H Beverage Distributors v. Dep't of Revenue of Com. of Pa., 850 F.2d 165, 166 (3d Cir. 1988)*), aff'd, 687 Fed.Appx. 163, 2017 WL 1488657 (3d Cir. Apr. 26, 2017) (nonprecedential).

Sheriff's actions in continuing with the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor by visiting his personal residence; posting his property; inserting notices in his mailbox; and mailing Notices to Vacate and Eviction Notices all constitute individual and separate violations of the automatic stay under § 362(k). Nothing is more threatening to a debtor than the strong arm of the state engaging in unlawful enforcement. The Sheriff engaged in unlawful employment of process specifically prohibited by the automatic stay and its own Sheriff's bankruptcy policy.

Captain Sean Thornton testified that the Sheriff's policy admitted into evidence at trial as C-26 is to stop action in connection with any type of enforcement, including the deliverance of any writs, service of any notices to vacate properties when the Sheriff is given notice that a debtor filed bankruptcy. Tr. Trans. at 126:9 - 126:21. Indeed, this bankruptcy policy to stop unlawful enforcement during the pendency of a bankruptcy case has been in effect at the Sheriff's office since May 12, 1988. Tr. Trans. at 127:20. Cpt. Thornton testified that "The purpose of this directive is to establish a policy of receiving, recording, and handling of stay order, bankruptcy petitions, and appeals when received by the sheriff's office." Tr. Trans. at 130:5 - 130:8.

Cpt. Thornton testified that when notice is received by the sheriff's office all legal action is to stop. Tr. Trans. at 130:13 - 130:14. Notice of Bankruptcy is effective on the same day it is received by the Sheriff's office as set forth by the Sheriff's bankruptcy policy and confirmed by Cpt. Thornton. All legal action is to stop when bankruptcy notice is received by Sheriff's office. Tr. Trans. at 130:13 - 130:14.

It's important to highlight the term "Sheriff's office" in the Sheriff's bankruptcy policy as the defendant is attempting to evade notice of the bankruptcy in this case as well as shirk responsibility for its actions in violating the automatic stay by suggesting to the court that a specific department or sub-division of the Sheriff's office must be notified in order for the bankruptcy notice to be effective.

Plaintiff has shown that actions of Office of the Sheriff were willful in that it engaged in above cited acts forbidden by 11 U.S.C. § 362(a), with full knowledge of BK, in contravention of not only the BK code section cited, but also in infringement of its own policy and procedure.

The Sheriff's bankruptcy policy was violated on May 8, 2018 as the Sheriff acknowledged receiving actual notice of Lyndel Toppin's bankruptcy filing on May 8, 2018. See Def.'s Memo at pg. 10, ¶1.

Barrington Whyte testified that Lyndel Toppin brought all ("6") six Notices to Vacate and Eviction Notice inside the house. Tr. Trans. at 93:14 - 93:20. Mr. Whyte also testified to inserting a date notation on each document received from the Sheriff's Office in order to remember the date that each notice was delivered. Tr. Trans. at 76:20 - 76:24. Mr. Whyte testified that he inserted the May 18, 2018 date on the Sheriff's Notice to Vacate marked as C-14; the May 24, 2018 date on the Sheriff's Notice to Vacate marked as C-15; the May 30, 2018 date on the Sheriff's Notice to Vacate marked as C-16; the June 1, 2018 date on the Sheriff's Eviction Notice marked as C-17; the June 5, 2018 date on the Sheriff's Eviction Notice marked as C-18 which was erroneously described by the transcriber as a Notice to Vacate; the June 7, 2018 date on the Sheriff's Eviction Notice marked as C-19 which was erroneously described by the transcriber as a Notice to Vacate. Tr. Trans. at 73:20 - 73:23; 78:25 - 79:21; 85:23 - 86:2; 88:4 - 88:14; 90:1 - 90:13; 91:19 - 92:8.

The aforementioned six ("6") notices received by Lyndel Toppin are in line with the Sheriff's practice as explained by Cpt. Thornton whereby a deputy will go to the subject property and hand deliver notice to the occupant and if the occupant does not answer the door, they will post it on the property; leave it in the mail slot; and mail a notice in the United States Postal Mail addressed to the recipient. Tr. Trans. at 210:18 - 211:5; 211:14 -211:17.

The Court sua sponte asked Cpt. Thornton for clarification on the number of notices served upon an occupant:

**THE COURT:** Oh, so let me — that's three documents that are left on each occasion?

A.    But it's the same document, Your Honor.

**THE COURT:** Documents are left at the property and one's mailed out?

A.    That is correct, yeah.

Tr. Trans. at 206:21 - 207:6.

Sergeant Taylor testified that she personally served the red Notice to Vacate on May 10, 2018 and posted it on the property by taping it to the door. Tr. Trans. at 221:20 - 221:23; 239:5 - 239:6; 241:2. Sgt. Taylor further testified to serving the Notice to Vacate on May 10, 2018 marked as C-14 along with the Eviction Notice on June 1, 2018 marked as C-17. Tr. Trans. at 221:20 - 221:23; 237:6 - 237:10.

Sheriff had knowledge of the existence of the Lyndel Toppin bankruptcy case on May 8, 2018. Knowledge of the existence of the bankruptcy case is "treated as knowledge of the automatic stay." In re Theokary, 444 B.R. 306, 322 (Bankr. E.D. Pa. 2011). In this case, there is no dispute that the Sheriff engaged in unlawful process post-petition and Sheriff's acts were carried out with intent.

### III. LYNDEL TOPPIN'S ACTUAL DAMAGES

Plaintiff Lyndel Toppin has a mental disability in that he is both deaf and mute and unable to communicate to the court the extent of his emotional; physical; and psychological distress that he has experienced at the hands of the Sheriff's office in connection with its unlawful enforcement of the Writ, attempting to seize his home.

Barrington Whyte was Appointed Next Friend on July 10, 2018 permitting Barrington to testify on behalf of Uncle, Lyndel. Barrington has lived with Lyndel most of his adult life. Barrington is very familiar with Lyndel's habits, mannerisms and his idiosyncrasies. Defendant's argument in the area of damages really comes down to a challenge to this Orde, and the notion that Barrington Whyte a friend of Court by Order of this Court. Since this issue has already been decided, such challenge is now barred by doctrine of res judicata and collateral estoppel.

Barrington testified that Lyndel brought all ("6") six Notices to Vacate and Eviction Notices inside the house. Tr. Trans. at 93:14 - 93:20. Barrington testified that he personally observed Lyndel picking up these notices a couple of times and looking at Barrington to give him an answer. Tr. Trans. at 96:13 - 96:19. Barrington testified that Lyndel 'directly pointed out to Barrington' the "big bold red letters and the little shield" on the Notices to Vacate and Eviction Notices. Tr. Trans. at 97:19- 97:20.

Barrington testified that Lyndel would "pick up the papers" and look at him "to give a good response to him" and because Barrington was unable to do so he described Lyndel as "been off." Tr. Trans. at 95:19- 95:24. Barrington testified that the Sheriff's notices caused Lyndel to be 'distorted,' and he knows this to be true based upon "living with him for so long." Tr. Trans. at 95:16- 95:18.

As his only caretaker, Barrington personally observed that Lyndel "not basically eating dinners that I serve for him. Tr. Trans. at 96:1- 96:2. Barrington observed that Lyndel "smoking cigarettes more a lot." Tr. Trans. at 95:25- 96:1. Barrington specifically stated that Lyndel hasn't been eating; smoking more cigarettes; missing sleep; pacing in his bedroom at 2.00 AM, 3.00 AM in the morning and generally "He's, like, kind of out of it." Tr. Trans. at 97:6- 97:13.

On the day of the trial, Barrington testified that the stress of these events has still affected his Uncle Lyndel in that "He's still not eating; on schedule as we usually do; he's still smoking a lot; and he's sitting around in the living room with the T.V. off." Tr. Trans. at 97:24- 98:3.

Plaintiff has demonstrated that the Sheriff's conduct has caused actual damages that are still lingering today through the first-hand personal observations of the Appointed Next Friend, Barrington Whyte.

## C. CONCLUSION

The Court should deny the Sheriff of the City of Philadelphia's motion for judgment on partial findings because all material issues of fact are supported by evidence sufficient for Lyndel Toppin to prevail. There is conclusive evidence that notice was received by the Sheriff's office on May 8, 2018 in the Sheriff's Response(s) to Requests for Admission which were admitted into evidence at trial as P-23. There are multiple trial exhibits that support this fact - "Service Event Report" marked C-4; "Sheriff's Return of Service" marked (P-35); "Notice of Bankruptcy Case Filing" on behalf of Lyndel Toppin marked C-2; along with Captain Sean Thornton's testimony on Exhibit C-2 identifying the fax number for the Real Estate Division. Tr. Trans. at 169:13 - 170:5.

Sergeant Taylor testified that she personally served the red Notice to Vacate on May 10, 2018 and posted it on the property by taping it to the door. Tr. Trans. at 221:20 - 221:23; 239:5 -

239:6; 241:2. Sgt. Taylor further testified to serving the Notice to Vacate on May 10, 2018 marked as C-14 along with the Eviction Notice on June 1, 2018 marked as C-17.  Tr. Trans. at 221:20 - 221:23; 237:6 - 237:10.

Barrington Whyte testified that Lyndel Toppin brought all ("6") six Notices to Vacate and Eviction Notice inside the house.  Tr. Trans. at 93:14 - 93:20. Mr. Whyte also testified to inserting a date notation on each document received from the Sheriff's Office in order to remember the date that each notice was delivered.  Tr. Trans. at 76:20 - 76:24.

Plaintiff has demonstrated that the Sheriff's conduct has caused actual damages that are still lingering today through the first-hand personal observations of the Appointed Next Friend, Barrington Whyte.

For these reasons, Lyndel Toppin asks the Court to deny the City of Philadelphia's motion for judgment on partial findings.

Respectfully submitted,

Dated:  October 29th, 2020

BY: /s/ *Predrag Filipovic*
Predrag Filipovic, Esquire
1735 Market St., Suite 3750
Philadelphia, PA 19103
267-265-0520 Phone
Attorney for Plaintiff

BY: /s/ *Stephen M. Dunne*
Stephen M. Dunne, Esquire
1515 Market Street, Suite. 1200
Philadelphia, PA 19102
(215) 551-7109 Phone
Attorney for Plaintiff