**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Lyndel Toppin, | : | |
| Debtor. | : | Bankruptcy No.   18-13098-MDC |

| | | |
|---|---|---|
| Lyndel Toppin, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 18-00137-MDC |
| Jewell Williams, Sheriff of the City of Philadelphia | : | |
| and Abdeldayem Hassan aka Abdeldyem Hassan, | : | |
| Defendants. | : | |

# MEMORANDUM

## I.    INTRODUCTION

Lyndel Toppin (the "Debtor") filed a chapter 13 bankruptcy petition on May 8, 2018, and approximately one month later, on June 11, 2018, initiated this adversary proceeding (the "Adversary Proceeding") by filing a Complaint[1]  against Jewell Williams, in his capacity as Sheriff of the City of Philadelphia (the "Sheriff's Office," and together with the Debtor, the "Parties").    The Complaint alleges that the Sheriff's Office violated the automatic stay imposed by §362 of the Bankruptcy Code, 11 U.S.C. §§101, *et seq.*, by taking certain post-petition actions to enforce a writ of possession obtained by Abdeldayem Hassan ("Mr. Hassan") with respect to the Debtor's home, which Mr. Hassan acquired at a tax foreclosure sale.[2]    The Court held a trial

---

[1]  Adv. Pro. Docket No. 1.

[2]  The Debtor subsequently filed an Amended Complaint that added Mr. Hassan as a named defendant, *see* Adv. Pro. Docket No. 3, but later moved to dismiss all claims against Mr. Hassan, *see* Adv. Pro. Docket No. 142.   That motion was granted on the record at the trial in this matter on August 21, 2020. *See* N.T. 33:7 to 33:12.

("Trial") on August 21, 2020.    Pending before the Court for decision are (i) the motion for

summary judgment (the "Summary Judgment Motion")[3]  filed by the Sheriff's Office, (ii) the

motion for a directed verdict (the "Directed Verdict Motion")[4]  filed by the Sheriff's Office, and

(iii) the Debtor's request for relief under §362(k) of the Bankruptcy Code.    For the reasons

discussed herein, the Court will (i) grant the Summary Judgment Motion in part and deny it in

part, (ii) grant the Directed Verdict Motion, and (iii) deny the Debtor's request for damages

under §362(k).

## II.    RELEVANT FACTUAL BACKGROUND[5]

The Debtor resides at 146 S. 62nd Street in Philadelphia (the "Property").    The Debtor is

both deaf and mute, and lives at the Property with his nephew, Barrington Whyte ("Mr. Whyte").

On October 5, 2017, the Property was sold at a sheriff's sale for delinquent taxes.[6]    Mr. Hassan

was the winning bidder at the sheriff's sale.    In January 2018, Mr. Hassan filed a complaint in

ejectment in the Court of Common Pleas of Philadelphia (the "CCP Court") against "unknown

occupants" of the Property.    Mr. Hassan then obtained a judgment by default against "unknown

occupants," entered on April 5, 2018, for possession of the Property.    On May 7, 2018, Mr.

Hassan procured a writ of possession from the CCP Court against "unknown occupants" of the

---

[3] Adv. Pro. Docket No. 71.

[4] Adv. Pro. Docket No. 157.

[5] The factual background described herein is taken from the admitted allegations of the Second Amended
Complaint, *see* Adv. Pro Docket No. 29, the admitted factual allegations set forth in the memorandum of
law the Sheriff's Office submitted in support of the Summary Judgment Motion (the "Summary Judgment
Supporting Brief"), *see* Adv. Pro. Docket No. 72, the stipulated facts read into the record at Trial, and the
evidence adduced at Trial.

[6] The tax collection proceeding was filed against Stanley Zalkin and Eleanor Zalkin as the record owners
of the Property.

Property.    The following day, on May 8, 2018, the Debtor filed his chapter 13 bankruptcy petition (the "Petition").

The Real Estate Unit of the Sheriff's Office received notice of the Petition on May 8, 2018.[7]    On May 10, 2018, Jetaria Taylor ("Officer Taylor"), then an officer with the Civil Enforcement Unit of the Sheriff's Office, went to the Property to serve a Notice to Vacate, giving the occupants of the Property 21 days to vacate the Property before an eviction notice would be issued.    After knocking on the door of the Property and receiving no response, Officer Taylor taped the Notice to Vacate on the front door and left another copy either in the mail slot or inside the front door.    Another copy of the Notice to Vacate was mailed to the Property.

Officer Taylor returned to the Property on June 1, 2018, to serve an Eviction Notice ordering the occupants of the Property to vacate it by June 25, 2018.    After knocking on the door of the Property and receiving no response, Officer Taylor again taped the Eviction Notice on the front door and left another copy either in the mail slot or inside the front door.    Another copy of the Eviction Notice was mailed to the Property.

On June 7, 2018, the Civil Enforcement Unit of the Sheriff's Office received a fax from the Debtor's counsel attaching a Notice of Bankruptcy with respect to the Debtor's case. Thereafter, the Civil Enforcement Unit ceased all efforts to enforce the CCP Court's writ of possession.

---

[7] At the Trial, a fax cover sheet from the Debtor's counsel, attaching notice of the Petition (the "Notice of Bankruptcy"), was admitted into evidence.    That cover sheet reflects that the Notice of Bankruptcy was sent to the fax number for the Real Estate Unit.    Both the fax cover sheet and the Notice of Bankruptcy note the Debtor's name as well as the address of the Property.    A fax attaching the Notice of Bankruptcy was also transmitted to a fax number for the Civil Enforcement Unit of the Sheriff's Office on May 8, 2018, although the Court was not provided with documentary evidence or testimony confirming that it was in fact received.

## III.        RELEVANT PROCEDURAL BACKGROUND

### A.        The Second Amended Complaint

As noted *supra*, on June 11, 2018, the Debtor filed the Complaint against the Sheriff's

Office, alleging that the post-petition service of the Notice to Vacate and Eviction Notice

violated the automatic stay imposed by §362 of the Bankruptcy Code.[8]    The Debtor sought

actual damages, attorneys' fees and expenses, emotional distress damages, and punitive

damages.    On November 21, 2018, the Sheriff's Office answered the Second Amended

Complaint.[9]

### B.        The Summary Judgment Motion

On December 26, 2019, the Sheriff's Office filed the Summary Judgment Motion.    The

Sheriff's Office argues that summary judgment in its favor is appropriate because: (i) the

Sheriff's Office is entitled to quasi-judicial immunity for conduct in execution of an order of

court (the "Quasi-Judicial Immunity Argument"); and (ii) executing the writ of possession issued

by the CCP Court was a ministerial act that is not subject to the Bankruptcy Code's automatic

stay (the "Ministerial Act Argument").    The Sheriff's Office further argues that to the extent the

Court denies summary judgment on both of these grounds, partial summary judgment is

warranted with respect to damages because (i) emotional distress damages cannot be awarded

against the Sheriff's Office pursuant to §106(a)(3) of the Bankruptcy Code and the Pennsylvania

Political Subdivision Tort Claims Act, 42 Pa. C. S. A. §8541, *et seq.* (the "Tort Claims Act"), nor

do the alleged acts by the Sheriff's Office warrant emotional distress damages (the "Emotional

---

[8] The Complaint has been amended twice, *see* Adv. Pro. Docket Nos. 3, 29.    As such, the Second Amended Complaint is the operative pleading.

[9] Adv. Pro. Docket No. 37.

Distress Damages Argument"), and (ii) punitive damages are not available against the Sheriff's

Office pursuant to §106(a)(3) of the Bankruptcy Code.

On February 5, 2020, the Debtor filed a response to the Summary Judgment Motion (the

"Summary Judgment Response"),[10]  arguing that (i) the actions by the Sheriff's Office are

subject to the automatic stay; (ii) the Sheriff's Office does not enjoy sovereign immunity with

respect to acts that are in violation of the automatic stay; (iii) the actions by the Sheriff's Office

caused compensable emotional distress damages to the Debtor; and (iv) summary judgment

should be denied with respect to whether punitive damages are warranted because genuine issues

of material fact exist.    On February 14, 2020, the Sheriff's Office filed a reply (the "Summary

Judgment Reply Brief") to the Debtor's Summary Judgment Response,[11]  responding that (i) the

Debtor seeks to hold the Sheriff's Office accountable for Mr. Hassan's failure to notify it of the

Petition in order to halt any enforcement actions; (ii) the Sheriff's Office's arguments related to

quasi-judicial immunity and the ministerial acts exception are not grounded in sovereign

immunity; (iii) the Tort Claims Act precludes the recovery of emotional distress damages against

a governmental unit; and (iv) the plain language of §106(a)(3) provides that a court cannot award

punitive damages against a governmental unit.

On February 18, 2020, the Court held a hearing on the Summary Judgment Motion (the

"Summary Judgment Hearing").    At the Summary Judgment Hearing, the Debtor withdrew his

request for punitive damages,[12]  and therefore on February 20, 2020, the Court entered an

---

[10]  Adv. Pro. Docket No. 105.

[11]  Adv. Pro. Docket No. 112.

[12]  Summary Judgment Hearing Audio Recording, at 3:22 p.m. (ET).

Order[13] granting the Summary Judgment Motion in part, finding that the Debtor is not entitled

to recover punitive damages.    The Court held the rest of the issues raised by the Summary

Judgment Motion in suspension, pending the receipt of supplemental briefing (each, a

"Supplemental Brief") from the Parties on the issue of whether, by ratifying the United States

Constitution and the Bankruptcy Clause contained therein, the States agreed to waive their

sovereign immunity with respect to claims for violation of the automatic stay for enforcement of

a writ of possession (the "Sovereign Immunity Issue").    On April 6, 2020, the Sheriff's Office

submitted a Supplemental Brief arguing that, in enforcing the CCP Court's writ of possession, it

was acting as an arm of the Pennsylvania judiciary, and therefore is entitled to the protection of

sovereign immunity.    The Sheriff's Office argues that it was not acting as a creditor nor on

behalf of a government creditor, and therefore an action asserting violation of the automatic stay

does not effectuate this Court's *in rem* jurisdiction as required to find a waiver of sovereign

immunity under *Central Va. Community College v. Katz*, 546 U.S. 356, 126 S. Ct. 990, 163 L.

Ed. 2d 945 (2006).    The Debtor, by contrast, argues that a proceeding to enforce the automatic

stay is an exercise of the bankruptcy court's *in rem* jurisdiction, and therefore sovereign

immunity with respect to such a proceeding has been waived under *Katz*.

## C.    The Trial

On August 21, 2020, the Court held the Trial in this Adversary Proceeding.    At the

outset of the Trial the Court advised the Parties that it would hold the Summary Judgment

Motion in abeyance and would proceed with Trial, but in resolving the dispute would still rule on

the Summary Judgment Motion first as a threshold matter.

---

[13] Adv. Pro. Docket No. 115.

The Debtor called three witnesses for its case in chief: (i) Mr. Whyte, (ii) Captain Sean Thorton ("Captain Thornton"), a captain in the Civil Enforcement Unit, and (iii) Officer Taylor. During the course of the testimony, the Debtor also submitted certain documents into evidence.

Mr. Whyte testified that he found three copies each of the Notice to Vacate and the Eviction Notice in the residence at the Property and testified to the various dates in May and June 2018 that each were received.    On direct examination Mr. Whyte testified that the Debtor brought each of the notices received into the house at the Property, but on cross-examination admitted that the first Notice to Vacate was posted on the door and Mr. Whyte took it into the house.    Mr. Whyte also testified regarding his observations as to the effect that receiving these notices had on the Debtor's behavior, including reduced appetite, activity, and sleep.    On cross-examination, however, Mr. Whyte admitted that the Debtor did not understand exactly what the notices were.

Captain Thornton testified that he is the commander of the Civil Enforcement Unit and detailed the other units of the Sheriff's Office.    Captain Thornton testified that, per internal Sheriff's Office policy, when a notice of bankruptcy filing is received by the Sheriff's Office, all enforcement action of any type is to cease.    Captain Thornton testified that a notice of the Debtor's bankruptcy was transmitted to a fax number for the Real Estate Unit of the Sheriff's Office on May 8, 2018.    Captain Thornton provided some limited testimony about a document titled Return of Service from the Real Estate Unit that included a reference on May 9, 2018, to the Debtor's bankruptcy.    That document was not admitted into evidence, however.    Captain Thornton also testified that Officer Taylor went to the Property two times and described the Sheriff's Office's process for serving notices to vacate and eviction notices at a property.

7

According to Captain Thornton, if the Civil Enforcement Unit can hand deliver a notice to the occupants of a property, that is done.    If no occupants are present to allow hand delivery of the notice, the Civil Enforcement Unit will post a notice on the door of the property and leave another notice in the mail slot, with a third to follow by mail.    Captain Thornton testified that he had no reason to believe that Officer Taylor did not follow this procedure.

Officer Taylor also testified regarding the Civil Enforcement Unit's procedure for serving notices to vacate and eviction notices, consistent with Captain Thornton's testimony.    Officer Taylor testified that she was in plain clothes and drove her own vehicle when in the field but was armed with a handgun.    Officer Taylor testified that she would have posted the Notice to Vacate to the door of the Property and left one in the mailbox or inside the door, with the third sent via mail.    Officer Taylor further testified that after visiting the Property on May 10, 2018, she entered notes in the Sheriff's Office's internal "Jewel System" reflecting that she served the Notice to Vacate on that date.    Officer Taylor also testified that she returned to the Property on June 1, 2018, to serve the Eviction Notice, consistent with the process described for serving the Notice to Vacate.

At the close of the Debtor's case-in-chief, the Sheriff's Office advised the Court that, rather than calling any rebuttal witnesses, it would be moving for a directed verdict.[14]  The Court therefore directed the Sheriff's Office to file an appropriate motion after obtaining a transcript of the Trial.

---

[14]  At Trial the Sheriff's Office cited F.R.B.P. 7041(b) as the basis for it moving for a directed verdict. N.T. 253:2 to 253:19. The Directed Verdict Motion, however, correctly cites to F.R.B.P. 7052.

### D.    The Directed Verdict Motion

On October 8, 2020, the Sheriff's Office filed the Directed Verdict Motion and a brief in

support (the "Directed Verdict Supporting Brief"), without waiving its arguments in support of

summary judgment.[15]    The Sheriff's Office makes two arguments in support of a directed

verdict in its favor.    First, the Sheriff's Office argues that the Debtor's case against it is

"fundamentally flawed" because (i) the evidence at Trial established that the Sheriff's Office was

not acting as a creditor or the agent of a creditor, but instead was acting as an arm of the CCP

Court in enforcing a facially valid writ of possession, and there was no evidence that

enforcement was beyond the scope of the mandate contained therein; and (ii) the Debtor

presented no evidence that Mr. Hassan was given notice of the Petition or that Mr. Hassan took

any action to stop enforcement of the writ of possession, despite the burden being on the creditor

to notify third-parties that the automatic stay is in place and efforts in furtherance of execution or

enforcement must cease.    Second, the Sheriff's Office argues that the Debtor has not proven a

willful violation of the automatic stay.    The Sheriff's Office argues that the Debtor failed to

even establish when notice of the Petition was provided to the Sheriff's Office.    The Sheriff's

Office acknowledges the evidence produced at Trial establishes that the Real Estate Unit

received notice on May 8, 2018, and that the Civil Enforcement Unit received notice on June 7,

2018.    The Sheriff's Office argues, however, that notice to one unit of the Sheriff's Office does

not serve to effectuate notice to all other units.    The Sheriff's Office further argues that even if

the Court were to find that notice was provided on May 8, 2018, the Debtor did not establish any

actual damages from any stay violation that may have occurred after that date.    Rather, the

---

[15]  Adv. Pro. Docket Nos. 157, 158.

Sheriff's Office argues, Mr. Whyte's testimony at Trial on the Debtor's alleged damages was

unconvincing and unreliable because it lacked sufficient context, detail, and temporal perspective

to establish a causal link to the Sheriff's actions.

On October 29, 2020, the Debtor filed a response in opposition to the Directed Verdict

Motion (the "Directed Verdict Opposition Brief").[16]    The Debtor argues that various exhibits

admitted into evidence at the Trial, as well as certain testimony, establish that the Sheriff's

Office received adequate notice of the Petition on May 8, 2018, and the Sheriff's Office's own

internal policy mandated that enforcement of the writ terminate upon receiving such notice.

The Debtor further argues that the Sheriff's Office's willful violation of the automatic stay was

established by the evidence at Trial that Officer Taylor served the Notices to Vacate, and the

Eviction Notices after the Sheriff's Office had notice of the Petition.    Finally, the Debtor argues

that Mr. Whyte's testimony as to the effect of those notices on the Debtor sufficiently established

actual damages.

On November 10, 2020, the Court held a hearing on the Directed Verdict Motion, after

which it took the matter under advisement.

## IV.    DISCUSSION

### A.    Motion for Summary Judgment

#### 1.    Standard for Summary Judgment

The standard for evaluating a motion for summary judgment is well-established:

> Summary judgment is appropriate only when, drawing all reasonable
> inferences in favor of the nonmoving party, there is no genuine issue as to
> any material fact and the moving party is entitled to judgment as a matter
> of law. *E.g., Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir.

---

[16] Adv. Pro. Docket No. 161.

> 2011); *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). In other words, summary judgment may be entered if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).
>
> In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248. In evaluating the record, the court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013); *United States v. 717 South Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993). On the other hand, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court should enter judgment in that party's favor. *Anderson*, 477 U.S. at 252.

*Fraction v. Jacklily, LLC (In re Fraction)*, 622 B.R. 642, 646-647 (Bankr. E.D. Pa. 2020).

When the non-moving party bears the burden at trial and the movant meets its burden of directing the court to items demonstrating the absence of a genuine issue of fact, the non-moving party must produce evidence sufficient to create a genuine issue.   *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 435 (E.D. Pa. 2004).   A plaintiff cannot simply rest on the allegations in its pleadings, but rather must present evidence from which a fact-finder could find in its favor. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 251 n.2 (3d Cir. 2010).   That is, to survive summary judgment, the nonmovant must "do more than simply show there is some metaphysical doubt as to the material facts."   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

As noted *supra*, the Court has already granted the Sheriff's Office partial summary judgment with respect to the issue of punitive damages upon the Debtor withdrawing his requested relief on that issue, leaving the three remaining purported grounds for summary

11

judgment to be resolved: (i) the Quasi-Judicial Immunity Argument; (ii) the Ministerial Act

Argument; and (iii) the Emotional Distress Damages Argument.

### 2.    The Sheriff's Office is Not Entitled to Quasi-Judicial Immunity

The Sheriff's Office argues that it cannot be held liable for violation of the stay because it

is entitled to quasi-judicial immunity, which it asserts extends absolute immunity to persons

executing valid court orders from civil actions for damages challenging conduct authorized by

the order.    Summary Judgment Supporting Brief, at 7 (*citing Coverdell v. The Department of

Social and Health Services, State of Washington*, 834 F.2d 758, 764-765 (9th Cir. 1987) and

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 772-73 (3d Cir. 2000)).

The Sheriff's Office points to its purported lack of discretion in enforcing the CCP

Court's writ of possession: "The application of quasi-judicial immunity to any public official

acting pursuant to court directive is based on a well-grounded principle that those who are

required to follow the instructions of a court have no discretion but to obey the order and

mandate of the court.    Thus, the Sheriff, in executing the writ against unknown occupants at the

Property, was performing a ministerial function, without discretion, at the direction of the judge

and is entitled to immunity."    Summary Judgment Supporting Brief, at 7-8.    The Sheriff's

Office asserts that its actions in serving the Notice to Vacate, and Eviction Notice were

enforcement actions within the scope of the writ of possession, and there is no allegation that the

Sheriff's Office took enforcement action beyond the scope of the writ.

The Sheriff's Office is correct that the doctrine of quasi-judicial immunity applies where

the function performed serves the judicial process but the individual performing it lacks

discretion in doing so.    Absolute quasi-judicial immunity is distinct from absolute judicial

immunity in that it does not derive from the discretionary nature of an official's actions; rather, it derives from the official's *lack* of discretion.   *Latour v. McCullar*, 2016 U.S. Dist. LEXIS 96961, at *36 (W.D. Pa. July 26, 2016) (*quoting Coopshaw v. Figurski*, 2008 U.S. Dist. LEXIS 8530, at *10-11 (E.D. Mich. Feb. 6, 2008)).   As such, quasi-judicial immunity "applies only where officials perform a ministerial task at the specific direction of a judge."   *Rucinski v. U.S.*, 1995 U.S. Dist. LEXIS 2700, at *8 (N.D. Ill. Mar. 2, 1995) (citing cases).   It extends only to suits challenging conduct prescribed by the court order, and officials are not immune from *the manner* in which they carry out otherwise proper court orders.   *Id.* at n.2.

The Court, however, is not convinced that the Sheriff's Office lacked all discretion in enforcing the writ of possession.   Rather, the Sheriff's Office acknowledges[17]  that it ceased all enforcement action upon the Civil Enforcement Unit's receipt of notice of the Petition on June 7, 2018, evidencing that it was not without discretion to cease enforcement actions in the event of a bankruptcy filing.   In fact, the Sheriff's Office's own internal policy mandates that upon receiving notice of a bankruptcy, "all legal action is to stop."[18]   This policy embodies the discretion that the Sheriff's Office had and exercised in ceasing enforcement upon the Civil Enforcement Unit receiving notice of the Petition.   The writ did not direct the Sheriff's Office to cease enforcement upon receiving notice of a bankruptcy; the Sheriff's Office made that determination, consistent with its own policy and as required by the Bankruptcy Code.   This independent exercise of discretion, rooted in deference to the automatic stay imposed upon the filing of a bankruptcy petition, is inconsistent with the picture the Sheriff's Office attempts to

---

[17] See Summary Judgment Supporting Brief, at ¶¶23 to 25.

[18] Exhibit C-26.

paint of a judicial officer mechanically enforcing the terms of a facially valid court order.[19]

The Sheriff's Office exercised its discretion to cease enforcement, without the CCP Court first

authorizing or directing it to do so.   The Sheriff's Office is therefore not entitled to the

protection of quasi-judicial immunity.

### 3.      Enforcement of the Writ Was Not a Ministerial Act

The Sheriff's Office argues that its post-petition actions to enforce the CCP Court's writ

of possession were merely ministerial and not subject to the automatic stay.   The Sheriff's

Office asserts that an act is ministerial where the law compels it and argues that its post-petition

acts to enforce the CCP Court's writ of possession was mandated by Pennsylvania statutory law

and a number of provisions of the Pennsylvania Rules of Civil Procedure using the term "shall"

to dictate what action is required at particular stages of the ejectment and possession process.

The Sheriff's Office points to 42 Pa. C. S. A. §2921, titled "Powers and duties of the

sheriff," providing that "The sheriff, either personally or by deputy, shall serve process and

execute orders directed to him pursuant to law."   While the Sheriff's Office appears to advance

the view that this as an unqualified directive to serve process and execute orders directed to it,

the very language of the statute itself belies this position.   It *requires* that the Sheriff's Office do

---

[19] The Debtor's claim against the Sheriff's Office for violation of the bankruptcy stay is not about *how* the writ of possession was enforced, but rather that it was enforced after the Petition was filed.   The cases the Sheriff's Office cites in its Summary Judgment Supporting Brief finding sheriffs protected by quasi-judicial immunity are distinguishable from the issue presented in this case.   *See* Summary Judgment Supporting Brief, at 8-9.   Those cases found the doctrine applicable because the sheriffs or sheriff's deputies in those cases were acting in accordance with a facially valid court order.   There is no argument that the CCP Court's writ of possession was not facially valid.   However, the difference here is that after the Debtor's bankruptcy was filed, enforcement of that writ, *notwithstanding its facial validity*, required relief from the automatic stay.   Absent such relief, it could not be enforced.   Therefore, this is not simply a case of the Sheriff's Office enforcing a facially valid court order according to its terms; the crux of the issue is whether enforcement *at all* violated the stay.

so "pursuant to law."    Whatever the law may be in other contexts, in the context of this case, the Sheriff's Office was required to act in accordance with the limitations imposed on all parties by the Bankruptcy Code's automatic stay.    As such, the provision of Pennsylvania statutory law relied upon does not strip all discretion from the Sheriff's Office in executing a writ of possession, and does not make doing so a mere ministerial act.

Furthermore, the mandates in the Pennsylvania Rules of Civil Procedure cited by the Sheriff's Office are not the actions that are at issue here.    Those mandates dictate the process generally for ejectment and possession, providing procedural steps that are necessary in order to execute possession once a judgment is obtained.    *See* Summary Judgment Supporting Brief, at 12 (citing Pa. R.C.P. Nos. 3103, 3105, 3160, and 3161).    The Sheriff's Office has cited to these various rules to argue that they leave the Sheriff's Office with no discretion in fulfilling its obligations with respect to enforcing the writ of possession.    None of the rules cited, however, mandate that the Sheriff's Office "shall" enforce a writ of possession post-petition notwithstanding the imposition of the automatic stay or a similar prohibition to act.[20]    That is the issue to be decided here.    As discussed *supra*, the Sheriff's Office's acknowledgement that enforcement action ceased upon the Civil Enforcement Unit receiving notice of the Petition evidences that it did believe the automatic stay trumped any statutory or rule-based duties it otherwise had to enforce the writ of possession.    The discretion the Sheriff's Office exercised at that point undermines its argument that the post-petition actions it took were mere ministerial acts not subject to the automatic stay.

---

[20]  In fact, to the extent the Pennsylvania Rules of Civil Procedure did so provide, it would be in direct conflict with the Pennsylvania statutory provision cited above requiring that sheriffs execute orders pursuant to law.

The Sheriff's Office relies heavily on *In re Williams*, 371 B.R. 102 (Bankr. E.D. Pa. 2007).    There, the bankruptcy court found that a landlord's post-petition request for an Order of Possession from a state court, based on a prepetition judgment granting it possession of the debtors' leased real property, did not violate the automatic stay.    *Id.* at 111.    In the *Williams* court's view, the procedural rules relating to the Pennsylvania Landlord Tenant Act required that such action be taken and divested the state court from discretion in issuing the Order of Possession: "The rules for enforcing that judgment require that the landlord first file a request for an Order of Possession.    Upon such a request, 'the magisterial judge <u>shall</u> issue the order for possession and <u>shall</u> deliver it for service and execution to the sheriff … The order <u>shall</u> direct the officer executing to deliver actual possession of the real property to the plaintiff.'    In using the word 'shall' the Rule makes the issuance of the Order for possession mandatory, making the issuance and execution of the order a ministerial act rather than judicial function requiring the exercise of discretion.'"    *Id.* at 111 (emphasis in original).    This logic underpins the Sheriff's Office's argument that enforcement of the CCP Court's writ of possession was similarly ministerial.    This Court, however, respectfully disagrees with the *Williams* decision's reasoning. Although the use of the term "shall" may denote lack of discretion in most other contexts, the overlay of the Bankruptcy Code's automatic stay, which brings all enforcement and collection efforts to at least a temporary halt, changes what is or is not compelled, and therefore what may be "ministerial" in nature.    The *Williams* decision used the entry of a judgment on the docket by a prothonotary as an example of a function that case law has long held is a ministerial task. This Court views that type of post-petition action as far different in nature from service of the Notice to Vacate and Eviction Notice at issue here, and the Sheriff's Office's cessation of

16

enforcement efforts after June 7, 2018, suggests that it did not view those acts as ministerial at the time either.   The Court therefore diverges from the *Williams* court's holding with respect to what constitutes a ministerial act and finds that the Sheriff's Office's post-petition actions in enforcing the CCP Court's writ of possession do not qualify as such.

### 4.    The Sheriff's Office is Entitled to Partial Summary Judgment with Respect to Liability for Emotional Distress Damages

The Sheriff's Office argues that partial summary judgment is warranted with respect to the Debtor's request for the award of emotional distress damages because the Debtor is not entitled to them.   The Sheriff's Office first asserts that the Debtor is not entitled to them as a matter of law because sovereign immunity insulates the Sheriff's Office from liability for emotional distress damages.   The Sheriff's Office also argues that the Debtor is not entitled to emotional distress damages as a factual matter because the Debtor did not produce any medical evidence to corroborate or establish a causal connection between the Sheriff's Office's actions and the Debtor's alleged emotional distress.

### a.    Sovereign Immunity Has Been Waived with Respect to Actual Damages, Including Emotional Distress Damages

The Sheriff's Office's argument that emotional distress damages are not permitted as a matter of law is grounded on its position that (a) the term "money recovery" used in §106(a)(3) of the Bankruptcy Code does not include emotional distress damages, such that sovereign immunity is not waived under the Bankruptcy Code with respect to them, and (b) because sovereign immunity is not waived under the Bankruptcy Code, the Court must look to the Tort Claims Act, which the Sheriff's Office asserts provides it with immunity from liability.

Before addressing the first prong of this legal argument, the Court pauses to address the Sheriff's Office's position in its Supplemental Brief that the Eleventh Amendment's sovereign

17

immunity provision protects it as a general matter from liability in this proceeding.   The

Supreme Court's decision in *Central Va. Community College v. Katz*, 546 U.S. 356, 126 S. Ct.

990, 163 L. Ed. 2d 945 (2006) governs whether sovereign immunity has been waived by the

states, as the Sheriff's Office correctly acknowledges in its Supplemental Brief on the Sovereign

Immunity Issue.   *Id.* at 5.   *Katz* held that in ratifying the United States Constitution, the states

waived sovereign immunity for proceedings brought pursuant to "Laws on the subject of

Bankruptcies," including proceedings necessary to effectuate the *in rem* jurisdiction of the

bankruptcy courts.   546 U.S. at 377-378.   A bankruptcy court's *in rem* jurisdiction therefore

extends to states, and a proceeding to enforce the automatic stay "constitutes a 'critical feature'

in the exercise of *in rem* bankruptcy jurisdiction in that it facilitates the exercise of the court's

exclusive jurisdiction over the debtor's property."   *Odom v. Phila. Parking Auth. (In re Odom)*,

574 B.R. 687, 695 (Bankr. E.D. Pa. 2017); *see also Potter v. Newkirk*, 2020 U.S. Dist. LEXIS

194033, at *27 (D.N.J. Oct. 20, 2020) (a claim against a sheriff's office for violation of the

automatic stay was not barred by sovereign immunity because it was at least ancillary to the

bankruptcy court's *in rem* jurisdiction); *In re Schroeder*, 2009 Bankr. LEXIS 3498, at * (Bankr.

D. Neb. Oct. 23, 2009) (under *Katz*, a Nebraska state agency's stay violation "plainly falls within

this court's authority to administer the bankruptcy *res*").

       The Sheriff's Office attempts, however, to side-step the court's *in rem* jurisdiction by

arguing that because it was not acting as a creditor itself or on behalf of a state creditor, there is

no *in rem* jurisdiction over the claims against the Sheriff's Office.   Supplemental Brief, at 6-7.

The Sheriff's Office cites no law so holding, and taken to its logical conclusion, this argument

would hold that any non-creditor party can take action that violates the automatic stay and

impedes this Court's exclusive jurisdiction over the property of the bankruptcy estate, without being subject to the Court's authority to enforce the stay.    The Court rejects the Sheriff's Office's position, and agrees with *Odom's* reasoning that, under *Katz*, states waived their sovereign immunity with respect to proceedings asserting a violation of the automatic stay. This waiver does not hinge on the state actor having a claim against the bankruptcy estate or acting on behalf of a party that does.

Having found that the Sheriff's Office is not insulated as a general matter from liability by Eleventh Amendment sovereign immunity for a stay violation, the Court turns back to the Sheriff's Office's argument that, although §106(a)(3) permits "money recovery" from state actors, it does not contemplate emotional distress damages.    In *Sacred Heart Hosp. v. Dept. of Pub. Welfare (In re Sacred Heart Hosp.)*, 133 F.3d 237 (3d Cir. 1998), the Third Circuit found §106(a) unconstitutional to the extent it purports to abrogate state sovereign immunity in federal court.    *Id.* at 245.    Section 106(a)(3) purports to abrogate state sovereign immunity as to damages, by providing that a bankruptcy court can award a money recovery against the states. *Sacred Heart* remains binding in this circuit, *see In re La Poloma Generating, Co.*, 588 B.R. 695, 727 (Bankr. D. Del. 2018), and therefore the Court finds §106(a)(3) is unconstitutional under *Sacred Heart*.    Whether the states are liable for damages for violation of the automatic stay is determined by reference to the considerations articulated in *Katz*.    In *Newkirk*, the court squarely addressed this issue in determining whether a county prosecutor's office and sheriff's office could be held liable for damages for violation of the automatic stay, or were instead insulated by Eleventh Amendment immunity:

> Like the action to recover money [from] alleged preferential transfers in *Katz*, Plaintiff's action for violation of the automatic stay is a proceeding

19

> ancillary to the discharge of a debtor's debt … The automatic stay is a
> supplement to the Bankruptcy Court's exercise of *in rem* jurisdiction
> because it preserves 'the status quo between the debtor and [his] creditors,
> thereby affording the parties and the Court an opportunity to appropriately
> resolve competing economic interests in an orderly and effective way.
> Put differently, a violation of the automatic stay directly interferes with the
> exercise of exclusive jurisdiction over all of the debtor's property and the
> equitable distribution of that property among the debtor's creditors.
> Thus, while claims for damages based on violation of the automatic stay
> resemble traditional money damage lawsuits in form, their function is to
> facilitate the *in rem* proceedings which form the foundation of bankruptcy.
> As such, the doctrine of sovereign immunity does not apply with respect
> to the claim for violation of the automatic stay.

*Id.*, 2020 U.S. Dist. LEXIS 194033, at *27-*28.   This Court agrees with the *Newkirk* court's

analysis, and finds that state sovereign immunity has been waived with respect to the recovery of

actual damages for violation of the automatic stay.[21]

The question then becomes whether that waiver includes the recovery of emotional

distress damages.   The Sheriff's Office makes the argument in its Summary Judgment

Supporting Brief that §106(a)(3)'s use of the term "money recovery" does not include emotional

distress damages either because that was not what Congress intended in abrogating state

sovereign immunity or because the term is ambiguous and therefore must be interpreted

narrowly and consistent with state sovereign immunity.   This argument misses the mark,

however, given the Court's finding that §106(a)(3) does not govern whether sovereign immunity

has been waived.   The scope of the term "money recovery" used therein is therefore irrelevant.

Instead, the Court looks to §362(k) of the Bankruptcy Code, which provides in relevant part, that

---

[21] The argument also exists that under *Katz*, Congress has the power to bind states to uniform federal judicial bankruptcy process.   *Davis v. California (In re Venoco LLC)*, 998 F.3d 94, 103 n.8 (3d Cir. 2021) (quoting Ralph Brubaker, *Explaining Katz's New Bankruptcy Exception to State Sovereign Immunity: The Bankruptcy Power as a Federal Forum Power*, 15 Am. Bank. Inst. L. Rev. 95, 129 (2007)).   Section 362(k), discussed *infra,* represents a uniform bankruptcy process for the imposition of sanctions for parties violating the automatic stay.

"an individual injured by any willful violation of a stay provided by this section shall recover

actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages."   11 U.S.C. §363(k).[22]

In *Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657 (3d Cir. 2017), the Third Circuit

joined "a growing number of circuits" in holding that Congress intended the automatic stay to

protect both financial and non-financial interests, and that the term "actual damages" as used in

§362(k) includes damages for emotional distress resulting from a willful violation of the

automatic stay.   *Id.* at 667 (citing cases).   *Lansaw* therefore answers the question; in the Third

Circuit, actual damages that may potentially be recovered include emotional distress damages.

Relying on a footnote in *Lansaw*, however, the Sheriff's Office argues that the Third Circuit's

general holding should not apply to it.   In arriving at its holding, the Third Circuit distinguished

*FAA v. Cooper*, 566 U.S. 284, 132 S. Ct. 1441, 182 L. Ed. 2d 497 (2012), where the Supreme

Court held that the term "actual damages" as used in the Privacy Act did not authorize emotional

distress damages from the federal government.   *Id.* at 667 n.8.   The Third Circuit reasoned that,

in *Cooper*, the Supreme Court looked to the legislative history of the Privacy Act indicating that

Congress could have, but chose not to, clearly authorize the recovery of emotional distress

damages.   *Id.*   The Third Circuit was "unaware of any legislative history indicating that

Congress refused to authorize emotional-distress damages for stay violations.   If anything, the

legislative history is to the contrary."   *Id.*   The Third Circuit therefore concluded that *Cooper*

did not compel a different result but commented that it would "leave open for another case the

---

[22] As noted *supra*, the Debtor withdrew his request for punitive damages at the Summary Judgment
Hearing, and the Court therefore entered an order partially granting the Summary Judgment Motion with
respect to that issue.

question of whether emotional-distress damages may be recovered under §362(k)(1) against federal or state governments." *Id.*  The Sheriff's Office argues that this reservation by the Court makes it reasonable to view the term "money recovery" in §106(a)(3) narrowly.

Again, given the Court's finding that *Sacred Heart* renders §106(a)(3) of the Bankruptcy Code unconstitutional, the term "money recovery" in §106(a)(3) is irrelevant to the Third Circuit's reservation as to how "actual damages" would be viewed in the context of sovereign immunity.   Moreover, notwithstanding the Third Circuit's comment in *Lansaw*, this Court sees no reason why, if the states waived sovereign immunity for actual damages sustained from the state's violation of the automatic stay, such waiver would not include any resulting emotional distress damages, given *Lansaw's* finding that the term "actual damages" in §362(k) includes emotional distress damages.   *Cf. In re Griffin*, 415 B.R. 64, 68-69 (Bankr. N.D.N.Y. 2009) (finding that §362(k)'s use of the term "actual damages" includes emotional distress damages, such that the abrogation of sovereign immunity under §106(a) "unequivocally provides for the abrogation of sovereign immunity in connection with an award of actual damages, including damages arising from emotional distress to the extent they were caused by the willful violation of the automatic stay by a governmental unit and not from the anxiety and pressures inherent in the bankruptcy process.").   The Sheriff's Office has offered no compelling reason why *Lansaw's* holding as to the scope of "actual damages" under §362(k) is subject to a carve-out for governmental actors, and this Court finds that it is not.[23]

---

[23]  The Court's conclusion that in ratifying the Bankruptcy Clause of the Constitution, the states waived sovereign immunity as to liability for resulting actual damages pursuant to §362(k), including emotional distress damages, renders moot the second prong of the Sheriff's Office's argument; *i.e.*, because §106(a)(3) is ambiguous as to emotional distress damages, the Court must look to the Tort Claims Act.

### b.    The Debtor Has Failed to Produce Factual Support on Emotional Distress Damages to Survive Summary Judgment

The Sheriff's Office argues that "Plaintiff averred generally in his Complaint as to the nature of his emotional injuries but has not produced any medical evidence to corroborate the harm or to establish the causal connection to the Sheriff's actions."    Summary Judgment Supporting Brief, at 17.    According to the Sheriff's Office, *Lansaw* holds that only when violations are truly egregious should testimony alone suffice to award emotional distress damages, and the facts here are markedly different from the patently egregious fact pattern in *Lansaw*.    Summary Judgment Supporting Brief, at 17-18.

The Court first notes that the *Lansaw* holding regarding what evidence is required to establish emotional distress damages is more nuanced than the Sheriff's Office argues.    The *Lansaw* court stated that:

> Depending on the circumstances of each individual case, corroborating medical evidence *may be required* to prove emotional harm and causation. But we decline to adopt a bright-line rule requiring such evidence to prove emotional-distress damages under §362(k)(1).    As we have concluded in the context of other federal statutes, we see no reason to require that a specific type of evidence be introduced to demonstrate injury in the form of emotional distress.    And we agree with the Bankruptcy Court that, *at least* where a stay violation is patently egregious, a claimant's credible testimony alone *can be sufficient* to support an award of emotional-distress damages. We are confident that courts can ensure that plaintiffs recover only for actual injury even in the absence of expert medical testimony in such cases.

*Id.*, 853 F.3d at 669 (emphasis added, internal citations and quotations omitted).    Although "the majority of courts have denied damages for emotional distress where there is no medical or other hard evidence to show something more than fleeting or inconsequential injury," *see Stinson v. Bi-Rite Restaurant Supply, Inc. (In re Stinson)*, 295 B.R. 109, 120 n.8 (9th Cir. B.A.P. 2003), *aff'd in part, rev'd in part,* 128 Fed. Appx. 30 (9th Cir. 2005), it goes too far to argue, as the

Sheriff's Office does, that *Lansaw* stands for the bright-line rule that only when violations are truly egregious should testimony alone suffice to establish emotional distress damages.   Rather, the fact-finding court must determine what evidence is sufficient under the circumstances of the particular case before it, even where a stay violation may be egregious.

Regardless of what evidence is required in any particular case, however, the Sheriff's Office alleges that "Plaintiff has presented zero evidence to corroborate his averments of emotional distress or connect the specific actions of the Sheriff to the alleged harm suffered." Summary Judgment Supporting Brief, at 18.   In his Summary Judgment Response, the Debtor devotes only three conclusory sentences in response: "Defendant's unlawful action caused irreparable harm to the Plaintiff in the form of emotional distress, including: anxiety, difficulty sleeping, depression, and mental anguish.   Most bankruptcy courts have held that emotional distress damages may be awarded only if a causal connection is established between the creditor's actions and the emotional distress suffered.   The Sheriff's actions caused irreparable harm to the Plaintiff in the form of emotional distress."   Summary Judgment Response, at 11 (unnumbered) (citations omitted).   The Debtor did not, as required by Federal Rule of Bankruptcy Procedure 7056(c), cite to any materials in the record or show that the Summary Judgment Motion's citation to the averments in the Complaint did not establish the absence of a genuine dispute.   F.R.B.P. 7056(c)(1)(A)-(B).

The Debtor bears the burden of producing evidence to support each element of his claim for emotional distress damages.   In order to recover emotional distress damages for willful violation of the automatic stay, a party must (1) have suffered significant emotional distress, (2) clearly establish the significant emotional distress; and (3) demonstrate a causal connection

24

between that significant emotional distress and the stay violation.  *Boltz-Rubenstein v. Bank of Am. (In re Boltz-Rubinstein)*, 596 B.R. 494, 503 (Bankr. E.D. Pa. 2019).   The Debtor cannot survive summary judgment, however, by simply relying on the allegations in the Complaint or conclusory assertions of emotional distress.  *NGK Metals Corp.*, 609 F.3d at 251 n.2; *Banno v. Experian Info. Sols., Inc.*, 2017 U.S. Dist. LEXIS 113045, at *11 (N.D. Ill. Jul 20, 2017).   Here, although the Debtor may not have been required to produce corroborating medical evidence to contest summary judgment under *Lansaw*, he did not come forth with *any* factual support for his alleged emotional distress damages in response to the Summary Judgment Motion.   The bare-bones conclusory statements in his Summary Judgment Response, simply summarizing or parroting the allegations of the Complaint, do not suffice to contest summary judgment, even where all inferences are drawn in a light most favorable to him.  *Butler v. County of Bucks*, 2005 U.S. Dist. LEXIS 4197, at *9 (E.D. Pa. Mar. 18, 2005) (the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion).   The Debtor was instead required to come forth with evidence in support of those allegations, in the form of "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials."   F.R.C.P. 56(c)(1)(A). The Debtor failed to do so.

If the non-moving party fails to meet their evidentiary burden, the court should, in most circumstances, grant summary judgment in favor of the movant.  *Medtronic*, 302 F. Supp. 2d at 435.   Here, the Debtor has failed to meet his evidentiary burden in contesting the Summary Judgment Motion with respect to his entitlement to emotional distress damages, and therefore the

Court will grant the motion on that issue.

### B. Directed Verdict Motion

Having found that the Sheriff's Office is not immunized from liability from actual

damages for violation of the automatic stay under any of the theories espoused in the Summary

Judgment Motion, the Court turns to the Directed Verdict Motion.

### 1. Standard for Directed Verdict Under F.R.C.P. 52(c)

The Sheriff's Office moves for a directed verdict pursuant to Federal Rule of Civil

Procedure 52(c), made applicable here pursuant to Federal Rule of Bankruptcy Procedure 7052.

The rule provides, in relevant part, that "If a party has been fully heard on an issue during a

nonjury trial and the court finds against the party on that issue, the court may enter judgment

against the party on a claim or defense that, under the controlling law, can be maintained or

defeated only with a favorable finding on that issue."    F.R.C.P. 52(c).    In considering whether

to grant judgment under Rule 52(c), the Court applies the same standard of proof and weighs the

evidence as it would at the conclusion of trial.    *Carter v. U.S.*, 2011 U.S. Dist. LEXIS 148631,

at *2 (E.D. Pa. Dec. 27, 2011) (*quoting EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d

Cir. 2010)).    The Court does not view the evidence through a particular lens or draw inferences

favorable to either party, and should make determinations of witness credibility where

appropriate.    *Id.*

### 2. The Parties' Arguments

The Sheriff's Office makes several arguments in support of a directed verdict in its favor.

It first argues that the Debtor's case is fundamentally flawed because (i) the Sheriff's Office, in

lawfully enforcing the facially valid writ of possession, was not acting as a creditor or agent of a

26

creditor, but rather as an arm of the CCP Court, and (ii) there was no evidence that Mr. Hassan, who was the creditor, notified the Sheriff's Office of the Debtor's Petition or took any action to stop enforcement of the writ.    The Sheriff's Office next argues that the Debtor did not establish a willful violation of the automatic stay by a preponderance of the evidence at Trial.    The Sheriff's Office argues the evidence at Trial established that, although its Real Estate Unit received notice of the Petition on or about May 8, 2018, its Civil Enforcement Unit did not receive notice until June 7, 2018, and there was no evidence establishing that the Sheriff's Office continued its enforcement efforts after that date.    Finally, the Sheriff's Office argues that even if the Court finds the Sheriff's Office had effective notice of the Petition as of May 8, 2018, the Debtor failed to establish any actual damages violation of the stay caused.    The Sheriff's Office asserts that Mr. Whyte's testimony was insufficient to award actual damages because it lacked precision and reliability with respect to a causal link between the Sheriff's Office's enforcement actions and the Debtor's damages.

In response, the Debtor argues the evidence at Trial conclusively established that the Sheriff's Office had notice of the Petition as of May 8, 2018, when the Sheriff's Office admits its Real Estate Unit received notice.    The Debtor contests the Sheriff's Office's position that June 7, 2018, when it asserts the Civil Enforcement Unit received notice, is the trigger date for determining whether the Sheriff's Office willfully violated the automatic stay.    The Debtor therefore argues that the enforcement actions by the Sheriff's Office after May 8, 2018, were done with knowledge of the bankruptcy, and constitute willful violations of the automatic stay. Finally, the Debtor argues his damages were established through Mr. Whyte's testimony as to the behavioral changes the Notice to Vacate and Eviction Notice caused in the Debtor, such as

reduced appetite for dinner, increased smoking, and reduced sleep.

### 3.       Legal Standard for Willful Violation of the Automatic Stay

The Second Amended Complaint lacks clarity as to which subsection or subsections of

§362(a) the Debtor is asserting the Sheriff's Office violated.    *See* Second Amended Complaint,

at ¶47, 56 (asserting violation of §362 generally); ¶49 (asserting violations of §362(a)(1), (2),

and (3), but not differentiating as to Mr. Hassan and the Sheriff's Office); ¶65 (asserting

violation of §362(a)(1), (3), (4), (5) and/or (6)).    Regardless of which provision or provisions

the Debtor relies on for its claim against the Sheriff's Office, however, when the automatic stay

has been violated, the relevant provision for sanctions is §362(k)(1) of the Bankruptcy Code.

As noted *supra*, §362(k)(1) of the Bankruptcy Code provides that "an individual injured by any

willful violation of a stay provided by this section shall recover actual damages, including costs

and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

11 U.S.C. §362(k).    The section "is 'remarkably simple' and requires the imposition of

sanctions on a party violating the automatic stay upon the [the satisfaction of three elements]:

First, the offending party must have violated the automatic stay.    Second, the violation of the

stay must have been willful.    Finally, the willful violation must have caused Debtors some

injury."    *In re Miller*, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011) (*quoting Wingard v. Altoona

Reg. Health Systems (In re Wingard)*, 382 B.R. 892, 900 n.6 (Bankr. W.D. Pa. 2008)).    The

Debtor bears the burden of proving these elements by a preponderance of the evidence.

*Wingard*, 382 B.R. at 900 n.6.

A willful violation of the stay occurs where the stay has been violated "with knowledge

that the bankruptcy petition has been filed.    Willfulness does not require that the creditor intend

to violate the automatic stay provision, rather it requires that the acts which violates the stay be intentional." *Lansaw*, 853 F.3d at 664 n.4; *Renzulli v. Ullman (In re Renzulli)*, 2015 Bankr. LEXIS 4439, at *25 (Bankr. D.N.J. Nov. 23, 2015) (willfulness can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless and does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional) (*citing In re Lansdale Family Rest., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992)).    As such, knowledge of the existence of the bankruptcy case is treated as knowledge of the automatic stay.    *Boltz-Rubenstein*, 596 B.R. at 503.

With respect to damages, there must be a sufficient factual finding to support a damages award.    *In re Brown*, 2012 Bankr. LEXIS 4271, at *22-23 (Bankr. E.D. Pa. Sept. 6, 2012) (*citing In re Grine*, 439 B.R. 461, 468 (Bankr. N.D. Ohio 2010)).    It is the Debtor's burden to prove injury.    *City of Phila. v. Walker*, 2015 U.S. Dist. LEXIS 157629, at *7 (E.D. Pa. Nov. 23, 2015).    Damages must be proven with reasonable certainty and must not be speculative or based on conjecture.    *Brown*, 2012 Bankr. LEXIS 4271, at *22-23 (*quoting Grine*, 439 B.R. at 469 and citing cases).

### 4.    The Debtor Failed to Establish All Elements Required Under §362(k)(1)

#### a.    The Debtor Established Violation of the Stay by the Sheriff's Office

The evidence, in the form of the Sheriff's Office's own admission, established that its Real Estate Unit received notice of the Debtor's Petition on May 8, 2018.    As noted *supra*, the Real Estate Unit received a faxed notice of the Debtor's bankruptcy on that date, and both the fax cover sheet from the Debtor's counsel and the notice itself provided the Debtor's name and the

address of the Property.    The Sheriff's Office has sought to mitigate this fact by drawing

attention to the reference in the fax cover sheet, as well as the Sheriff's Return of Service

generated by the Real Estate Unit, to a Book/Writ number.    Directed Verdict Motion, at 9.

Although it may be that reference to the Book/Writ number alone would not have provided

notice to the Sheriff's Office as to who the Debtor was or his relationship to the Property, that

argument is a red herring where the fax cover sheet and the bankruptcy notice each expressly

stated the Debtor's name and the Property address.    That information served as sufficient notice

both of the Debtor's Petition and, as importantly for purposes of the automatic stay, that the

Property was subject in some way to a pending bankruptcy case.

The evidence also established that the Sheriff's Office, through its Civil Enforcement

Unit, served the Notices to Vacate and the Eviction Notices on the Debtor after that date, and did

not cease its enforcement actions with respect to the CCP Court's writ of possession until June 7,

2018.    This is a violation of the plain language of §362(a)(2), which stays "the enforcement,

against the debtor or against property of the estate, of a judgment obtained before the

commencement of the case under this title."    11 U.S.C. §362(a)(2).    The stay is "applicable to

all entities."    *Id.*    The Court rejects the Sheriff's argument in the Directed Verdict Motion that

because there was no showing that the Sheriff's Office was acting as a creditor or the agent of a

creditor, it cannot have violated the stay.    If that were the case, it seems a sheriff's office would

virtually never be held liable for stay violations because it is rarely, if ever, the creditor.    The

Court concludes that where the Sheriff's Office took action violative of the stay, notwithstanding

that it is not a creditor or acting strictly as an agent of a creditor, it may be held liable for such.

*See, e.g., In re Wilson*, 19 B.R. 45 (Bankr. E.D. Pa. 1982) (finding sheriff to have violated the

automatic stay where it had notice of the bankruptcy petition but issued a sheriff's deed post-petition).

The Sheriff's Office argues in its Directed Verdict Motion that there was no evidence or testimony that Mr. Hassan, as the creditor, was given notice of the Petition or took any action to stop enforcement of the writ of possession, and that it is "generally accepted law that the burden is on the creditor to notify third-parties that the automatic stay is in place and efforts in furtherance of execution or enforcement must cease."    Directed Verdict Motion, at 8-9.    While that may be true in other contexts, it has no relevance here, where the Sheriff's Office admits that it received notice itself on the date the Petition was filed.    The Sheriff's Office therefore cannot point the finger at the creditor after-the-fact to argue that it needed to have received notice from the creditor as well.

### b.    The Debtor Established That the Violation Was Willful

As stated *supra,* willful violation of the stay occurs where the stay has been violated with knowledge that the bankruptcy petition has been filed.    The evidence at Trial established that the Real Estate Unit of the Sheriff's Office had notice of the Debtor's Petition on May 8, 2018, but the Sheriff's Office continued its enforcement actions until June 7, 2018, when its Civil Enforcement Unit received notice.    The Sheriff's Office therefore had knowledge of the Debtor's bankruptcy filing on May 8, 2018, and its service of the Notices to Vacate and Eviction Notices after that date constitute a willful violation of the automatic stay.

The Sheriff's Office seeks to skirt this by arguing that there was no evidence that the Civil Enforcement Unit, which was responsible for carrying out the writ enforcement actions, had notice of the Debtor's bankruptcy prior to June 7, 2018.    The Court rejects this argument

31

and finds that notice of the Debtor's Petition received by the Real Estate Unit on May 8, 2018,

charged the Sheriff's Office as a whole with knowledge of Petition.    The Sheriff's Office's own

internal policy, admitted into evidence, does not differentiate between its various units when

directing that all enforcement action is to cease upon the Sheriff's Office receiving notice of a

bankruptcy filing.    To the extent the Sheriff's Office is comprised of different units with

varying responsibilities, and even disparate physical headquarters, it is incumbent upon the

Sheriff's Office to develop procedures and training to ensure that notice of a bankruptcy filing

received by one unit is timely and effectively disseminated to all other units to prevent violations

of the automatic stay.    *Cf., e.g., In re Smith Audio Visual, Inc.*, 2013 Bankr. LEXIS 1211, at

*14-15 (Bankr. D. Kan. Mar. 28, 2013) (finding the IRS could not argue that bankruptcy notice

sent to one division of its offices in Philadelphia was not proper where it could have been

forwarded to the appropriate division if its employees were properly trained); *Reyes v. Standard

Parking Corp.*, 461 B.R. 153, 160 (D.R.I. 2011) (noting that "[i]n the bankruptcy context, notice

to a company's branch or division generally satisfies the due process requirements for the entire

company."); *In re Drexel Burnham Lambert Grp., Inc.*, 129 B.R. 22, 24 (Bankr. S.D.N.Y. 1991)

(finding notice properly served on branch offices of a bank because the bank "bears

responsibility for having adequate systems in place to ensure that legal notices and other

communications reach the appropriate parts of its business empire").

<strong>c.    The Debtor Did Not Establish Injury or Damages Causally<br>Connected to the Stay Violation</strong>

Where a debtor proves a willful violation of the automatic stay by a preponderance of the

evidence, recovery pursuant to §362(k)(1) also requires proof by a preponderance of the

evidence of actual injury and damages.    Here, the Debtor did not meet that evidentiary burden.

At Trial, the Debtor relied on the testimony of Mr. Whyte to establish the Debtor's injury and damages resulting from the Sheriff's Office serving the Notices to Vacate and Eviction Notices.[24]    When asked about the effect the notices had on the Debtor, Mr. Whyte testified that "he's been kind of like distorted … But on top of that also, just been – you know, he's been off."[25]    Mr. Whyte testified that the Debtor had been smoking more cigarettes, not eating dinners that Mr. Whyte made for him, "missing sleep and things like that," and at times sitting alone in the living room without watching television.[26]    Mr. Whyte testified, however, that the Debtor continued to work at his part-time job.[27]    Mr. Whyte's testimony on the Debtor's purported damages was brief and very limited, and the Sheriff's Office argues that "the lack of context, detail or temporal perspective that can link any of Mr. Whyte's observations causally to the alleged stay violations renders the damages testimony unconvincing and unreliable."    The Court does not view Mr. Whyte's testimony as unreliable in a general sense, but agrees that it lacked the precision, clarity, and detail to meet the Debtor's burden of establishing a causal link between the Sheriff's Office's stay violation and the Debtor's relatively subtle behavioral changes.    Mr. Whyte's testimony did not establish that the somewhat ill-defined changes he observed in the Debtor were caused by the Sheriff's Office serving the Notice to Vacate and the Eviction Notice, and not by other factors such as the Debtor having to file for bankruptcy in the

---

[24] As noted *supra*, the Debtor is deaf and mute, and was unable to testify on his own behalf.    Mr. Whyte's testimony regarding the Debtor's injury and damages was limited to his own observations. N.T. 43:7 to 45:24. The Court is cognizant of the limitation that the Debtor's condition presented with respect to his ability to present evidence on damages and considered Mr. Whyte's testimony in light of that limitation, but remains unconvinced that such testimony was sufficient to meet the Debtor's evidentiary burden.

[25] N.T. at 95:16 to 95:25.

[26] N.T. at 95:25 to 98:6.

[27] N.T. at 59:6 to 59:17.

first place or the issuance of the writ of possession the day before the Debtor filed his Petition.

Where damages must be proven with reasonable certainty and must not be speculative or based

on conjecture, Mr. Whyte's testimony was insufficient for the Court to make factual findings,

supported by the evidence, that the Sheriff's Office's stay violation <u>caused</u> the Debtor's

behavioral changes on which the Debtor relies for his purported damages.

Having found that the Debtor failed to prove injury or damages causally linked to the

Sheriff's Office's stay violation, the remaining question is whether the Debtor can, nonetheless,

recover costs and attorneys' fees as authorized by §362(k).    The caselaw on this issue cuts both

ways.    *See generally, Grine*, 439 B.R. 461, 471-72 ("Some courts hold that attorneys' fee may

not be awarded absent other compensable damages incurred by the complainant.    Other courts

hold that attorneys' fees may be recoverable as damages under §362(k) even if debtors have not

proven other compensable harm.") (collecting cases and siding with courts finding that

attorneys' fees are still recoverable even absent other provable damages, based both on §362(k)'s

provision for damages "including" attorneys' fees and on the general remedial purpose of the

statute).    Indeed, courts within this circuit have come down on opposite sides of the issue.

*Compare, e.g., In re Oakey*, 2015 Bankr. LEXIS 3061 (Bankr. D.N.J. Sept. 9, 2015) (actual

damages in the form of attorneys' fees can be appropriate, despite the fact that there may not

have been other compensable harm to the debtor), *with New MMI Corp. v. Robec, Inc.*, 150 B.R.

573 (Bankr. M.D. Pa. 1992) (because the plaintiff failed to establish any actual damages from a

stay violation apart from legal fees and costs, no award for sanctions, including fees and costs,

was assessable).

The Court, however, adheres to the reasoning of *Walker*, in which the district court for

34

this district reversed a bankruptcy court decision awarding fees and costs to a debtor's attorneys where they had not proven injury or damages to the debtor caused by a stay violation. *Walker*, 2015 U.S. Dist. LEXIS 157629. The district court first noted that "a plain reading of [§362(k)(1)] reveals that the bankruptcy court failed to apply the proper legal standard when it awarded [the debtor's attorneys] their fees and costs." *Id. at *6.* After setting forth the three elements required for recovery under the statute, the district court reasoned that "Section 362(k)(1) makes clear that injury is a condition precedent to any request for actual damages: 'an individual *injured* by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.'" *Id.* at *7-*8 (emphasis in original). The district court distinguished the decisions the bankruptcy court had cited in support of awarding fees, noting that they had "first found that the debtor proved the willful violation of the stay caused the debtor an injury *before* awarding attorneys' fees." *Id.* at *8 (citing cases). Because no such finding had been made by the bankruptcy court, the district court reversed its decision to award fees and costs to the debtor's counsel. *Id.* at *12. *See also, In re Whitt*, 79 B.R. 611, 616 (Bankr. E.D. Pa. 1987) (costs and attorneys' fees under §362(h), which later became §362(k), are allowable only to "embellish actual damages").

This Court agrees with the district court's holding in *Walker*. Section 362(k)(1) conditions the recovery of actual damages, including attorneys' fees and costs, on an individual being injured by a willful stay violation. This prerequisite is not only statutorily mandated, but further serves courts' reluctance to foster a "cottage industry built around satellite fee litigation for willful stay violations" that cause no injury. *Miller*, 447 B.R. at 435. Where the individual

has not proved injury, they cannot recover damages, whether it be attorneys' fees and costs or other asserted damages.    Here, the Debtor failed to prove injury or actual damages causally linked to the Sheriff's Office's stay violation, and therefore the Court will not award a sanction of attorneys' fees and costs to the Debtor.

## V.    CONCLUSION

For the reasons discussed above, this Court will (i) grant the Summary Judgment Motion with respect to the Debtor's request for damages for emotional distress, and deny it on all other grounds asserted, (ii) grant the Directed Verdict Motion, and (iii) deny the Debtor's request for damages under §362(k).    An Order consistent with this Memorandum will be entered.

Dated:   November 8, 2021

_Magdeline D. Coleman_
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Stephen M. Dunne, Esquire
Dunne Law Offices, P.C.
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Predrag Filipovic, Esquire
I Fight for Justice
1735 Market Street, Suite 3750
Philadelphia, PA 19103

Megan Harper, Esquire
Joshua Domer, Esquire
City of Philadelphia
Law Department
1401 John F. Kennedy Boulevard, 5th Floor
Philadelphia, PA 19102